Eugene Y. Turin (State Bar No. 342413)
MCGUIRE LAW, P.C.
10089 Willowcreek Road, Suite 200
San Diego, California 92131
Tel: (312) 893-7002
Fax: (312) 275-7895
eturin@mcgpc.com

*Counsel for Plaintiffs and the Proposed Class*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOHN REYES and MIKE XAVIER, individually and on behalf of similarly situated individuals,<br><br>Plaintiffs,<br><br>vs.<br><br>AUTONATION, INC.,<br><br>Defendant. | Case No. 5:25-cv-731<br><br>**CLASS ACTION COMPLAINT**<br><br>1) **Violation of Cal. Penal Code § 631(a).**<br>2) **Violation of Cal. Penal Code § 632(a).**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs John Reyes and Mike Xavier ("Plaintiffs") bring this action on behalf of themselves, and all others similarly situated against Defendant AutoNation, Inc. ("Defendant" or "AutoNation"). Plaintiffs make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to

the allegations specifically pertaining to themselves, which are based on personal knowledge.

## NATURE OF THE ACTION

1. This action concerns the illegal surveillance and recording, by Invoca, Inc. ("Invoca"), of customer service calls placed to AutoNation, Inc. ("AutoNation") in violation of the California Invasion of Privacy Act ("CIPA") §§ 631 and 632.

2. AutoNation employs a conversation intelligence software-as-a-service provided by Invoca. This conversation intelligence service derives information regarding the content of telephone conversations between AutoNation customers and its call centers. Invoca's service records AutoNation customers' speech, transcribes it, then feeds it into Invoca's internal artificial intelligence (AI).

3. Once the data is classified by Invoca's internal AI, such data is then presented back to AutoNation in the form of dashboards, searchable transcripts, and reports, sometimes in real-time to the customer service agents speaking with the customer. AutoNation employs Invoca to perform such recordings and analysis for the purpose of more effectively promoting their own products to current and potential customers.

4. As such, Invoca monitors, reads, records, learns the contents of, or otherwise intercepts the conversations between AutoNation's contact centers and AutoNation's callers, including current and prospective consumers. Such callers include individuals who call AutoNation customer service lines from California to, among other things, retrieve and exchange information on AutoNation telephone services, schedule in-person appointments, provide billing information, and receive additional forms of AutoNation customer support.

5. Moreover, Invoca has the capability to use the contents of such recorded conversations for its own purposes separate from providing a recording to AutoNation.

6. However, neither AutoNation nor Invoca procured the consent of any person who interacted with AutoNation's contact centers, prior to Invoca recording, accessing, reading, and learning the contents of their conversations.

7. Plaintiff brings this action to prevent Defendant from further violating the privacy rights of California residents, and to recover statutory damages from Defendant for failing to comply with the California Invasion of Privacy Act ("CIPA") §§ 631 and 632.

## PARTIES

8. Plaintiff John Reyes resides in Menifee, California and has an intent to remain there, and is therefore a citizen of California. Mr. Reyes was in California when he called AutoNation's customer service line, in or around April 2022.

9. Plaintiff Mike Xavier resides in Roseville, California and has an intent to remain there, and is therefore a citizen of California. Mr. Xavier was in California when he called AutoNation's customer service line, in or around April 2021 and November 2023.

10. Defendant AutoNation, Inc. is a Delaware corporation with its principal place of business at 110 SE 6th Street, Fort Lauderdale, FL 33301. Defendant does business across the nation and operates AutoNation parts and dealership locations throughout California.[1] Defendant also directs the AutoNation call center operations, including AutoNation's implementation of the Invoca Services.[2]

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action where there are more than 100 members

---

[1] https://www.autonationdrive.com/locations/index.htm; https://www.autonationwholesaleparts.com/locations/

[2] *See, e.g.,* https://www.invoca.com/customers/autonation ("'Providing a great customer experience is . . . why our sales managers constantly provide feedback to our agents. Invoca's call recordings and transcriptions are invaluable coaching tools.' Anand Rao, SVP of Digital Business, AutoNation").

- 3 -
CLASS ACTION COMPLAINT

and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one member of the putative Class is a citizen of a state different from Defendant.

12.  The Court has personal jurisdiction over Defendant because Defendant has purposefully availed itself of the laws and benefits of doing business in California, and Plaintiffs' claims arise out of Defendant's forum-related activities. Defendant operates AutoNation parts and dealership locations throughout California and thus has availed itself of the privilege of doing business in California, Additionally, Defendant's customer service lines (and Invoca's recording thereof) are directly linked to Defendant's physical operations in California, in that consumers call the customer service center regarding the California AutoNation locations, meaning the conduct at issue is directly related to Defendant's business in California.

13.  Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial portion of the events giving rise to this action occurred in this District as Plaintiff Reyes was unlawfully recorded by Invoca—as enabled by Defendant—in this District.

## FACTUAL ALLEGATIONS

**I.    The California Invasion Of Privacy Act**

14.  CIPA was enacted "to protect the right of privacy of the people of [California]." Cal. Penal Code § 630. The California Legislature was concerned about emergent technologies that allowed for "eavesdropping upon private communications," believing such technologies "created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society." *Id.*

15.  As part of CIPA, the California Legislature enacted § 631(a), which prohibits any person or entity from [i] "intentionally tap[ping], or mak[ing] any unauthorized connection … with any telegraph or telephone wire," [ii] "willfully and

without the consent of all parties to the communication … read[ing], or attempt[ing] to read, or to learn the contents or meaning of any … communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within [California]," or [iii] "us[ing], or attempt[ing] to use … any information so obtained."

16. CIPA § 631(a) also penalizes [iv] those who "aid[], agree[] with, employ[], or conspire[] with any person" who conducts the aforementioned wiretapping, or those who "permit" the wiretapping.

17. As part of the Invasion of Privacy Act, the California Legislature additionally introduced Penal Code § 632(a), which prohibits any person or entity from "intentionally and without the consent of all parties to a confidential communication, us[ing] an electronic amplifying or recording device to eavesdrop upon or record [a] confidential communication."

18. Individuals may bring an action under CIPA §§ 631 and 632 for $5,000 per violation. Cal. Penal Code § 637.2(a)(1).

## II. Defendant's Violations of CIPA

### A. Overview of the Invoca Service

19. Invoca uses artificial intelligence to "analyze phone conversations at scale and unlock insights."[3] Such insights include allowing Invoca's customers to "measure call quality, intent, and outcomes, transforming conversations into actionable data. This data is crucial for optimizing marketing strategies, improving customer service, and driving revenue growth."[4]

20. Invoca offers a broad suite of products aimed at call recording and transcription. One such product, Signal AI Studio, "uses Invoca's advanced machine-learning technology to automatically analyze phone conversations."[5] Such analysis

---

[3] https://www.invoca.com/product/call-tracking-analytics.
[4] *Id.*
[5] https://www.invoca.com/product/signal-ai-studio.

includes "if each caller was a lead, if they converted, and what product or service the[y] called from."[6] Invoca's customers are then able to use such data to "make smarter marketing optimizations to drive more high-value phone leads at a lower cost" and utilize the Invoca product suite to further "track contact center agent performance and call handling across multi-location businesses, aiding in the coaching process."[7]

21. Another product, Invoca's Call Recordings and Transcriptions, provides "a searchable database of every call recording and transcript."[8] Such transcription is powered by generative AI LLMs (large language models) that turn call recordings into text with, as Invoca brags, "unmatched precision" that "identifies and extracts words and terms spoken on a call, storing it in Invoca as structured, actionable data."[9]

22. Invoca effectively eavesdrop upon, records, extracts data from, and analyzes conversations to which it is not a party. Invoca itself is collecting the content of the conversations.

23. That data is then analyzed by Invoca before being provided to any entity that was a party to the conversation. Indeed, Invoca has the capability to use the contents of conversations it collects through its product offerings for its own purposes and purposes beyond simply furnishing recordings to its customers. For example, Invoca can perform comprehensive analysis on the content of the calls it eavesdrops upon, including identifying the category of the speaker and determining the intent of the call, hence why Invoca "stores calls and call transcripts for internal queries."[10]

24. Invoca states in its Privacy Policy that it uses "Personal Data"—which includes call information "including phone numbers and recordings"—to "improve,

---

[6] *Id.*
[7] *Id.*
[8] https://www.invoca.com/product/call-recordings-and-transcriptions.
[9] https://www.invoca.com/blog/signal-ai-launch.
[10] https://www.invoca.com/data-privacy-security-compliance.

- 6 -
CLASS ACTION COMPLAINT

operate, maintain, and, in some cases, market the Invoca Platform" and "conduct internal research in order to enhance the Invoca Platform and Services."[11]

25. Thus, Invoca has the capability to use the wiretapped data it collects through its product suite, namely the content of the phone calls it records, to operate, maintain, improve, and market its products and services.

### B. AutoNation Intentionally Aids And Employs Invoca's Wiretapping of its Customers' Calls

26. AutoNation, America's largest and most recognized automotive retailer,[12] is an Invoca customer that utilizes Invoca's "marketing attribution, signal building, and conversation analytics features."[13] Matteo Togni, a senior manager of digital product at AutoNation, specifically utilizes Invoca's "marketing attribution, signal building, and conversation analytics features."[14]

27. An Invoca press release revealed that "AutoNation uses Invoca data across multiple departments," and that AutoNation "[uses] AI Signals in their service center scorecards and marketing optimization."[15] Moreover, that "[AutoNation's] participation in product Beta testing has been instrumental in strengthening Invoca's solutions."[16]

28. Specifically, "Invoca automatically records and transcribes each inbound call, and AutoNation uses these insights to identify sales agents' weaknesses and coach them to improve their performance."[17] And "[AutoNation] feed[s] these recordings into

---

[11] https://www.invoca.com/privacy-policy.
[12] https://investors.autonation.com/news-and-events/press-releases/press-release-details/2020/AutoNation-for-the-Third-Year-in-a-Row-is-Americas-1-Public-Automotive-Retailer-According-to-Reputation.com/default.aspx
[13] https://www.youtube.com/watch?v=ohxPPYzRCQM at 00:06.
[14] https://www.invoca.com/blog/ci-hero-matteo-togni
[15] https://www.invoca.com/press-release/invoca-celebrates-2024-impact-award-winners-showcasing-excellence-in-revenue-execution
[16] *Id.*
[17] https://www.invoca.com/customers/autonation

their CRM to keep complete and accurate records of *every customer interaction.*"[18] AutoNation also uses Invoca automated call QA "to automatically scan every call for [] criteria . . . includ[ing] if the agent is greeting a caller correctly, if they're asking them to set an appointment, if they're mentioning a recent promotion, and more."[19] Anand Rao, AutoNation's SVP of Digital Business, also stated that AutoNation makes use of "Invoca's call recordings and transcriptions . . . so we can understand how our customers think, what matters to them, and their sentiments."[20]

29. This granular level of analysis by Invoca provided unprecedented insight into the content of the calls into AutoNation's customer service centers and allowed AutoNation to more effectively market and sell products. Thus, AutoNation aided, employed, agreed with, permitted, or otherwise enabled Invoca to read, learn, monitor, or otherwise intercept the content of communications between AutoNation and its customers.

30. During consumers' calls, consumers reasonably expected that their conversations with AutoNation to be only between themselves and AutoNation. However, AutoNation and Invoca both fail to inform consumers, prior to any recording, that Invoca is listening in on and obtaining consumer's information from their calls with AutoNation, and that the content of these communications with AutoNation are being recorded and analyzed by a third party. Consumers are also unaware that the third party, Invoca, is capable of using the recordings and analysis for its own purposes.

31. Neither AutoNation nor Invoca obtained consumer's consent for the conduct at issue.

**III. Plaintiffs' Experience**

32. Mr. Reyes has called AutoNation's customer service line, including in or around April 2022, when he spoke with AutoNation regarding purchasing a car.

---

[18] *Id.* (emphasis added).
[19] *Id.*
[20] *Id.*

- 8 -
CLASS ACTION COMPLAINT

33. Mr. Xavier has called AutoNation's customer service line, including in or around April 2021 and November 2023, and intermittently since September 2021, when he spoke with AutoNation regarding car purchases, and to receive service on his vehicles.

34. Both Plaintiffs disclosed personally identifiable or otherwise private information while on the phone with AutoNation customer representatives, such as their name, address, phone number, vehicle description, license plate, billing information.

35. When speaking with AutoNation's contact center agents, Plaintiffs reasonably expected their conversations would only be between themselves and the AutoNation contact center agent, respectively. Plaintiffs did not expect or have any reason to expect that Invoca, a third party, was listening in on their conversations.

36. Nonetheless, Invoca eavesdropped on Plaintiffs' entire conversations with AutoNation's contact center agents. Invoca monitored, recorded, and transcribed Plaintiff's conversations with AutoNation in real-time and performed AI analysis on the content of the calls. This included capturing Plaintiffs' intent and/or reason for calling, service interests, conversion outcome, and tracking the words and phrases they said during the conversations. Through this process, Invoca read and learned, in real-time, the contents of Plaintiffs' conversations with AutoNation.

37. Neither AutoNation nor Invoca informed Plaintiffs prior to recording that Invoca was listening in on their phone calls with AutoNation, including that the content of their phone calls with AutoNation are being recorded and analyzed by Invoca. AutoNation and Invoca, therefore, failed to obtain Plaintiffs' consent for the conduct at issue.

38. Plaintiffs did not have any knowledge about the Defendant's unlawful actions at the time that they placed calls to AutoNation's contact center agents and had

no reason to believe that the unlawful conduct at issue occurred until only shortly before the filing of this Complaint.

39. Plaintiffs have, accordingly, had their privacy invaded and been exposed to the risks and harmful conditions created by AutoNation's violations of CIPA alleged herein.

## CLASS ALLEGATIONS

40. Plaintiffs seek certification of the following class: All California residents who called AutoNation's customer service line while in California and whose conversations with AutoNation were intercepted and recorded by Invoca

41. Plaintiffs will fairly and adequately represent and protect the interests of the other members of the Class. Plaintiffs have retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the other members of the Class, and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interest adverse to those of the other members of the Class.

42. Absent a class action, most members of the Class would find the cost of litigating their claims to be prohibitive and would have no effective remedy. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication.

43. Defendant has acted and failed to act on grounds generally applicable to Plaintiffs and the other members of the Class, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class, and making injunctive or corresponding declaratory relief appropriate for the Class as a whole.

44. The factual and legal bases of Defendant's liability to Plaintiffs and to the other members of the Class are the same, resulting in injury to Plaintiffs and to all of

CLASS ACTION COMPLAINT

the other members of the Class. Plaintiffs and the other members of the Class have all suffered harm and damages as a result of Defendant's unlawful and wrongful conduct.

45. There are many questions of law and fact common to the claims of Plaintiffs and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not limited to, the following:

    (a) Whether Invoca recorded Plaintiffs' and the Class' phone calls with Defendant;

    (b) Whether Defendant and Invoca obtained valid consent to perform such recording;

    (c) Whether Defendant aided and abetted Invoca in recording Plaintiffs' and the Class' phone calls with its customer service agents;

    (d) Whether Invoca's service that was used to record Plaintiffs' and the Class' phone calls with Defendant constitute an "electronic amplifying or recording device";

    (e) Whether Defendant's conduct constitutes a violation of Cal. Penal Code § 631(a);

    (f) Whether Defendant's conduct constitutes a violation of Cal. Penal Code § 632(a);

    (g) Whether Plaintiffs and the Class are entitled to monetary and/or restitutionary and/or injunctive relief or other remedies, and, if so, the nature of such remedies.

# FIRST CAUSE OF ACTION
### Violation of the California Invasion of Privacy Act, Cal. Penal Code § 631(a)
### (On Behalf of Plaintiffs and the Class)

46. Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

47. CIPA provides that a person is liable to another where, "by means of any machine, instrument, contrivance, or in any other manner," they commit any of the following: (i) intentionally tap, or make any unauthorized connection, whether physically, electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, cable, or instrument of any internal telephonic communication system; or (ii) willfully and without consent of all parties to the communication, or in any unauthorized manner, read or attempt to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state; or (iii) use, or attempt to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained; or (iv) aid, agree with, employ, or conspire with any person or persons to unlawfully do, or permit or cause to be done any of the acts or things mentioned above in this section. Cal. Pen. Code. § 631 (a).

48. Within the relevant time period, Plaintiffs and members of the Class called into Defendant's customer service centers.

49. Defendant aided, agreed with, conspired with, and employed Invoca's tracking tools and technology to accomplish the wrongful conduct at issue here.

50. Specifically, Defendant aided and conspired with Invoca, a tracking entity, to intercept its callers' phone communications, which included personally

identifiable and sensitive information, and did so with knowledge that the callers' data would be sent to Invoca.

51. Furthermore, as a result of Defendant contracting with and paying Invoca for its call interception technology, Invoca has the ability to use the data it obtained from Plaintiffs calls to Defendant for its own purposes totally unknown by Plaintiffs.

52. Plaintiffs and the other members of the Class did not authorize or consent to the tracking, interception, and collection of any of their electronic communications with Defendant.

53. Plaintiffs and the other members of the Class seek all relief available under Cal. Pen. Code § 637.2, including injunctive relief and statutory damages of $5,000.

## FIRST CAUSE OF ACTION
### Violation of the California Invasion of Privacy Act, Cal. Penal Code § 632(a)
### (On Behalf of Plaintiffs and the Class)

54. Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

55. CIPA § 632(a) prohibits an entity from "intentionally and without the consent of all parties to a confidential communication, us[ing] an electronic amplifying or recording device to eavesdrop upon or record the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio." Cal. Penal Code § 632(a).

56. Invoca's software is an "electronic amplifying or recording device" because the software can record conversations and, in doing so, violates the rights of at least one of the callers. *See Tate v. VITAS Healthcare Corp.,* 2025 WL 50447 (E.D. Cal. Jan. 8, 2025).

57. At all relevant times, AutoNation intentionally used Invoca's product suite to record the confidential communications between itself and Plaintiffs and the

other Class Members, which included personally identifiable and sensitive information such as consumer financial related information (i.e., Plaintiffs' and the other Class Members' methods of payment for car servicing and other related purchases).

58. When communicating with AutoNation, Plaintiffs and the other Class Members had an objectively reasonable expectation of privacy. Plaintiffs and the other Class Members did not expect that AutoNation would intentionally use an electronic amplifying or recording device to record their confidential communications.

59. Plaintiffs and the other Class Members did not consent to AutoNation's intentional use of an electronic amplifying or recording device to record their confidential communications.

60. Pursuant to Cal. Penal Code § 637.2, Plaintiffs and the other Class Members have been injured by the violations of CIPA § 632(a), and each seeks statutory damages of $5,000 for each of AutoNation's violations of CIPA § 632(a).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a) For an order certifying the Class, naming Plaintiffs as Class Representatives, and naming Plaintiffs' attorneys as Class Counsel to represent the Class;

(b) For an order declaring that Defendant's conduct violates Cal. Penal Code § 631(a);

(c) For an order declaring that Defendant's conduct violates Cal. Penal Code § 632(a);

(d) For actual, compensatory, statutory, and/or punitive in amounts to be determined by the Court and/or jury;

(e) For prejudgment interest on all amounts awarded;

(f) For an order of restitution and all other forms of equitable monetary relief;

(g) For injunctive relief as pleaded or as the Court may deem proper; and

(h) For an order awarding Plaintiffs and the Class and Subclass their reasonable attorneys' fees, expenses, and costs of suit.

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury on all causes of action and issues so triable.

Dated: March 20 2025                               Respectfully Submitted,

                                                              By: */s/ Eugene Y. Turin*

                                           **McGuire Law, P.C.**
Eugene Y. Turin (SBN 342413)
10089 Willowcreek Road, Suite 200
San Diego, CA 92131
Tel: (312) 893-7002
Fax: (312) 275-7895
eturin@mcgpc.com

*Counsel for Plaintiffs and the Proposed Class*