Eugene Y. Turin (State Bar No. 342413)
MCGUIRE LAW, P.C.
1089 Willowcreek Road, Suite 200
San Diego, CA 92131
Tel: (312) 893-7002
Fax: (312) 275-7895
eturin@mcgpc.com

*Counsel for Plaintiff and the Proposed Class*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MIKE XAVIER, individually and on behalf of similarly situated individuals,<br><br>Plaintiff,<br><br>vs.<br><br>AUTONATION, INC.,<br><br>Defendant. | Case No. 5:25-CV-731-AB-DTB<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S RULE 12 MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**<br><br>Date: November 7, 2025<br>Time: 10:00 a.m.<br>Courtroom: 7<br>Judge: André Birotte Jr.<br><br>Complaint Filed: March 24, 2025<br>FAC Filed: June 23, 2025<br>Trial Date: None |

# TABLE OF CONTENTS


Page

**INTRODUCTION ........................................................................................ 1**

**STATEMENT OF FACTS............................................................................. 1**

**LEGAL STANDARD .................................................................................... 2**

I. 12(b)(2) Standard of Review for Motions to Dismiss ........................................ 2

II. 12(b)(1) Standard of Review for Motions to Dismiss ....................................... 3

III. 12(b)(6) Standard of Review for Motions to Dismiss ...................................... 3

**ARGUMENT.............................................................................................. 3**

I. Plaintiff Has Established Specific Personal Jurisdiction Based on Defendant's Intentional Contacts with California. .................................................................. 3

II. Plaintiff Has Standing To Bring This Suit ....................................................... 6

III. Plaintiff Pled Facts Sufficient to Satisfy The Delayed Discovery Rule. ........... 8

IV. Defendant's Challenge To Plaintiff's § 631(a) Claim Is Premature And Ignores Plaintiff's Well-Pled Allegations. ........................................................... 10

A. Whether Invoca's technology was simply a "tape recorder" is a question of fact that is inappropriate to resolve at the pleading stage. ..................................... 10

B. Whether Invoca makes "independent use" of the recordings that it obtains is irrelevant as to whether Plaintiff stated a claim under Sec. 631(a). ....................... 11

C. Plaintiff sufficiently alleges that Invoca independently used the information it obtained from customer phone calls with Defendant. ........................................ 12

D. Invoca's privacy policies support Plaintiff's allegations. ............................. 14

V. Plaintiff Pleads Sufficient Facts That Defendant Violated Cal. Pen. Code § 632(a) ........................................................................................................ 15

A. Defendant erroneously tries to apply the definition of "device" from § 637.7 to Plaintiff's claim under § 632(a). ........................................................... 15

B. Given the contents of Plaintiff's conversation that was recorded it was objectively reasonable to believe that it was confidential. ..................................... 17

C. Plaintiff did not consent to his conversations being recorded. .................... 18

**CONCLUSION ........................................................................................................ 20**

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Adams v. Johnson*,
335 F.3d 1179 (9th Cir. 2004) ........ 3

*Ass'n for Los Angeles Deputy Sheriffs v. Cnty of Los Angeles*,
648 F.3d 986 (9th Cir. 2011) ........ 3

*Balanzar v. Fid. Brokerage Servs., LLC*,
654 F. Supp. 3d 1075 (S.D. Cal. 2023) ........ 9

*Briskin v. Shopify, Inc.*,
135 F.4th 739 (9th Cir. 2025) ........ 3, 4

*Burdick v. Union Sec. Ins. Co.*,
No. 07-cv-4028, 2009 WL 4798873 (C.D. Cal. 2009) ........ 9

*Busby v. Invoca*,
No. 24-cv-05542, 2025 WL 822664 (N.D. Cal. 2025) ........ 1, 12, 13, 15, 17, 19

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) ........ 19

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) ........ 19

Conohan v. Rad Power Bikes Inc.,
No. 25-cv-106, 2025 WL 1111246 (C.D. Cal. 2025) ........ 7

Cordero v. Sportsman's Warehouse, Inc.,
No. 24-cv-575, 2025 WL 1114196 (D. Utah 2025) ........ 8

Dangoor v. Peterson's Stampede Dodge Chrysler Jeep, LLC,
No. 19-cv-01793, 2019 WL 6357252 (C.D. Cal. 2019) ........ 5

*Doe v. Holy See*,
557 F.3d 1066 (9th Cir. 2009) ........ 3

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) .......... 16
*Doe v. Microsoft Corp.*,
No. 23-cv-0718, 2023 WL 8780879 (W.D. Wash. 2023) .......... 15
*Esparza v. Kohl's, Inc.*,
723 F. Supp. 3d 934 (S.D. Cal. 2024) .......... 10
*Faulkner v. ADT Sec. Servs., Inc.*,
706 F.3d 1017 (9th Cir. 2013) .......... 17
*Flanagan v. Flanagan*,
27 Cal. 4th 766 (2002) .......... 17
*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
592 U.S. 351 (2021) .......... 5
*Gaige v. Exer Holding Co., LLC*,
No. 24-cv-06099, 2025 WL 559719 (C.D. Cal. 2025) .......... 9
*Gladstone v. Amazon Web Servs., Inc.*,
739 F. Supp. 3d 846 (W.D. Wash. 2024) .......... 14, 15
*Gutierrez v. Converse,*
No. 24-4797, 2025 WL 1895315 (9th Cir. 2025) .......... 11, 12
*Herbal Brands, Inc. v. Photoplaza, Inc.*,
72 F.4th 1085 (9th Cir. 2023) .......... 5
*I.C. v. Zynga Inc.*,
600 F. Supp. 3d 1034 (N.D. Cal. 2022) .......... 8
*In re Google Inc.*,
2013 WL 5423918 (N.D. Cal. 2013) .......... 19
*Jackson v. LinkedIn Corp.*,
2024 WL 3823806 (N.D. Cal. 2024) .......... 13
*Javier v. Assurance IQ, LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023) .......... 11, 13

*Kauffman v. Papa John's Int'l, Inc.*,
No. 22-cv-1492, 2024 WL 171363 (S.D. Cal. 2024) ........ 10
*Knievel v. ESPN*,
393 F.3d 1068 (9th Cir. 2005) ........ 3
*Lien v. Talkdesk, Inc.*,
No. 24-cv-06467, 2025 WL 551664 (N.D. Cal. 2025) ........ 8
*Mikulsky v. Noom, Inc.*,
682 F. Supp. 3d 855 (S.D. Cal. 2023) ........ 8
*Moledina v. Marriott Int'l, Inc.*,
635 F. Supp. 3d 941 (C.D. Cal. 2022) ........ 4
*Ribas v. Clark*,
38 Cal. 3d 355 (1985) ........ 13
*Rodriguez v. Aquatic Sales Sols. LLC*,
735 F. Supp. 3d 1208 (C.D. Cal. 2024) ........ 6
*Rogers v. Ulrich*,
52 Cal. App. 3d 894 (1975) ........ 12
*Roney v. Miller*,
705 F. App'x 670 (9th Cir. 2017) ........ 10
*Safe Air for Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004) ........ 3
*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) ........ 5, 6
*Serna v. 1-800-GOT-JUNK? LLC*,
No. 24-cv-00047, 2024 WL 3915074 (C.D. Cal. 2024) ........ 9
*Smith v. Google, LLC*,
735 F. Supp. 3d 1188 (N.D. Cal. 2024) ........ 13

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .......... 6
*Sprint Communications Co. v. APCC Services, Inc.*,
554 U.S. 269 (2008) .......... 7
*Swarts v. Home Depot, Inc.*,
689 F. Supp. 3d 732 (N.D. Cal. 2023) .......... 6
*Tate v. VITAS Healthcare Corp.*,
762 F. Supp. 3d 949 (E.D. Cal. 2025) .......... 1, 11, 15, 16, 19
*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 6, 7
*U.S. Dep't of Just. v. Reps. Comm. For Freedom of Press*,
489 U.S. 749 (1989) .......... 7
*United States v. United Healthcare Ins. Co.*,
848 F.3d 1161 (9th Cir. 2016) .......... 10
*Walden v. Fiore*,
571 U.S. 277 (2014) .......... 2, 4
*Wilson v. Hewlett-Packard Co.*,
668 F.3d 1136 (9th Cir. 2012) .......... 3
*Yockey v. Salesforce, Inc.*,
688 F. Supp. 3d 962 (N.D. Cal. 2023) .......... 13
*Yockey v. Salesforce, Inc.*,
745 F. Supp. 3d 945 (N.D. Cal. 2024) .......... 16
*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) .......... 10

**STATUTES**

Cal. Penal Code § 631 .......... 13
Cal. Penal Code § 631(a) .......... 10, 11, 12
Cal. Penal Code § 631(a)(ii) .......... 12

Cal. Penal Code § 631(a)(iii) ........................................................ 12
Cal. Penal Code § 632 ........................................................ 15, 16, 17, 19
Cal. Penal Code § 632(a) ........................................................ 15, 16, 17, 18
Cal. Penal Code § 637.7 ........................................................ 15, 16
Cal. Penal Code § 637.7(d) ........................................................ 16

Plaintiff Mike Xavier ("Plaintiff") respectfully submits this memorandum in opposition to Autonation, Inc.'s ("Defendant") Motion to Dismiss (Dkt. 27) ("MTD") Plaintiff's First Amended Complaint ("FAC").

## INTRODUCTION

Defendant's Motion to Dismiss largely ignores Plaintiff's well-pled complaint and instead raises a number of arguments that are premature or simply contrary to the legal standard on a 12(b)(6) motion to dismiss. Plaintiff explains in detail below why each of the *eight* arguments that Defendant has attempted to raise fail on the merits. For purposes of this introduction, it is simply worth noting that two other courts that have dealt with California Invasion of Privacy Act (CIPA) claims involving the *same exact* Invoca software that AutoNation used to monitor and analyze calls placed by California residents to its California dealerships have denied nearly identical motions to dismiss. *See Tate v. VITAS Healthcare Corp.*, 762 F. Supp. 3d 949 (E.D. Cal. 2025); *Busby v. Invoca*, No. 24-cv-05542-JC, 2025 WL 822664 (N.D. Cal. Mar. 14, 2025). Unsurprisingly, Defendant fails to raise any new arguments that would warrant a different result here. Nor is there any merit in Defendant's argument that the Court lacks personal jurisdiction over Plaintiff's claims given that they directly arise from Defendant contracting with and paying a California entity, Invoca, to install and operate the Invoca software to eavesdrop on phone calls placed by California residents to Defendant's California dealerships. While Defendant's Article III argument goes against the numerous court decisions that have found that a violation of CIPA is inherently a violation of privacy rights that confers Article III standing *and* ignores Plaintiff's allegations about the particularly sensitive nature of the information disclosed to Invoca. For these reasons and those stated in further detail below, Defendant's Motion to Dismiss should be denied in its entirety.

## STATEMENT OF FACTS

Invoca operates a conversation intelligence software-as-a-service to analyze phone conversations at scale and unlock insights. (FAC, ¶ 18.) Its broad suite of products

operate by allowing Invoca to eavesdrop on phone calls in order to analyze them and extract large amounts of useable data which are then provided to Invoca's customers such as AutoNation. (FAC, ¶¶ 19-22.) AutoNation contracted with and paid Invoca to provide its services and public press releases detailed how Invoca "automatically records and transcribes each inbound call" and "automatically scan[s] every call for" certain performance criterias. (*Id*. at ¶¶ 25-27, 56.) Importantly Invoca uses the call information it obtains for its own purposes to improve, operate, maintain, and, in some cases, market the Invoca Platform and conduct internal research in order to enhance the Invoca Platform and Services. (*Id.* at ¶¶ 23, 29.)

Plaintiff, a California resident, called two of AutoNation's dealerships in California. (*Id*. at ¶¶ 8, 32.) Plaintiff disclosed sensitive confidential information while on the phone with an AutoNation dealerships' customer representatives, including his name, address, phone number, vehicle description, license plate, and billing information. (*Id.* at ¶ 33.) When Plaintiff placed his calls Invoca eavesdropped on Plaintiff's entire conversations and in real time performed AI analysis on the contents of the calls. (*Id*. at ¶ 35.) Such analysis included capturing Plaintiff's intent and/or reason for calling, service interests, conversion outcome, and tracking the words and phrases he said during the conversations. (*Id*.) Plaintiff was never informed by AutoNation nor Invoca that Invoca was recording or eavesdropping on his calls to AutoNation's dealership nor did he provide authorization for Invoca to do so. (*Id*. at ¶ 36.) As result, Plaintiff has had his privacy rights invaded. (*Id*. at ¶ 38.)

## <u>LEGAL STANDARD</u>

### I. 12(b)(2) Standard of Review for Motions to Dismiss

"The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.' For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 283–84 (2014) (internal citation omitted).

Specific personal jurisdiction is analyzed under a three-part test; if a plaintiff satisfies the first two prongs, the burden of disproving the third prong shifts to the defendant. *Briskin v. Shopify, Inc.*, 135 F.4th 739, 750 (9th Cir. 2025). The three prongs are: (1) The non-resident defendant must purposefully direct its activities towards the forum; (2) The claim must arise out of or relate to the defendant's forum-related activities; and (3) The exercise of jurisdiction must comport with fair play and substantial justice (it must be reasonable). *Id* at 750-51.

## II. 12(b)(1) Standard of Review for Motions to Dismiss

Rule 12(b)(1) jurisdictional challenges can be either facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). When a motion to dismiss attacks subject-matter jurisdiction on the face of the complaint, as here, the court assumes the factual allegations in the complaint are true and draws all reasonable inferences in the plaintiff's favor. *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009).

## III. 12(b)(6) Standard of Review for Motions to Dismiss

When ruling on a Rule 12(b)(6) motion, the court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Ass'n for Los Angeles Deputy Sheriffs v. Cnty of Los Angeles*, 648 F.3d 986, 991 (9th Cir. 2011) (quoting *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005)). "A complaint need not state 'detailed factual allegations,' but must contain sufficient factual matter to 'state a claim to relief that is plausible of its face.'" *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). Thus, dismissal is only proper where "it appears beyond doubt that the non-movant can prove no set of facts to support its claims." *Adams v. Johnson*, 335 F.3d 1179, 1183 (9th Cir. 2004).

# ARGUMENT

## I. Plaintiff Has Established Specific Personal Jurisdiction Based on Defendant's Intentional Contacts with California.

Plaintiff does not dispute that there is no general jurisdiction over Defendant in California. However, the facts at issue make clear that there is specific personal

jurisdiction over Defendant due to Defendant's California-specific conduct, including Defendant's wiretapping of Plaintiff's telephone conversations within California.

For tort claims, which include the data privacy violations alleged by Plaintiff, Plaintiff must first show that Defendant purposefully directed its activities towards the forum or a resident of the forum. *Briskin*, 135 F.4th at 750. Ninth Circuit courts use the "*Calder* effects test" to determine if a defendant has purposefully directed its activities towards the forum state. *Id*. This test requires the defendant to have 1) committed an intentional act that is 2) expressly aimed at the forum state 3) which causes harm that the defendant knows will be suffered in the forum state; it does not require the defendant to ever be present in the forum state. *Id*. Here, the intentional act at issue is Defendant contracting for, paying, and causing Invoca's call-recording technology to be installed on the customer phone lines of its various dealership locations. (FAC, ¶¶ 25, 56.) Defendant's actions in installing the unlawful recording technology at issue was expressly aimed at California and California residents because, as stated by Defendant in its own opening brief, Defendant receives nearly one fifth of its total revenue from California. (MTD at 4.) Moreover, Defendant has intentionally set-up or acquired at least two California-located subsidiary entities with which California residents interact to purchase and service automobiles. (MTD at 6.) As such, when Defendant intentionally utilized Invoca software to record customer calls with its dealership entities, Defendant intentionally and knowingly recorded calls placed to its California-based subsidiary entities. By contrast, if Defendant did not have any subsidiary entities in California, and instead a California resident merely made a call from within the state to a subsidiary entity of Defendant in another state, then personal jurisdiction would likely be lacking. *See Moledina v. Marriott Int'l, Inc.*, 635 F. Supp. 3d 941, 948–50 (C.D. Cal. 2022) (personal jurisdiction found lacking where Plaintiff placed call from California to hotel in Texas which was recorded in Utah); *see also Walden*, 571 U.S. at 290; *see also Dangoor v. Peterson's Stampede Dodge Chrysler Jeep, LLC*, No. 19-cv-01793, 2019

WL 6357252 (C.D. Cal. Aug. 8, 2019). But that is not the case here, where Defendant satisfies all three elements of the "*Calder* effects test" by: 1) intentionally installing, paying for, and utilizing Invoca's call recording software; 2) to record calls made to California-based subsidiary entities by California-based consumers thus; 3) causing harm by violating the privacy rights of the California-based consumers. (FAC, ¶ 27.) As such, Plaintiff has carried his burden to satisfy the first prong required for specific personal jurisdiction.

Plaintiff's pleadings also satisfy the second prong of the specific personal jurisdiction analysis. The second prong requires that a plaintiff's claims arise out of or relate to the defendant's contacts with the forum. *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1096 (9th Cir. 2023). "The first half of that standard asks about causation; but the back half, after the "or," contemplates that some relationships will support jurisdiction without a causal showing… we have never framed the specific jurisdiction inquiry as always requiring proof of causation—i.e., proof that the plaintiff's claim came about because of the defendant's in-state conduct." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 362 (2021). Here, Plaintiff's claim that Defendant aided Invoca in listening in on and obtaining his information from calls placed to its California subsidiaries necessarily only exists because of Defendant's forum related activities—namely contracting and paying for Invoca's technology to record calls from California-based consumers to Defendant's California-based subsidiaries. Thus, Plaintiff's claims arise directly from Defendant's conduct targeted at the forum, and as such the second prong in the specific personal jurisdiction analysis is satisfied.

The third prong of the analysis that jurisdiction must comport with fair play and substantial justice is the defendant's burden to carry. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). If the first two prongs are proven by the plaintiff, the defendant must present a compelling case that the exercise of jurisdiction

would not be reasonable. *Id*. Here, Defendant presented no such argument in its opening brief. Cases in which the first two prongs have been satisfied by a plaintiff and the defendant failed to contest the third prong in their motion to dismiss result in courts finding that they have specific personal jurisdiction over the defendant. *See Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 743 (N.D. Cal. 2023) ("Home Depot does not contest that this element is satisfied. Consequently, the Court has personal jurisdiction over Home Depot"); *Rodriguez v. Aquatic Sales Sols. LLC*, 735 F. Supp. 3d 1208, 1225 (C.D. Cal. 2024) ("Defendant does not appear to argue that the exercise of jurisdiction would be unreasonable. Accordingly, the Court DENIES defendant's motion to dismiss for lack of personal jurisdiction"). Because Defendant failed to argue against the reasonableness of specific personal jurisdiction, it has failed to meet its burden with respect to the third prong in the specific personal jurisdiction analysis. Indeed, given Defendant's extensive forum-specific conduct as well as the fact that Invoca is *itself headquartered in California* and that Defendant entered into the contract at issue with a California entity to record phone calls placed by California residents to its California subsidiaries there is little question that it would be "reasonable" for the Court to exercise personal jurisdiction over Defendant.

Because the facts at issue satisfy all the three-prongs for establishing personal jurisdiction over Defendant for the aiding and abetting of the unlawful wiretapping at issue, this Court should find that it has specific personal jurisdiction over Defendant.

## II. Plaintiff Has Standing To Bring This Suit

To satisfy the constitutional requirements of standing, a plaintiff must have: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). An injury in fact must be concrete, meaning that it is real and not abstract. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021). "History and tradition offer a meaningful guide to the types of cases that Article III empowers federal courts to consider." *Sprint Communications Co. v. APCC Services,*

*Inc.*, 554 U.S. 269, 274 (2008). "Certain harms readily qualify as concrete injuries under Article III" and while "[t]he most obvious are traditional tangible harms…[v]arious intangible harms can also be concrete" including "injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts" such as "disclosure of private information" and "intrusion upon seclusion." *TransUnion LLC* 594 U.S. at 425. "[B]oth the common law and the literal understandings of privacy encompass the individual's control of information concerning his or her person." *U.S. Dep't of Just. v. Reps. Comm. For Freedom of Press*, 489 U.S. 749, 763 (1989). As Defendant mentions in its Motion to Dismiss, some federal district courts have decided that any CIPA violation constitutes an injury in fact. But rather than this being in opposition to the Supreme Court's logic in *TransUnion* and *Spokeo* as Defendant argues (MTD at 11), courts have found that CIPA is protecting a right to privacy, and so actions brought for violations of CIPA go beyond the "bare procedural violation[s]" found insufficient in *Spokeo*. As discussed by the court in *Conohan v. Rad Power Bikes Inc.*, No. 25-cv-106, 2025 WL 1111246, at *5 (C.D. Cal. Apr. 3, 2025), "Federal district courts have consistently found that "violations of plaintiffs' statutory rights under CIPA, even without more, constitute injury in fact because instead of a bare technical violation of a statute, ***a CIPA violation involves a violation of privacy rights***." 2025 WL 1111246, at *5 (collecting authorities) (emphasis added). This is why Defendant's argument regarding the perceived inconsistency between cases holding that CIPA violations present an injury sufficient to confer Article III standing and the Supreme Court's *TransUnion* decision fails. As these cases show, Plaintiff's CIPA allegations alone present injuries sufficient to confer standing because they arise out of a violation of Plaintiff's privacy rights that courts have recognized at common law.

However, even if this Court were persuaded that not all CIPA violations present an injury sufficient to confer Article III standing, Plaintiff's FAC pleads sufficient allegations to cross the injury in fact threshold. Defendant cites to cases that have found that allegations of "personal information" or basic contact information like an email

address or phone number being recorded are not enough to establish a concrete injury. *See Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 865 (S.D. Cal. 2023); *I.C. v. Zynga Inc.*, 600 F. Supp. 3d 1034, 1049–50 (N.D. Cal. 2022). Neither of these cases nor the other caselaw cited by Defendant take into account the far more personal and sensitive nature of the information that Plaintiff alleges was intercepted by Invoca including his "address…vehicle description, license plate, and billing information." (FAC, ¶ 33.) Indeed, the court in *Cordero v. Sportsman's Warehouse, Inc.*, No. 24-cv-575, 2025 WL 1114196, at *4 (D. Utah Apr. 15, 2025) explicitly acknowledged that had the plaintiffs alleged they had provided defendant with their "payment card information" there would have been enough of a privacy interest in that information to show an injury in fact to confer standing. 2025 WL 1114196, at *4. These allegations are also precisely why Defendant's reliance on *Lien v. Talkdesk, Inc.*, No. 24-cv-06467, 2025 WL 551664 (N.D. Cal. Feb. 19, 2025) is misplaced. In *Lien*, the complaint only made general allegations about improperly disclosing information including "credit card numbers and other sensitive financial and personal information" to Talkdesk. *Lien v. Talkdesk, Inc.*, No. 24-cv-06467, Dkt. 1, Complaint ¶ 40 (N.D. Cal. Sep. 13, 2024). But the allegations regarding the information intercepted from the plaintiffs specifically only included the plaintiffs' phone numbers and questions about the stores' products, hours, and events. (*Id.* at ¶¶ 59, 69.) This is why the court ultimately found that the "information allegedly intercepted by Talkdesk—the plaintiffs' phone numbers and questions they asked about store hours, events, and products carried by the retailers—is simply not private or personal enough to confer standing…" *Lien*, 2025 WL 551664, at *1. The information that *Plaintiff* himself alleges was intercepted by Invoca as a result of Defendant implementing its call recording technology is far more sensitive and personal and supports the injury in fact necessary to confer Article III standing on Plaintiff.

## III. Plaintiff Pled Facts Sufficient to Satisfy The Delayed Discovery Rule.

While Defendant challenges Plaintiff's allegations related to his delayed discovery of the offending conduct, courts in this district are clear that these are factual

challenges that are improper to be resolved at the pleading stage. *See Burdick v. Union Sec. Ins. Co.*, No. 07-cv-4028, 2009 WL 4798873, at *10 (C.D. Cal. Dec. 9, 2009) ("When a plaintiff reasonably should have discovered facts for purposes of the accrual of a cause of action or application is generally a question of fact, properly decided as a matter of law only if the evidence ... can support only one reasonable conclusion"); *Balanzar v. Fid. Brokerage Servs., LLC*, 654 F. Supp. 3d 1075, 1083 (S.D. Cal. 2023) ("Whether the 'delayed discovery' rule tolled the statute of limitations for Plaintiff's claims that would normally be time-barred (i.e., any alleged CIPA violation prior to September 11, 2021) is a factual question the Court is not prepared to answer at this point").

Moreover, Plaintiff has pled facts sufficient to satisfy his burden to plead delayed discovery and which other courts have found sufficient under identical circumstances. Specifically, Plaintiff alleges that "Plaintiff reasonably expected his conversation would only be between the agent and himself and Plaintiff did not expect or have any reason to expect that Invoca, a third party, was listening in on his conversations" and that "Plaintiff did not have any knowledge about Defendant's unlawful actions at the time that he placed calls to AutoNation's dealerships and had no reason to believe that the unlawful conduct at issue occurred." (FAC, ¶¶ 34, 37.) Moreover, Plaintiff also alleged that, "Plaintiff found out about Defendant's unlawful use of Invoca's service only shortly before the filing of his original Complaint in this case." (*Id.* at ¶ 37.) These are the same allegations that other courts have found sufficient to plead the discovery rule. *Gaige v. Exer Holding Co., LLC*, No. 24-cv-06099, 2025 WL 559719, at *3 (C.D. Cal. Mar. 2, 2025) (finding that the plaintiff's allegations that "he did not know and had no way of knowing that his personally identifiable information . . . was intercepted and unlawfully disclosed" as well as the date when "Plaintiff became aware of the disclosure of this information" was sufficient to plead delayed discovery); *See also Serna v. 1-800-GOT-JUNK? LLC*, No. 24-cv-00047, 2024 WL 3915074, at *2 (C.D. Cal. Aug. 6, 2024) ("Here, Plaintiffs allege that they were unaware of the recordings until they met with

counsel on November 7, 2023. [] The allegation is plausible and sufficient for pleading purposes to avoid the statute of limitations challenge").

Finally, even if the Court were to find Plaintiff's allegations insufficiently specific, the proper remedy is permitting amendment to allow Plaintiff to plead additional facts surrounding his discovery of the violations at issue. *See, e.g.*, *Roney v. Miller*, 705 F. App'x 670, 671 (9th Cir. 2017) (holding lower court erred in denying leave to amend after dismissing first amended complaint); *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1183 (9th Cir. 2016) (reversing denial of leave to amend notwithstanding three prior amendments by the plaintiff).

## IV. Defendant's Challenge To Plaintiff's § 631(a) Claim Is Premature And Ignores Plaintiff's Well-Pled Allegations.

### A. Whether Invoca's technology was simply a "tape recorder" is a question of fact that is inappropriate to resolve at the pleading stage.

Defendant attempts to challenges Plaintiff's §631(a) claim by arguing that Invoca is merely a service provider to Defendant. (MTD at 20.) To begin with, numerous courts have held that determining whether a technology provider like Invoca is a party to the communication by simply being a service provider or is a third-party eavesdropper is a question of fact not suitable for determination on a motion to dismiss. *See Kauffman v. Papa John's Int'l, Inc.*, No. 22-cv-1492, 2024 WL 171363, at *7 (S.D. Cal. Jan. 12, 2024) ("Whether FullStory acts akin to a tape recorder or whether its actions are closer to 'an eavesdropper standing outside the door' is a question of fact which is better answered after discovery into the session replay technical context of the case"); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1080 (C.D. Cal. 2021) ("The question thus becomes, in analogue terms: is Quantum Metric a tape recorder held by Lululemon, or is it an eavesdropper standing outside the door? This is a question of fact for a jury, best answered after discovery into the storage mechanics of Session Replay"); *Esparza v. Kohl's, Inc.*, 723 F. Supp. 3d 934, 942 (S.D. Cal. 2024) (same). Indeed, even the *Gutierrez v. Converse*, No. 24-4797, 2025 WL 1895315 (9th Cir. July 9. 2025) decision that Defendant clings to was ultimately decided on summary judgment after full merits

discovery. Therefore, this question should be resolved at a more appropriate stage of the litigation.

B. Whether Invoca makes "independent use" of the recordings that it obtains is irrelevant as to whether Plaintiff stated a claim under Sec. 631(a).

Moreover, even looking at the merits of Defendant's arguments, courts have also held that it is irrelevant at this stage of litigation whether Invoca makes independent use of recorded calls between consumers and Defendant. Indeed, the Eastern District of California rejected a substantially similar argument in another CIPA case concerning the same Invoca technology at issue here, and recognized that "Section 631(a)'s text . . . does not actually contain a use requirement." *Tate*, 762 F. Supp. 3d at 955 (citing *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 899–900 (N.D. Cal. 2023)).[1] "In other words, an entity can violate the statute by learning the contents of the message *or* by using information obtained from listening in on a conversation." *Id*. The *Tate* court therefore found "it unnecessary to consider a third party's intention to collect or use data from a call" and held that "[o]btaining that data while reserving the capability to utilize it makes a third party distinct from one of the parties to the call and may trigger a violation of section 631(a)." *Id*.; *see* FAC ¶ 29 ("Invoca itself uses the call recordings and information derived therefrom for its own wholly separate internal purposes"). Defendant's argument regarding *Gutierrez v. Converse, Inc.* takes a limited – and unpublished – ruling with minimal reasoning well past its text. (MTD at 18-19.) The Ninth Circuit in *Gutierrez v. Converse* did not impute a use requirement on *any* CIPA violation. 2025 WL 1895315, at *1. Rather, *Gutierrez* stands for the premise that at the summary judgment stage there must be sufficient evidence to show that the alleged

[1] *See also id*. ("In weighing the plaintiff's section 631(a) claim, the *Javier* court critiqued [the argument] that a third-party software developer would need to use the data for its own purposes in order for it to violate section 631(a). The *Javier* court noted that there is already a use requirement in one of section 631(a)'s discrete clauses ('us[ing], or attempt[ing] to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained'), and therefore it would be improper to impute that use requirement to all of section 631(a). The court in that case also noted that … to consider a third party's intent in obtaining data here would similarly be improper. The Court finds *Javier*'s reasoning to be [] persuasive.") (internal citations omitted) (citing, *inter alia*, *Javier*, 649 F. Supp. 3d at 900).

wiretapping entity has read or attempted to read the plaintiff's message in violation of CIPA § 631(a)(ii). *Guttierez,* 2025 WL 1895315, at *1. Reading or attempting to read is not the same as using for one's own business purposes, which Defendant insists is the appropriate reading of *Gutierrez*. For example, CIPA itself has two distinct clauses, one which deals with reading information (§ 631(a)(ii)) and another which deals with using information (§ 631(a)(iii)). As such, *Gutierrez* does nothing to, as Defendant argues, "reject[] *Javier*'s reasoning." (MTD at 18.) Thus, Defendant's argument that the complaint fails to allege facts sufficient to show that Invoca is a third party that makes independent use of recorded calls does not defeat Plaintiff's CIPA claim. (Motion at 19.)

C. Plaintiff sufficiently alleges that Invoca independently used the information it obtained from customer phone calls with Defendant.

Even if this Court were to decide to take up Defendant's arguments on the merits, Defendant cannot ultimately overcome the directly on-point decision in *Busby v. Invoca* that involved the same exact Invoca technology as at issue here. In *Busby v. Invoca*, Invoca argued as Defendant does here that it is "merely an extension of DISH and DirectTV." 2025 WL 822664, at *1. The court rejected Invoca's self-characterization as an extension of its customers, holding that the plaintiffs' allegations that "Invoca is a separate legal entity from DISH and DirecTV, and that DISH and DirecTV are Invoca's customers[;]" that "Invoca recorded conversations between plaintiffs and DISH and DirecTV in which Invoca was not a party[;] and that "Invoca expressly claims the right to independently use data from the calls its recorded to 'market' and 'enhance' its own services" were sufficient state a claim under 631(a). *Busby*, 2025 WL 822664, at *1. The court also explicitly rejected Invoca's assertion that this situation is akin to *Rogers v. Ulrich* where the defendant "recorded their own conversations[,]" which Defendant also relies on in making its argument here. *Id.*; *see Rogers v. Ulrich*, 52 Cal. App. 3d 894 (1975). In doing so, the court in *Busby* stated that the plaintiffs "have plausibly alleged that Invoca, a third party, eavesdropped and secretly monitored the conversations plaintiffs had with DISH and DirecTV . . . [which] is prohibited by [§] 631(a)." *Busby*,

2025 WL 822664, at *1; *see also Ribas v. Clark*, 38 Cal. 3d 355, 359 (1985). Here, Plaintiff's FAC alleges facts directly analogous to *Busby* that "Invoca is a third-party separate and apart from AutoNation that is itself collecting the contents of phone call conversations between consumers and [Defendant's] customer service agents and performing the analysis described above before it is ever made available to AutoNation and its dealerships"; that "[n]either AutoNation nor Invoca informed consumers, prior to any recording, that Invoca was listening in on and obtaining consumer's information from their calls, and that the content of the calls were being recorded and analyzed by a third party"; and that "Invoca itself uses the call recordings and information derived therefrom for its own wholly separate internal purposes." (FAC, ¶¶ 29, 30, 29.)

Defendant's argument also ignores Plaintiff's plain allegations that Invoca *did* in fact have its own independent use for the information it intercepted. As referenced above, Invoca explicitly mentions in its own Privacy Policy "that it uses 'Personal Data'—which includes call information "including phone numbers and recordings'—to 'improve, operate, maintain, and, in some cases, market the Invoca Platform" and "conduct internal research in order to enhance the Invoca Platform and Services.'" FAC, ¶ 23[2]; *see Jackson v. LinkedIn Corp.*, 2024 WL 3823806, at *5 (N.D. Cal. Aug. 13, 2024) (finding violation of CIPA § 631 where "LinkedIn received this sensitive data and read and used it for its own marketing services"); *Javier*, 649 F. Supp. 3d at 900; *see also Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962, 972-73 (N.D. Cal. 2023) (agreeing with *Javier* that the question is whether the third party has the capability to use its record of the interaction, regardless of the third party's specific intent); *Smith v. Google, LLC,* 735 F. Supp. 3d 1188 (N.D. Cal. 2024) (rejecting argument that Google was a mere "vendor" where Google read and used the analytics data by: (1) using the data to power its algorithms; (2) gaining detailed information about its users; and (3) collecting and aggregating the data to present to its customers on a dashboard); *Gladstone v. Amazon*

[2] Defendant's reference to the "Customer Data Policy" which is actually available at FAC ¶ 22 n.10, not FAC ¶ 23 n.11, merely provides more fact questions as it is unclear how this orphan sentence is meant to interact with the Privacy Policy and its own contradictory clauses.

*Web Servs., Inc.*, 739 F. Supp. 3d 846, 855 (W.D. Wash. 2024) ("Plaintiff's allegations demonstrate that Defendant has capabilities beyond that of a mere tape recorder, and there is no evidence that Defendant is incapable of using the data for any other purpose").

D. Invoca's privacy policies support Plaintiff's allegations.

Defendant's assertions that other clauses in Invoca's privacy policies somehow invalidate the language quoted above merely raise questions of fact best inquired into post-discovery. To begin with, it is difficult to see how Defendant can credibly present any argument interpreting *another* entity's privacy policy. If Defendant wishes to lean on Invoca's privacy policies then it should do so through discovery by serving a subpoena on Invoca to explain exactly how its technology operates and what its privacy policies provide for. Even on the merits Defendant's argument that Plaintiff has misread Invoca's privacy policy fails to address head-on the disclosure cited above and in Plaintiff's FAC regarding Invoca using "Personal Data…To provide, run, personalize, improve, operate, maintain, and, in some cases, market the Invoca Platform and our Services." (FAC ¶ 23 & n.11.) While Defendant attempts to obfuscate by pointing to other sections of Invoca's privacy policies, Defendant fails to explain exactly how the other sections it cites contradict its general "Privacy Policy." Specifically, Defendant cannot self-servingly categorize Invoca as a service provider simply because Invoca considers itself subject to the California Consumer Privacy Act (CCPA). (MTD at 18.) It is the nature of a party's actions, not a sentence in their Privacy Policy, which determines if said party is a service provider or, as Plaintiff alleges, a third party. Nor is there anything about the phrase "exclusively on behalf and at the direction of our Clients" which would preclude Invoca from utilizing such data to run their services, personalize their services, improve their services, operate their services, or maintain their services. (*Id.*) Similarly, Defendant's attempted wordsmithing regarding Invoca's data anonymization policy actually *supports* Plaintiff's allegations. (*Id.* at 19.) While Invoca's anonymization policy could have simply read "Invoca only collects the Caller ID of the caller as personal data[.]" , it instead reads that "Invoca only collects the Caller

ID of the caller as personal data ***and*** redacts confidential information and call recordings and transcriptions." (*Id.*) (emphasis added). As such, implicit in Invoca's data anonymization policy is the disclosure that Invoca *does* "collect" "confidential information" and "call recordings and transcriptions" but redacts some unknown portions thereof. Such use plainly goes beyond simply being a "service provider." At a minimum the various provisions of Invoca's privacy policies raise issues of fact as to whether Invoca independently used the recorded information it obtained.

This Court should follow the lead of the *Tate* and *Busby* courts that have already evaluated the exact same technology at issue and determined that Invoca was a third party distinct from both the plaintiffs and the respective customers. *See Tate*, 762 F. Supp. 3d at 956–57; *Busby*, 2025 WL 822664, at *1.

## V. Plaintiff Pleads Sufficient Facts That Defendant Violated Cal. Pen. Code § 632(a)

### A. Defendant erroneously tries to apply the definition of "device" from § 637.7 to Plaintiff's claim under § 632(a).

Defendant's challenge to Plaintiff's claim under § 632(a) of CIPA that Invoca's software (and software more broadly) cannot be considered a "device" is based on a flawed application of one interpretation of what constitutes a "device" for purposes of CIPA § 637.7 (not at issue here) to § 632(a). This borrowing of the definition of device from § 637.7 and grafting it onto § 632(a) has not been endorsed by any courts other than the court in *Doe v. Microsoft Corp.*, No. 23-cv-0718, 2023 WL 8780879, at *8 (W.D. Wash. Dec. 19, 2023). However, as another court in the same district held just a year later the *Doe* court erred in its transposition of defined terms from § 637.7 to § 632(a). *See Gladstone*, 739 F. Supp. 3d at 857 ("[C]ourts have understood 'device' in Section 637.7 to refer to equipment. *See, e.g., In re Google Location Hist. Litig.*, 428 F. Supp. 3d at 193. But Section 632 contains materially different language than Section 637.7, and it does not contain similar context that would narrow the meaning of 'device' here"). California courts have also consistently rejected the reasoning cited by

Defendant. *See Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1080 (N.D. Cal. 2023), motion to certify appeal denied, No. 22-cv-03580, 2024 WL 4375776 (N.D. Cal. Oct. 2, 2024) ("The section 637.7 cases are distinguishable, and absent contrary authority under section 632(a), I agree that the Pixel software is a device under section 632(a)"); *see also Yockey v. Salesforce, Inc.*, 745 F. Supp. 3d 945, 955 (N.D. Cal. 2024) ("The Court agrees with those Ninth Circuit district court decisions that have found that software qualifies as a device under Section 632"); *see also id*. at n.6 ("The Court is aware of *Doe v. Microsoft Corp*…However, *Doe v. Microsoft Corp.* relied on *In re Google Location Hist. Litig*…and *Moreno v. San Francisco Bay Area Rapid Transit Dist*... Those cases both involved Penal Code Section 637.7 and are distinguishable on that basis. *Doe v. Meta Platforms*, 690 F. Supp. 3d at 1080"). The court in *Tate v. VITAS Healthcare Corp.* was even more explicit in its dismantling of Defendant's argument:

> Section 637.7(d)'s text explicitly restricts its definition of "electronic *tracking* device" (emphasis added) to that specific section, rather than to other sections such as 632(a) which use the more generic phrase "electronic device"…And even if its definition were used to inform other sections, section 637.7 is concerned with electronic tracking devices that are clearly meant to be physical and thus is not a proper consideration for defining "device" under section 632(a). Specifically, section 637.7(d) defines an "electronic tracking device" as one that can be "attached to a vehicle or other movable thing" which evinces the statute's emphasis on proscribing physical tracking devices. See § 637.7(d). Section 632(a), however, lacks any language suggesting that an "electronic amplifying or recording device" must be physical in nature. Relying on the more specific text of section 637.7(d) to inform section 632(a) is misguided, given section 637.7(d)'s explicit focus on tangible devices.

762 F. Supp. 3d at 957-58. Here, Plaintiff properly alleged that "Invoca's software is an 'electronic amplifying or recording device' because the software can record conversations and, in doing so, violates the rights of at least one of the callers" (FAC ¶ 55) as such Defendant's argument for an often-dismissed rogue interpretation of "device" under § 632(a) must be rejected.

B. <u>Given the contents of Plaintiff's conversation that was recorded it was objectively reasonable to believe that it was confidential.</u>

With regards to the confidential nature of Plaintiff's communications with Defendant, Cal. Penal Code § 632 states that "confidential communication means any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto." Plaintiff plainly alleged as much that he "disclosed personally identifiable or otherwise private information…including his name, address, phone number, vehicle description, license plate, and billing information" and that he "reasonably expected his conversation would only be between the [contact center] agent and himself[.]" FAC, ¶¶ 33-34; *see Busby,* 2025 WL 822664, at *1 ("that expectation does not encompass Invoca"). While the party's expectation that a communication is "confidential" must be objectively reasonable, there is nothing to suggest that Plaintiff's expectation was not. *Flanagan v. Flanagan*, 27 Cal. 4th 766, 768 (2002). As such, for the same reasons as discussed in Section II above, Defendant's citations to *Lien v. Talkdesk* is inapplicable given the fundamentally different and confidential nature of Plaintiff's phone call. (MTD at 24.) Defendant's citation to *Faulkner v. ADT Sec. Servs., Inc.* (MTD at 23-24) actually *supports* Plaintiff's 632(a) claim given the Ninth Circuit's reasoning on appeal. While affirming the decision by the *Faulkner* district court to dismiss, the Ninth Circuit's opinion undercuts Defendant's argument. *See Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1020 n.** (9th Cir. 2013) ("There is nothing inherently *non-confidential* about a billing dispute... For example, a caller might…confirm[] his social security number or his unlisted telephone number, or…disclose other private or potentially private information. If adequately pled, such facts might well support a finding of confidentiality"). While the Ninth Circuit ultimately upheld the District Court's dismissal of the complaint, it only did so because the plaintiff's complaint was missing exactly the sort of information that Plaintiff has pled here. *See id.* at 1020 (dismissing without prejudice and giving leave to amend where the plaintiff had *only* two allegations

that (1) the call was to "dispute a charge" and (2) that the conversation was such that a party would have expected it to be confidential). Defendant cites no case law to support its bald assertion that "call recording is widely known and reasonably expected in commercial contexts" (MTD at 24), a proposition which stands in total opposition to the consent requirements under CIPA. As mentioned above, Plaintiff explicitly pleads that he disclosed highly confidential information during his phone calls, in direct contrast to both the plaintiff's allegations in *Faulkner* and *Lien*. It is *objectively* reasonable to believe that a communication involving such private and sensitive information would be confidential and subject to the protections of § 632(a).

C. Plaintiff did not consent to his conversations being recorded.

Finally, while Defendant attempts to argue that Plaintiff "consented" to the recording (MTD at 25), as Defendant itself admits Plaintiff explicitly pled that he did not consent to the conduct at issue (*see* FAC, ¶¶ 6, 31, 36, 38, 58) nor expect it. (*See id.* at ¶¶ 34, 57). Defendant's creative wordplay that Plaintiff failed to specifically allege that Plaintiff did not consent to Defendant's *dealerships* recording his conversation (MTD at 25) is in fact an improper attempt to challenge that facts alleged by Plaintiff and disregard the fact that at the pleading stage all pleadings should be read in Plaintiff's favor. Indeed, it would turn the applicable standard on a 12(b)(6) motion to dismiss on its head for the Court to rule that any ambiguity as to the entities referenced when Plaintiff pleads "AutoNation" should be read in Defendant's favor and that Plaintiff's failure to plead otherwise means that the Court can infer that Plaintiff provided consent to the dealerships separate and apart from Defendant itself. This is especially the case when Plaintiff plainly alleges that the calls at issue in this suit involve "AutoNation, Inc. [] dealerships" (FAC, ¶ 1) and references "*its* dealerships." (*Id.* at ¶ 2) (emphasis added); *see also id.* at ¶ 25 ("AutoNation, America's largest and most recognized automotive retailer, contracted with Invoca to provide its services to track customer interactions with *AutoNation's dealership entities*") (emphasis added).

Moreover, even if Defendant's veiled assertion that Plaintiff consented to or should have expected he would be recorded by *someone* were true (MTD at 25), though it is not, such knowledge does not defeat the fact that explicit notification is required in this context. *See Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 620 (N.D. Cal. 2021) ("In order for consent to be actual, the disclosures must 'explicitly notify' users of the practice at issue"); *In re Google Inc.*, 2013 WL 5423918, at *13 (N.D. Cal. Sept. 26, 2013) ("Google points to its Terms of Service and Privacy Policies, to which all Gmail and Google Apps users agreed, to contend that these users explicitly consented to the interceptions at issue. The [c]ourt finds, however, that those policies did not explicitly notify plaintiffs that Google would intercept users' emails for the purposes of creating user profiles or providing targeted advertising"); *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 848 (N.D. Cal. 2014) ("However, as discussed above in the context of express consent, any consent with respect to the processing and sending of messages itself does not necessarily constitute consent to the specific practice alleged in this case—that is, the scanning of message content for use in targeted advertising"). Therefore, as pled by Plaintiff here, and as resolved by *Tate* and *Busby*, Plaintiff did not consent to Invoca's recording of his calls with Defendant as a matter of law. *See Tate*, 762 F. Supp. 3d at 952 ("Neither VITAS nor Invoca obtain the consent of any caller to VITAS's call center …."); *Busby,* 2025 WL 822664, at *1 ("these disclosures did not request or obtain plaintiffs' consent for Invoca to record the calls in the manner alleged").[3] Accordingly, Defendant's Motion with respect to § 632 must be similarly denied.

---

[3] Defendant's argument that Plaintiff is essentially treating "consent" as a subjective standard that turns on whether Plaintiff "disagrees with the use of Invoca as a recording device" is nonsensical. Plaintiff pleads that he did not consent to the recording at issue. To the extent that Defendant has any evidence otherwise, it can introduce it at the appropriate time and file for summary judgment. Nothing in Plaintiff's FAC *or* Defendant's Motion to Dismiss suggests that Plaintiff in fact consented to the recording at issue but nonetheless filed this suit simply because he "disagreed" with Defendant's use of Invoca as a third-party eavesdropper on his confidential conversation.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss.

DATED: September 8, 2025

Respectfully Submitted,
By: <u>*/s/ Eugene Y. Turin*</u>

**MCGUIRE LAW, P.C.**
Eugene Y. Turin (SBN 342413)
1089 Willowcreek Road, Suite 200
San Diego, CA 92131
Tel: (312) 893-7002
Fax: (312) 275-7895
eturin@mcgpc.com

*Counsel for Plaintiff and the Proposed Class Members*

**CERTIFICATE OF COMPLIANCE WITH L.R. 11-6.1**

The undersigned, counsel of record for Plaintiff Mike Xavier, certifies that the foregoing memorandum contains 6,990 words, which complies with the word limit of L.R. 11-6.1.

DATED: September 8, 2025

By: */s/ Eugene Y. Turin*

Eugene Y. Turin (SBN 342413)
1089 Willowcreek Road, Suite 200
San Diego, CA 92131
Tel: (312) 893-7002
Fax: (312) 275-7895
eturin@mcgpc.com

*Counsel for Plaintiff and the Proposed Class Members*