USAMA KAHF (SBN 266443)
ukahf@fisherphillips.com
FISHER & PHILLIPS LLP
2050 Main Street, Suite 1000
Irvine, California 92614
Telephone: (949) 851-2424
Facsimile: (949) 851-0152

DARCEY M. GRODEN (SBN 296492)
dgroden@fisherphillips.com
XUAN ZHOU (SBN 333504)
xzhou@fisherphillips.com
FISHER & PHILLIPS LLP
4747 Executive Drive, Suite 1000
San Diego, California 92121
Telephone: (858) 597-9600
Facsimile: (858) 597-9601

Attorneys for Defendant
AUTONATION, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

MIKE XAVIER individually and on behalf of similarly situated individuals,

Plaintiffs,

v.

AUTONATION, INC.,

Defendant.

CASE NO.: 5:25-cv-00731-AB-DTB

**DEFENDANT AUTONATION, INC.'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS RULE 12 MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Date: November 7, 2025
Time: 10:00 AM
Crtrm: 7B
Judge: André Birotte Jr.

Complaint Filed: March 24, 2025
FAC Filed: June 23, 2025
Trial Date: None

# TABLE OF CONTENTS


**PAGE**

I. INTRODUCTION ..... 1

II. PLAINTIFF HAS NOT ESTABLISHED PERSONAL JURISDICTION ..... 1

A. AutoNation, Inc. Indirectly Owning California Subsidiaries Is Not Express Aiming ..... 1

B. Plaintiff Does Not Establish That An Agency Relationship Exists That Would Support Jurisdiction Over AutoNation, Inc. ..... 2

C. Because There is No Purposeful Direction, AutoNation, Inc. Need Not Establish the Lack of Reasonableness of Personal Jurisdiction ..... 3

III. PLAINTIFF DOES NOT HAVE STANDING TO BRING THIS LAWSUIT ..... 4

A. A Recent Ninth Circuit Decision Held that A Bare Statutory Violation of a Privacy Statute Does Not Confer Injury-in-Fact. ..... 4

B. Plaintiff Fails to Plead an Invasion of Any Privacy Interest Creating an Injury-In-Fact ..... 6

C. Plaintiff Fails to Assert Harm Sufficient to Confer Standing. ..... 7

IV. PLAINTIFF'S CIPA CLAIMS ARE TIME BARRED ..... 7

V. PLAINTIFF FAILS TO STATE A CLAIM UNDER SECTION 631(A) ..... 9

A. The Court May Properly Address Whether Plaintiff Has Plausibly Pleaded that Invoca Is Not a Tape Recorder ..... 9

B. Whether Plaintiff Plausibly Pleads that Invoca Makes Independent Use of Plaintiff's Information is a Dispositive Legal Question ..... 10

C. Invoca's Privacy Policy Does Not Support Plaintiff's Allegations ..... 11

VI. PLAINTIFF FAILS TO STATE a claim under Section 632(a) ..... 13

A. Plaintiff Misconstrues the Meaning of "Device" ..... 13

B. Plaintiff Does Not Plausibly Allege a Confidential Communication ..... 14

C. Plaintiff's Conclusory Allegations Do Not Plead Lack of Consent ..... 15

VII. CONCLUSION ..... 15

## TABLE OF AUTHORITIES

**PAGE**

**Federal Cases**

*Adobe Systs. Inc. v. Blue Source Group, Inc.*,
125 F. Supp. 3d 945 (N.D. Cal. 2015)....................15

*Balanzar v. Fid. Brokerage Servs., LLC*,
654 F. Supp. 3d 1075 (S.D. Cal. 2023)....................8

*Burdick v. Union Sec. Ins. Co.*,
No. 07-cv-4028, 2009 WL 4798873 (C.D. Cal. Dec. 9, 2009)....................8

*Busby v. Invoca*,
No. 24-cv-05542-JD, 2025 WL 822664 (N.D. Cal. Mar. 14, 2025)......10, 11, 15

*Cahan v. Toyota Motor Corp.*,
147 F. Supp. 3d 955 (N.D. Cal. 2015)....................6

*Conohan v. Rad Power Bikes Inc.*,
No. CV 25-0106 PVC, 2025 WL 1111246 (C.D. Cal. Apr. 3, 2025)....................5

*Cordero v. Sportsman's Warehouse, Inc.*,
No. 2:24-CV-575-DAK-CMR, 2025 WL 1114196 (D. Utah Apr. 15, 2025)....................6

*Daghaly v. Bloomingdales.com, LLC*,
No. 23-4122, 2024 WL 5134350 (9th Cir. Dec. 17, 2024)....................5

*Daimler AG v. Bauman*,
571 U.S. 117 (2024)....................2

*Dangoor v. Peterson's Stampede Dodge Chrysler Jeep, LLC*,
No. 2:19-CV-01793-SVW-JC, 2019 WL 6357252 (C.D. Cal. Aug. 8, 2019)....................3

*Doe v. Microsoft Corp.*,
No. 23-cv-0718, 2023 WL 8780879 (W.D. Wash. Dec. 19, 2023)....................13

*Faulkner v. ADT Security Services, Inc.*,
706 F.3d 1017....................14

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
592 U.S. 351 (2021) .......... 2, 3

*Gaige v. Exer Holding Co., LLC*,
No. 2:24-CV-06099-AH-(AJRX), 2025 WL 559719 (C.D. Cal. Mar. 2, 2025) .......... 8

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) .......... 10

*Guerrero v. Greenpoint Mortg. Funding, Inc.*,
403 Fed. App'x 154 (9th Cir. 2010) .......... 9

*Gutierrez v. Converse Inc.*,
No. 24-4797, 2025 WL 1895315 (9th Cir. 2025) .......... 10, 11

*Herbal Brands, Inc. v. Photoplaza, Inc.*,
72 F.4th 1085 (9th Cir. 2023) .......... 2, 3

*Lazy Y Ranch Ltd. v. Behrens*,
546 F.3d 580 (9th Cir. 2008) .......... 11

*Lien v. Talkdesk, Inc.*,
No. 24-cv-06467-VC, 2025 WL 551664 (N.D. Cal. Feb. 19, 2025) .......... 14, 15

*Moledina v. Marriott Int'l, Inc.*,
635 F. Supp. 3d 941 (C.D. Cal. 2022) .......... 3

*Popa v. Microsoft Corporation*,
No. 24-14, --F.4th--, 2025 WL 2448824 (9th Cir. Aug. 26, 2025) .......... 1, 4, 5, 7

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) .......... 3

*Serna v. 1-800-GOT-JUNK, LLC*,
No. 5:24-CV-00047-HDV-MRW, 2024 WL 3915074 (C.D. Cal. Aug. 6, 2024) .......... 8

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .......... 4

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) .......... 11

*Tate v. VITAS Healthcare Corp.*,
762 F. Supp. 3d 949 (E.D. Cal. 2025) .................................................. 10, 11, 15

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ................................................................................ 4, 5, 6

*United States v. Kirilyuk*,
29 F.4th 1128 (9th Cir. 2022) ........................................................................ 3

*Vieira v. Mentor Worldwide, LLC*,
392 F. Supp. 3d 1117 (C.D. Cal. 2019), aff'd 845 Fed. App'x 503 (9th Cir. 2021) ........................................................................................................ 9

*Walden v. Fiore*,
571 U.S. 277 (2014) ....................................................................................... 3

*Williams v. Yamaha Motor Co. Ltd.*,
851 F.3d 1015 (9th Cir. 2017) ................................................................... 1, 2

*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014) ....................................................................... 6

**State Cases**

*Fox v. Ethicon Endo-Surgery, Inc.*,
35 Cal. 4th 797 (2005) .................................................................................... 7

*Ribas v. Clark*,
38 Cal. 3d 355 (1985) .................................................................................... 10

**State Statutes**

CAL. PENAL CODE § 637.7(d) ........................................................................ 14

Penal Code §§ 631(a) .......................................................................... 1, 9, 10, 13

Penal Code § 632(a) ................................................................................ 13, 14, 15

Penal Code § 637.7 ........................................................................................ 14

Pennsylvania's Wiretapping and Electronic Surveillance Contract Act ..................... 4

VEH. CODE § 16205(a) ..................................................................................... 6

**Rules**

Rule 8 .......... 15

Rule 12(b)(6) .......... 9

## I. <u>INTRODUCTION</u>

Plaintiff's Opposition has failed to rebut that this Court lacks personal jurisdiction over AutoNation, Inc. Moreover, the recent Ninth Circuit decision in *Popa v. Microsoft Corporation*, No. 24-14, --F.4th--, 2025 WL 2448824 (9th Cir. Aug. 26, 2025) makes clear that Plaintiff lacks Article III standing because a violation of CIPA without an injury in fact – that is, a harm similar to a recognized privacy tort – is insufficient. Plaintiff has neither pleaded in his First Amended Complaint nor argued in the Opposition to the Motion to Dismiss an analog to any such tort.

Even if Plaintiff could overcome these hurdles – which he cannot – Plaintiff has still failed to state a claim for either a violation of Penal Code §§ 631(a) or 632(a).

Plaintiff's Opposition fails to cure the deficiencies identified in the Motion to Dismiss. Accordingly, the Court should grant AutoNation, Inc.'s Motion to Dismiss in its entirety, without leave to amend.

## II. <u>PLAINTIFF HAS NOT ESTABLISHED PERSONAL JURISDICTION</u>

Plaintiff does not dispute that this court does not have general personal jurisdiction over AutoNation, Inc. (*See* Mtn. at 3:20 – 8:17; Opp. at 3:27-28.) As such, personal jurisdiction hinges on whether Plaintiff can establish specific personal jurisdiction – which he cannot.

### A. <u>AutoNation, Inc. Indirectly Owning California Subsidiaries Is Not Express Aiming</u>

Plaintiff erroneously argues that AutoNation, Inc. expressly aimed its conduct at California by having California subsidiaries. (Opp. at 4:16-23.) This is essentially an argument for *general* personal jurisdiction masked as an argument for *specific* personal jurisdiction, and the facts Plaintiff points to have been insufficient to establish such personal jurisdiction as explained in *Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1020-22 (9th Cir. 2017). (*See* Mtn. at 3:20 – 8:17.)

///

///

Plaintiff also erroneously argues that AutoNation, Inc. expressly aimed its conduct at California because AutoNation, Inc. contracted and paid for Invoca's technology for subsidiaries to use.[1] (Opp. at 4:16-24.) The Ninth Circuit has made clear that a parent company is not automatically subject to personal jurisdiction based on the in-forum activities of its subsidiaries. *Williams*, 851 F.3d at 1021. For purposes of specific personal jurisdiction, the Ninth Circuit rejected that a parent providing to a California subsidiary a product that will be used or sold by the subsidiary in the California market is the parent expressly aiming at the California market. *Id.* at 1023.

**B. <u>Plaintiff Does Not Establish That An Agency Relationship Exists That Would Support Jurisdiction Over AutoNation, Inc.</u>**

Plaintiff's only avenue forward would be to demonstrate that the California subsidiaries were acting as agents of AutoNation, Inc. The Ninth Circuit in *Williams* was skeptical of the viability of agency theory to impose specific personal jurisdiction on a parent company in light of the Supreme Court decision in *Daimler AG v. Bauman*, 571 U.S. 117 (2024). *See Williams*, 851 F.3d at 1024-25. However, this Court need not even reach that issue because Plaintiff does not make the factual showing that the subsidiaries were AutoNation Inc.'s agents based on unity of interest and that failure to disregard the separate identities would result in fraud or injustice. *Id.* at 1021. Plaintiff fails to dispute AutoNation, Inc.'s evidence that AutoNation, Inc. did not have the right to substantially control its subsidiaries' activities. (Fergus Decl. ¶¶ 1-14.)

Plaintiff's reliance on *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1096 (9th Cir. 2023) and *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 362-63 (2021) to establish specific personal jurisdiction is misplaced as neither case involves imputing contacts from a subsidiary to a parent company. In both *Ford*

---

[1] Plaintiff argues in the Opposition that AutoNation, Inc. paid for Invoca for its subsidiaries and installed Invoca. (Opp. at 4:16-24, 5:1-6.) Plaintiff's citations to the FAC do not plead such allegations, nor does Plaintiff point to any evidence for such a claim; Plaintiff only pleads that AutoNation, Inc. contracted with Invoca. (*See* FAC ¶¶ 9, 27.)

*Motor Company* and *Herbal Brands*, the defendant promoted, sold, and distributed the products giving rise to the lawsuit directly to residents in the forum state. *Ford Motor Co.*, 592 U.S. at 354, 364-65; *Herbal Brands*, 72 F.4th at 1092-93. In contrast, AutoNation, Inc. does not promote, sell, or distribute any products in California; rather, its subsidiaries do. (Fergus Decl. ¶¶ 2-9; First Amended Complaint ("FAC") ¶¶ 32-33, 35, 37-38.) And Invoca is not a product being promoted, sold, and distributed by the subsidiaries to consumers in those states – it is a product being *used* by subsidiaries. (FAC ¶¶ 9, 11; *see* Fergus Decl. ¶¶ 2-9.)

Plaintiff's remaining cases about express aiming fail to move the needle in Plaintiff's favor because they do not address imputing a subsidiary's contacts to a parent company nor are they factually analogous to the case before this court. *See Moledina v. Marriott Int'l, Inc.*, 635 F. Supp. 3d 941, 949-50 & n.2 (C.D. Cal. 2022) (no personal jurisdiction where California resident's call to a Texas hotel was recorded in Utah, despite that the defendant operated approximately 500 California properties); *Dangoor v. Peterson's Stampede Dodge Chrysler Jeep, LLC*, No. 2:19-CV-01793-SVW-JC, 2019 WL 6357252, at *1-3 (C.D. Cal. Aug. 8, 2019) (no personal jurisdiction where California resident's phone calls to Idaho car dealerships were recorded); *Walden v. Fiore*, 571 U.S. 277, 290 (2014) ("The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way."). As the Ninth Circuit has held, "cases are 'not precedential for propositions not considered." *United States v. Kirilyuk*, 29 F.4th 1128, 1134 (9th Cir. 2022), quoting *United States v. Pepe*, 895 F.3d 679, 688 (9th Cir. 2018).

**C. <u>Because There is No Purposeful Direction, AutoNation, Inc. Need Not Establish the Lack of Reasonableness of Personal Jurisdiction</u>**

The "fair play and substantial justice" inquiry arises only if the plaintiff satisfies the first two prongs of the specific jurisdiction test – purposeful direction <u>and</u> claims arising out of or relating to forum contacts. *Schwarzenegger v. Fred*

*Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). As discussed in the moving papers and above, Plaintiff has not met his burden on the purposeful direction prong, so the Court need not reach the issues of reasonableness.

This Court therefore lacks personal jurisdiction and should dismiss the case.

## III. PLAINTIFF DOES NOT HAVE STANDING TO BRING THIS LAWSUIT

To establish Article III standing, Plaintiff must allege a concrete injury-in-fact. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021). Plaintiff has not done so in this case.

### A. A Recent Ninth Circuit Decision Held that A Bare Statutory Violation of a Privacy Statute Does Not Confer Injury-in-Fact.

After AutoNation, Inc. file its Motion to Dismiss but before Plaintiff filed his Opposition, the Ninth Circuit – in a published case – weighed in on the impact of *TransUnion* on Article III standing. In *Popa v. Microsoft Corporation*, the Ninth Circuit affirmed that there was no Article III standing for a claim arising from the alleged violation of Pennsylvania's Wiretapping and Electronic Surveillance Contract Act for use of session replay software on a website. *Popa v. Microsoft Corp.*, No. 24-14, -- F.4th --, 2025 WL 2448824, at *2-3, 6, 8 (9th Cir. Aug. 26, 2025). The Ninth Circuit has recognized that "*TransUnion* contemplates a standing inquiry particularized to a plaintiff's circumstances and benchmarked to a specific tort," thereby rejecting generalized invasion of privacy harms as sufficient to establish Article III standing. *Id.* at *5.

In other words: there is "no free-roaming privacy right at common law." *Popa*, 2025 WL 2448824, at *6. Rather, Plaintiff must tether the harm to a harm similar in of the following four torts: intrusion upon seclusion, appropriation of another person's name or likeness, publicity given to another person's private life, and publicity that places one in a false light. *Id.* Article III "requires a plaintiff to demonstrate more than just a statutory violation when evaluating whether a plaintiff

has alleged a concrete injury." *Id.* at *7. Plaintiff fails to identify any such tort or harm here.

To the extent that <u>any</u> district court has ruled that a statutory violation of CIPA alone is sufficient to confer standing, such rulings have been overruled by *Popa*. As such, Plaintiff's reliance on *Conohan v. Rad Power Bikes Inc*., No. CV 25-0106 PVC, 2025 WL 1111246, at *5-6 (C.D. Cal. Apr. 3, 2025) to support that a statutory violation of CIPA creates standing under *TransUnion* is misplaced because *Conohan* was decided pre-*Popa* and has been effectively overruled by the Ninth Circuit.

Moreover, in *Conohan*, the plaintiff alleged TikTok's tracking software collected – *from an otherwise anonymous individual* – plaintiff's device/browser information, geographic information, referral tracking, and URL tracking to match it up with existing data TikTok had accumulated about hundreds of millions of Americans, including scanning for names, dates of birth, and addresses to identify individuals with certainty. *Conohan*, 2025 WL 1111246, at *6. The court emphasized that TikTok built digital dossiers on users, a far cry from the limited allegations presented in current case. *Id*. The court's reasoning thus rested on allegations of pervasive and covert data harvesting, not simply the existence of a CIPA violation.

Indeed, *Conohan* itself distinguished *Daghaly v. Bloomingdales.com, LLC*, No. 23-4122, 2024 WL 5134350, at *1 (9th Cir. Dec. 17, 2024) where the Ninth Circuit held that a plaintiff lacked standing because she had not alleged any intercepted communication capable of implicating a cognizable privacy interest. *Conohan*, 2025 WL 1111246, at *6; *see also Daghaly*, 2024 WL 5134350, at *1 (holding that even if the fact of plaintiff's visit to defendant's website was transmitted to a third party, "that transmission cannot without more provide the basis for a [CIPA] claim."). The reasoning aligns with *Popa* and applies here: Plaintiff's allegations regarding transactional details he voluntarily provided fall short of demonstrating the type of concrete privacy harm required for standing.

///

Additionally, Plaintiff relies on *Cordero v. Sportsman's Warehouse, Inc*., No. 2:24-CV-575-DAK-CMR, 2025 WL 1114196 (D. Utah Apr. 15, 2025) to argue why he has an injury-in-fact due to the nature of the information allegedly disclosed (which he does not, as addressed below). (Opp. at 8:7-11.) *Cordero* reached a discussion of whether the plaintiff had a privacy interest in the information disclosed because the court, relying on *TransUnion*, explained that the plaintiff needed more than just a statutory violation of CIPA to state a claim. *Id.* at *3.

### B. Plaintiff Fails to Plead an Invasion of Any Privacy Interest Creating an Injury-In-Fact

Plaintiff's Opposition fails to meaningfully dispute that most of the information he alleges is insufficient to establish a concrete injury. Plaintiff acknowledges that contact information is insufficient to establish a concrete injury, citing to AutoNation, Inc.'s cases. (Mtn. at 7:27 – 8:3.) Plaintiff insists that vehicle description and license plate are the type of information persons have a privacy interest in but cites no case for that point and does not address both statutory authority and caselaw which AutoNation, Inc. brought up which contradicted that claim. (Mtn. at p. 13:3-14, citing to VEH. CODE § 16205(a); *Cahan v. Toyota Motor Corp.*, 147 F. Supp. 3d 955, 973 (N.D. Cal. 2015).)

With the majority of Plaintiff's allegations insufficient as a matter of law, Plaintiff hangs his hat on a vague reference to "billing information." (Opp. at 8:3-19.) While Plaintiff's Opposition attempts to imply that billing information is a credit card number, no such allegation is in the FAC. It is unclear whether Plaintiff means an actual credit card or debit card number, email or address information (i.e., where bills can be sent), or an indication of the payment method Plaintiff intends to use and provide when at the dealership. Without specificity, the allegation does not plausibly implicate a protectable privacy interest. *In re Zynga Privacy Litig*., 750 F.3d 1098, 1105-06 (9th Cir. 2014) (rejecting conclusory allegations where plaintiffs failed to plausibly allege disclosure of sensitive or identifying information).

### C. Plaintiff Fails to Assert Harm Sufficient to Confer Standing.

Plaintiff relies solely on the alleged statutory violation as the basis for his claims. (FAC ¶¶ 7, 17, 52, 59.) As discussed in regard to *Popa*, that is not enough.

Plaintiff does not tether his allegations to any recognized privacy tort (or cite a single case showing that the types of information he alleges could give rise to such a tort) nor demonstrate a real-world harm. Instead, he asserts in vague terms that his "billing information" and other transactional details were captured during a phone call he voluntarily placed to a dealership. Plaintiff does not allege that this information was misused, disclosed to third parties, or otherwise exposed in a way that created a cognizable injury. Such conclusory allegations fall well short of the "particularized" and "concrete" showing Article III requires, and his reliance on a bare statutory violation cannot cure that deficiency.

## IV. PLAINTIFF'S CIPA CLAIMS ARE TIME BARRED

Plaintiff cannot rely on the delayed discovery rule to save his time-barred claims. Conclusory allegations will not withstand a motion to dismiss, and plaintiff bears the burden to show diligence. *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005).

Plaintiff's arguments that his vague assertions that he "did not expect" a third party was listening and that he "found out" about AutoNation, Inc.'s alleged conduct shortly before filing this lawsuit are unavailing. (Oppo. At 9:13-18, quoting FAC ¶¶ 34, 37.) Plaintiff fails to identify when or how he allegedly discovered the supposed violation, what steps he took to investigate, or why he could not have discovered the alleged interception.

Plaintiff meeting his pleading burden is critical because neither Plaintiff's FAC nor the Opposition attempt to reconcile Plaintiff's claim of only recently discovering AutoNation, Inc.'s alleged conduct with the multiple specific factual allegations in the FAC claiming that details about the recordings were online for multiple years prior to bringing this instant lawsuit. While Plaintiff points to other cases in which

he claims that his vague assertions of lack of knowledge were found sufficient (Opp. at 9:20 – 10:2), none of those rulings address a Plaintiff's complaint inconsistently pointing to years of publication about the practice in question.

Plaintiff's reliance on recent decisions such as *Gaige* and *Serna* is misplaced because in those cases – unlike here – there is no discussion of the plaintiffs pleading facts putting them on notice of the alleged conduct years before filing their lawsuits. In *Gaige*, the court found delayed discovery allegations sufficient where plaintiff alleged the defendant kept the alleged unlawful interception of personal information a secret and plaintiff only became aware of the conduct in June 2024. *Gaige v. Exer Holding Co., LLC*, No. 2:24-CV-06099-AH-(AJRX), 2025 WL 559719, at *3 (C.D. Cal. Mar. 2, 2025) In *Serna*, plaintiffs alleged they were never informed their calls with the defendant were being recorded and thus plausibly remained unaware until they met with counsel on November 7, 2023. *Serna v. 1-800-GOT-JUNK? LLC*, No. 5:24-CV-00047-HDV-MRW, 2024 WL 3915074, at *1-3 (C.D. Cal. Aug. 6, 2024).

Unlike those cases, Plaintiff here has alleged no comparable facts that would excuse his failure to discover the alleged interception within the statutory limitations period. To the contrary, the very sources Plaintiff cites – the June 28, 2023 YouTube video and the July 14, 2022 article discussing AutoNation, Inc.'s use of Invoca – confirm that information regarding the alleged conduct was publicly available well before this suit was filed. (FAC ¶ 25 n.13-14.) Despite that these allegations within the FAC (which are inconsistent with delayed discovery) were discussed in AutoNation Inc.'s moving papers (Mtn. at 15:1-7), Plaintiff has made no attempt to address them in the Opposition.

The remainder of Plaintiff's cases are irrelevant to whether he met his pleading standard. *Burdick v. Union Sec. Ins. Co.*, No. 07-cv-4028, 2009 WL 4798873, at *10 (C.D. Cal. Dec. 9, 2009) (ruling on a motion for summary judgment, not whether Plaintiff had met her pleading burden); *Balanzar v. Fid. Brokerage Servs., LLC*, 654 F. Supp. 3d 1075, 1083 n.4 (S.D. Cal. 2023) (not requiring plaintiff to plead all the

elements of delayed discovery because claims not necessarily outside the statute of limitations without the delayed discovery rule).

Finally, Plaintiff's fallback request for leave to amend should also be denied. Plaintiff has already had the opportunity to amend and has failed to cure these deficiencies. Plaintiff has not articulated in the Opposition how he would cure these deficiencies. *See Guerrero v. Greenpoint Mortg. Funding, Inc.*, 403 Fed. App'x 154, 157 (9th Cir. 2010) (district court did not abuse discretion in denying leave to amend where plaintiffs "did not lodge a proposed amended complaint or otherwise show what they would have pleaded to cure the deficiencies"); *Vieira v. Mentor Worldwide, LLC*, 392 F. Supp. 3d 1117, 1132 (C.D. Cal. 2019) (This Court "denies leave to amend because Plaintiffs have not explained how further amendment could cure the pleading deficiencies in their Complaint."), aff'd 845 Fed. App'x 503, 506 (9th Cir. 2021). Plaintiff's CIPA claims should therefore be dismissed with prejudice as time barred.

## V. PLAINTIFF FAILS TO STATE A CLAIM UNDER SECTION 631(A)

### A. The Court May Properly Address Whether Plaintiff Has Plausibly Pleaded that Invoca Is Not a Tape Recorder

Plaintiff incorrectly contends that the Court must defer any Section 631(a) analysis until after discovery, asserting that whether Invoca is a "tape recorder" or a third-party "eavesdropper" is a factual question. That misstates the law; courts may determine on a Rule 12(b)(6) motion whether a plaintiff has pleaded the requisite elements for a claim, including whether Plaintiff has plausibly pleaded that Invoca is a tape recorder. While Plaintiff had pointed to cases where courts declined to rule at the motion to dismiss stage because the court concluded the pleadings created factual questions (Opp. at 10:17-26), nothing in those cases excuses Plaintiff from pleading the requisite elements here. Moreover, Plaintiff's Opposition ignores a case – discussed extensively in the motion – which concluded based on the allegations in

///

the operative complaint that the session replay vendor acted as a tape recorder. *Graham v. Noom, Inc*., 533 F. Supp. 3d 823, 832 (N.D. Cal. 2021).

Accordingly, whether Plaintiff plausibly pleaded that Invoca was a third party to the communication is a legal question that can properly be resolved at the motion to dismiss stage.

### B. Whether Plaintiff Plausibly Pleads that Invoca Makes Independent Use of Plaintiff's Information is a Dispositive Legal Question

Plaintiff gives short shrift to *Gutierrez v. Converse Inc*., No. 24-4797, 2025 WL 1895315 (9th Cir. 2025) as not imputing a use requirement – despite that the court did just that. Plaintiff admits that, for purposes of summary judgment, he must provide evidence that the wiretapping entity has read Plaintiff's messages. (Opp. at 11:22 – 12:2.) It is in this light that both *Tate v. VITAS Healthcare Corp*., 762 F. Supp. 3d 949 (E.D. Cal. 2025) and *Busby v. Invoca*, No. 24-cv-05542-JD, 2025 WL 822664 (N.D. Cal. Mar. 14, 2025) must be re-examined.

Plaintiff appears to erroneously argue that *Gutierrez* leaves open the potential for Invoca's liability under the third clause of Penal Code § 631(a) – use of information. (Opp. at 12:4-7.) However, the plain language of the third clause requires as a predicate a violation of the first or second clauses. CAL. PENAL CODE § 631(a) ("or who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained") (underlining added); *Ribas v. Clark*, 38 Cal. 3d 355, 361 (1985) ("In *Tavernetti* [*v. Superior Court*, 22 Cal. 3d, 187, 192 (1978)], we considered the section [i.e., Penal Code § 631(a)] to proscribe three separate acts: (1) intentional wiretapping, (2) willful attempts to learn the contents of a communication in transit, and (3) attempts to use or publicize information obtained in either manner. Additionally, the Privacy Act has long been held to prevent one party to a conversation from recording it without the other's consent.") (citations omitted, underlining added). While *Gutierrez* may not have specifically addressed the third clause, it is a moot point in light of *Gutierrez*

addressing the first and second clauses – which are predicates for liability under the third clause. *Gutierrez*, 2025 WL 1895315, at *1.

In other words, the hypothetical potential for use of information like in *Tate* and *Busby* – without pleading use of information – is not sufficient. Thus, Plaintiff must actually plead facts establishing liability under the first and second clauses for a cognizable claim under the third prong.

**C. <u>Invoca's Privacy Policy Does Not Support Plaintiff's Allegations</u>**

Plaintiff attempts to manufacture "independent use" by selectively quoting Invoca's Privacy Policy. (Opp. at 13:11-16.) The Ninth Circuit has made clear that courts "need not accept as true allegations contradicting documents that are referenced in the complaint or that are properly subject to judicial notice." *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008); *accord Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). The cited language does not plausibly establish that Invoca used Plaintiff's data for its own purposes in connection with the communications at issue. To the contrary, the Privacy Policy expressly distinguishes between *customer data* (information collected when a consumer interacts directly with Invoca) and *client data* (information collected when Invoca provides services to its business clients). (RJN, Ex. A at 3-4.)

Moreover, *Tate* and *Busby* are of no use here as both addressed Invoca's alleged capability of using allegedly intercepted messages for its own use, but did not address pleading actual use. *Tate*, 762 F. Supp. 3d at 956; *Busby*, 2025 WL 822664, at *1. In light of *Gutierrez* imputing a use requirement for liability, this is no longer enough. Additionally, neither decision addressed Invoca's Privacy Policy, which is addressed here – as such, this Court is relying on different facts pleaded to it. To the extent that Plaintiff is relying on facts discussed in those rulings to bolster his own Motion to Dismiss (Opp. at 12:13-22), such argument is improper – the issue is not whether other plaintiffs have stated a claim based on the facts they alleged and

///

documents they did (or did not) incorporate by reference, but whether *this Plaintiff* has done so.

Plaintiff makes a several arguments about why the Privacy Policy supports his claim, but none of them withstand scrutiny. First**,** despite relying on statements in Invoca's Privacy Policy to support his claims and incorporating it by reference into the FAC, Plaintiff argues that AutoNation, Inc. cannot rely on that same Privacy Policy to determine whether Plaintiff has plausibly pleaded a claim. (FAC ¶¶ 23-24; Opp. at 14:5-11, citing to FAC ¶ 23 & n. 11 [Invoca's Privacy Policy].) Plaintiff is suing AutoNation Inc. under an aiding and abetting theory based on the statements in the Privacy Policy – if Plaintiff is now claiming that AutoNation, Inc. was somehow tricked by Invoca because Invoca's Privacy Policy was inaccurate (*see* Opp. at 14:7-11), such arguments are inconsistent with the allegations within the four corners of the First Amended Complaint. Moreover, such an argument fails to state a claim because Plaintiff does not explain how AutoNation, Inc. could have then aided and abetted Invoca when, under this new theory, AutoNation would have had no knowledge of Invoca's actual practices.

Second, Plaintiff seems to be confused about how to read the Privacy Policy. Plaintiff argues, in a footnote, that the distinction addressed in an entire paragraph with the section heading "Categories of information collected from or on behalf of our Clients" creates an issue of fact and reflects an "orphan sentence." (Opp. at 13:27-28 n.2.) Plaintiff's attempt to manufacture a factual dispute is unavailing because, with respect to client data, the Policy is clear: Invoca processes such information solely on the client's behalf, at the client's direction, and subject to the client's privacy policy. Here, Plaintiff selectively quotes from the "consumer" section of Invoca's Privacy Policy to suggest that Invoca uses call data independently to improve its platform. (FAC ¶ 23.) But the Policy as a whole makes clear that Plaintiff's call to AutoNation, Inc. fell under the "client data" section, which expressly limits Invoca's use of the information to processing on the client's behalf,

subject to the client's privacy policy. The Policy further confirms that Invoca acts as a service provider, not an independent actor, when handling client data.

Likewise, Plaintiff complains that AutoNation, Inc. is wordsmithing Invoca's Privacy Policy, while raising quibbles over how Invoca conveyed that it does not collect the contents of the communication. (Opp. at 14:25 – 15:7.) There is no requirement under CIPA that Invoca have used Plaintiff's preferred language or that it uses the most perfect language; the question before the Court is whether the language in Invoca's Privacy Policy contradicts Plaintiff's allegations in the FAC rendering them implausible – and on that, there is no question that it does.

Ultimately, Plaintiff now appears to be questioning the accuracy of Invoca's Privacy Policy and arguing that its FAC should survive so Plaintiff can investigate the statements in Invoca's Privacy Policy. (Opp. at 14:4 – 15:7.) However, Plaintiff's entire theory that AutoNation, Inc. aided and abetted Invoca hinges on Plaintiff's allegations that AutoNation, Inc. was aware of Invoca's conduct vis-à-vis the Privacy Policy. Absent that, Plaintiff does not plead how AutoNation, Inc. would have known about and thus aided and abetted such alleged wrongdoing by Invoca.

Accordingly, because Invoca's Privacy Policy refutes the core theory of this Penal Code § 631(a) claim, it should be dismissed with prejudice.

## VI. <u>PLAINTIFF FAILS TO STATE A CLAIM UNDER SECTION 632(A)</u>

### A. <u>Plaintiff Misconstrues the Meaning of "Device"</u>

Plaintiff's position rests on a selective reading of the law and ignores the statutory text, legislative history, and judicial authority. Section 632(a) makes clear that "device" refers to tangible equipment or physical instruments, not intangible software code. Plaintiff fails to grapple with the statutory structure or the Legislature's consistent use of the term "device" throughout the CIPA. Courts have reasonably recognized that "device" carries the same physical connotation throughout the CIPA. *See Doe v. Microsoft Corp.*, No. 23-cv-0718, 2023 WL

///

8780879, at *8 (W.D. Wash. Dec. 19, 2023) (holding that "software does not constitute a 'device' under the CIPA").

While Plaintiff argues for not reading Penal Code § 632(a) in harmony with Penal Code § 637.7, it is important to note that the term "electronic tracking devices" in Penal Code § 637.7 was defined as a subset of devices – specifically, "any device attached to a vehicle or other movable thing that reveals its location or movement by the transmission of electronic signals." CAL. PENAL CODE § 637.7(d). Moreover, in Penal Code § 632(a), the term "device" was used after examples of tangible, physical things – specifically, telegraphs and telephones. CAL. PENAL CODE § 632(a). In light of the rules of statutory construction discussed in the moving papers (Mtn. at 21:10-26), Plaintiff identifies no persuasive basis for this Court to disregard the statute's plain meaning or expand liability beyond what the Legislature enacted.

### B. Plaintiff Does Not Plausibly Allege a Confidential Communication

Plaintiff's reliance on *Faulkner v. ADT Security Services, Inc.*, 706 F.3d 1017, 1020 n.** (9th Cir. 2013) underscores the inadequacy of Plaintiff's pleading of confidential communications. While Plaintiff quotes dicta noting that disclosure of sensitive information *might* support confidentiality, the Ninth Circuit in *Faulkner* affirmed dismissal because the allegations lacked sufficient factual content to establish confidentiality. *Id*. at 1020. The footnote Plaintiff points to of the types of information that could be confidential are all things that Plaintiff has *not* pleaded in this case. (Opp. at 17:19-25.) The granting of the motion to dismiss in *Faulkner* was affirmed because the factual pleadings were insufficient to give rise to an inference that the communication was confidential. *Faulkner*, 706 F.3d at 1020. The same defect exists here.

Plaintiff also argues that *Lien v. Talkdesk, Inc.*, No. 24-cv-06467-VC, 2025 WL 551664 (N.D. Cal. Feb. 19, 2025) is inapposite because his call was "fundamentally different and confidential." (Opp. at 17:14-17; *accord* Opp. at 8:13-22.) Yet *Lien* makes clear that routine commercial calls, even when they involve

customer information, do not automatically qualify as "confidential." *Lien*, 2025 WL 551664, at *1. As discussed in the moving papers and in Section III.B, *supra*, Plaintiff has not pleaded information sufficient to give rise to a cognizable privacy interest. (Mtn. at 13:3-14.)

### C. Plaintiff's Conclusory Allegations Do Not Plead Lack of Consent

Because Invoca falls within the tape recorder exception, as discussed in Section V, *supra*, Plaintiff's consent to or knowledge of AutoNation, Inc. recording his phone calls is dispositive. The numerous court decisions cited by Plaintiff are inapplicable because none address the tape recorder exception. (*See* Opp. at 19:1-15.) *Tate* and *Busby* are inapplicable because they were decided pre-*Gutierrez*, as discussed in Sections V.B and V.C, *supra*. (*See* Opp. at 19:16-20.)

Plaintiff's argument that AutoNation, Inc. (as used in the FAC) should be read to include entities other than the named defendant is unavailing – the dealerships are separate entities which Plaintiff did not sue, and Plaintiff did not define AutoNation, Inc. as including those separate entity dealerships. (FAC ¶¶ 1, 9.) Moreover, such group pleading violates Rule 8. *Adobe Systs. Inc. v. Blue Source Group, Inc.*, 125 F. Supp. 3d 945, 964 (N.D. Cal. 2015) ("As a general rule, when a pleading fails to allege what role each Defendant played in the alleged harm, this makes it exceedingly difficult, if not impossible, for individual Defendants to respond to Plaintiffs' allegations.") (quotations and citations omitted).

For all these reasons, Plaintiff has failed to state a claim under Section 632(a).

## VII. CONCLUSION

For the foregoing reasons, the First Amended Complaint should be dismissed in its entirety, without leave to amend.

Dated: September 29, 2025

FISHER & PHILLIPS LLP

By: */s/ Darcey M. Groden*

USAMA KAHF
DARCEY M. GRODEN
XUAN ZHOU
Attorneys for Defendant, AUTONATION, INC.