UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.: | 5:25−cv−00731−AB−DTB | Date: | January 14, 2026 |
|---|---|---|---|

| Title: | *Mike Xavier, et al. v. AutoNation, Inc.* |
|---|---|

| Present: The Honorable | **ANDRÉ BIROTTE JR., United States District Judge** |
|---|---|

| Evelyn Chun | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Appearing | None Appearing |

**Proceedings:** **[In Chambers] ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT [Dkt. No. 27]**

Before the Court is Defendant AutoNation, Inc.'s ("AutoNation") Motion to Dismiss Plaintiff's First Amended Complaint. ("Mot.," Dkt. No. 27). Plaintiff Mike Xavier ("Plaintiff") filed an opposition ("Opp'n," Dkt. No. 30) and AutoNation filed a reply ("Reply," Dkt. No. 31). For the following reasons, the Court **GRANTS** the Motion to Dismiss.

## I. BACKGROUND

Plaintiff's First Amended Complaint ("FAC," Dkt. No. 24) asserts two claims under the California Invasion of Privacy Act ("CIPA") §§ 631 and 632. FAC ¶ 1. The following allegations are taken from Plaintiff's FAC:

Invoca, Inc. ("Invoca") is a company that uses artificial intelligence ("AI") to analyze phone calls, allowing Invoca's customers to measure call quality, improve customer service, and optimize marketing strategies. *Id.* ¶¶ 1–2, 18.

Invoca offers a broad suite of products focused on call recording and transcription. *Id.* ¶ 19. One of these products, Signal AI Studio, automatically analyzes phone conversations and enables Invoca customers to optimize marketing practices and track contact center agent performance across multiple locations. *Id.* Invoca's Call Recordings and Transcriptions service provides a searchable database of every call recording and transcript taken by Invoca. *Id.* ¶ 20.

Invoca's transcriptions are powered by generative AI large language models ("LLMs") that turn recordings into text with extreme precision "identif[ying] and extract[ing] words and terms spoken on a call, storing it in Invoca as structured, actionable data." *Id*. According to Invoca's Privacy Policy states, it utilizes "Personal Data," including call recordings and phone numbers, to improve, operate, maintain, and even market the Invoca Platform, as well as conduct internal research to enhance the Invoca Platform and Services. *Id*. ¶ 23.

AutoNation contracted with Invoca to use its marketing attribution, signal building, and conversation analytics services to track customer interactions with AutoNation's dealership entities located throughout California. *Id.* ¶¶ 1−2, 25. As part of these contracted services, Invoca's conversation-intelligence platform automatically records and transcribes inbound calls between AutoNation customers and the dealerships' call centers. *Id.* ¶¶ 3[1], 27. Invoca then feeds the resulting data into its internal AI for classification, and returns the classified information to AutoNation through dashboards, searchable transcripts, and reports, sometimes providing this information in real-time to customer service agents during calls. *Id.* ¶¶ 3, 27.

AutoNation uses these recordings and transcripts to identify and improve sales agents' weaknesses, keep complete and accurate records of every customer interaction, scan for specific criteria, and "understand how [their] customers think, what matters to them, and their sentiments." *Id.* ¶ 27. AutoNation and Invoca, however, never informed customers before any recording occurred that Invoca was monitoring their calls, collecting information from them, recording and analyzing the call content, or that Invoca could use those recordings and analyses for its own purposes. *Id.* ¶ 30. AutoNation and Invoca also never obtained customers' consent for their conduct. *Id.* ¶ 31.

---

[1] Paragraph 4 of the FAC is errantly labeled as "Paragraph 3." For consistency with the FAC's internal numbering and to avoid disrupting subsequent paragraph citations, this brief cites to it as labeled.

Plaintiff has called the customer service line of at least two AutoNation dealerships in California to inquire about vehicle purchases and to receive service on vehicles. *Id.* ¶ 32. Plaintiff disclosed personally identifiable and private information while on the phone with AutoNation dealerships' customer service agents, including his name, address, phone number, vehicle description, license plate, and billing information. *Id.* ¶ 33. Although Plaintiff expected his conversations to only be between the AutoNation customer service agents and himself, Invoca monitored, recorded, and transcribed Plaintiff's entire conversations without Plaintiff's consent or awareness. *Id.* ¶¶ 33–36.

AutoNation now moves to dismiss this action on numerous grounds, including pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(61) for lack of Article III standing, and pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Because the Court concludes that it lacks personal jurisdiction over AutoNation, the remaining grounds are rendered moot, and the Court denies those portions of the Motion on that basis.

## II. PERSONAL JURISDICTION

The Court begins by addressing AutoNation's challenge to personal jurisdiction. Finding Plaintiff has failed to sufficiently allege facts demonstrating personal jurisdiction, the Court **GRANTS** AutoNation's Motion pursuant to Rule 12(b)(2) without prejudice.

### A. Legal Standard

Pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(2), a defendant may move to dismiss a complaint for lack of personal jurisdiction. When a defendant brings a Rule 12(b)(2) motion, the plaintiff bears the burden of establishing that the court has personal jurisdiction over the defendant. *See Picot v. Weston*, 780 F.3d 1206, 1210 (9th Cir.2015); *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir.1990); *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011). The plaintiff "need only make a prima facie showing of jurisdictional facts" when the motion is based on solely written materials rather than an evidentiary hearing. *Sher*, 911 F.2d at 1361; *see also Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). The court assumes that uncontroverted allegations in the plaintiff's complaint are true, and conflicts between the parties' declarations are resolved in the plaintiff's favor. *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002).

"The general rule is that personal jurisdiction over a defendant is proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006); *see also* Cal. Code Civ. Proc. § 410.10 ("[A] court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States."). Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the two inquiries merge into a single due process analysis. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800–01 (9th Cir. 2004).

To comport with due process, a plaintiff must show that a defendant has "certain minimum contacts" with California such that the maintenance of their lawsuit "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v Myer*, 311 U.S. 457, 463 (1940)). The Supreme Court has recognized two types of personal jurisdiction: "general jurisdiction" and "specific jurisdiction." *Bristol-Myers Squibb Co. v. Super. Ct.*, 582 U.S. 255, 262 (2017). Which category applies depends on the nature and extent of the defendant's contacts with the forum. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Both general and specific jurisdiction satisfy the minimum contacts test. *Id*.

A court has general jurisdiction over foreign defendants to hear all claims against them when their affiliations with the forum state are so "continuous and systematic as to render them essentially at home in the forum State," even when the claim does not arise from those specific contacts. *Id.* at 923. "The standard for establishing general jurisdiction is high and requires that the defendant's contacts be substantial enough to approximate physical presence." *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) (internal citations omitted).

For a court to exercise specific personal jurisdiction over a defendant, " 'the suit' must 'arise out of or relate to the defendant's contacts with the forum.' " *Bristol-Myers*, 582 U.S. at 272 (emphasis in original, brackets omitted). There must be " 'an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.' " *Id*. (brackets omitted). Accordingly, the question of whether a forum state may assert specific jurisdiction over a non-resident defendant "focuses on the relationship among the defendant, the forum, and the litigation." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984) (internal citation omitted).

B. Discussion

AutoNation is a foreign entity, that is, it is not a citizen or resident of California, so the Court must consider whether AutoNation has sufficient minimum contacts with the state of California such that exercising personal jurisdiction over AutoNation comports with due process. AutoNation argues that it lacks the contacts with California sufficient to vest this Court with either general or specific jurisdiction over it. In particular, it lacks the "continuous and systematic" contacts necessary to establish general jurisdiction, and none of the events giving rise to Plaintiff's claims have any nexus with California, as necessary to support specific jurisdiction. Plaintiff does not contend that the Court has general jurisdiction over AutoNation and argues only that the Court has specific jurisdiction. Therefore, the Court will only proceed with the specific jurisdiction analysis.

The Ninth Circuit has established a three-prong minimum contacts test for analyzing a claim of specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802 (citation omitted). "The plaintiff bears the burden of satisfying the first two prongs of the test." *Id.* "If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state." *Id.* "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.*

The first element of the specific jurisdiction test requires either purposeful availment or purposeful direction. "A purposeful availment analysis is most often used in suits sounding in contract," while a "purposeful direction analysis…is most often used in suits sounding in tort." *Id*. Both parties agree that the purposeful

direction test applies in this case.

*i. Purposeful Direction*

The Ninth Circuit employs the three-part *Calder* effects test to evaluate purposeful direction. *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002) (citing *Calder v. Jones*, 465 U.S. 783, 789 (1984)); *see also Schwarzenegger,* 374 F.3d at 803. The *Calder* effects test "requires that the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Dole Food Co.*, 303 F.3d at 1111. "Failing to sufficiently plead any one of these three elements is fatal to Plaintiff's attempt to show personal jurisdiction." *Rupert v. Bond*, 68 F.Supp.3d 1142, 1163 (N.D. Cal. 2014).

*1. Intentional Act*

To satisfy the intentional act element, a "defendant must act with the 'intent to perform an actual, physical act in the real world.' " *Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015) (quoting *Schwarzenegger*, 374 F.3d at 806). Plaintiff has established that AutoNation committed intentional acts by "contracting for, paying, and causing Invoca's call-recording technology to be installed on the customer phone lines of its various dealership locations." Opp'n at 4; FAC ¶¶ 25, 56. AutoNation does not dispute that these were intentional acts.

*2. Expressly Aimed*

To satisfy the express aiming element, courts look to a defendant's connection to the forum state. *See Picot*, 780 F.3d at 1214. The analysis centers on whether the defendant specifically targeted the forum state. *See Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1143 (9th Cir. 2017) (citing *Walden v. Fiore*, 571 U.S. 277, 284, (2014)). A defendant does not expressly aim its activities toward the forum state when a defendant's only connection to the forum arises from the unilateral actions of the plaintiff or a third party. *See Walden*, 571 U.S. at 284–85, (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall ("Helicopteros")*, 466 U.S. 408, 417 (1984)). "In analyzing 'express aiming,' courts 'must look to the defendant's own contacts with the forum,' and not [ ] the plaintiff's connections to the forum." *Kellytoy Worldwide, Inc.*, 2019 WL 8064196, at *4 (quoting *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1070 (9th Cir. 2017)) (internal quotation marks omitted).

Plaintiff argues that AutoNation's actions satisfy the express aiming element for two reasons. First, Plaintiff argues that AutoNation's actions were expressly aimed at California and California residents because AutoNation receives roughly one fifth of its total revenue from California. *See* Opp'n at 4; Mot. at 4. Secondly, Plaintiff argues that AutoNation set up and acquired at least two California-located subsidiary entities with which California residents interact to purchase and service vehicles. *See* Opp'n at 4; Mot. at 6.

Defendant, however, contends that owning California subsidiaries is not express aiming under the *Calder* effects test as AutoNation was merely acting as a middleman. *See* Mot. at 9; Reply at 1–2. AutoNation also argues that agency theory does not apply to specific jurisdiction. Mot. at 9. Even assuming agency theory may apply in the specific jurisdiction context, AutoNation argues that Plaintiff fails to allege facts showing that the California subsidiaries acted as AutoNation's agents with respect to the alleged misconduct. *See id*. at 9–10; Reply 2–3.

Plaintiff's revenue argument fails. Under controlling law, the mere generation of revenue from a forum state does not automatically establish express aiming. Rather, the defendant's forum contacts must be directly tied to the allegedly tortious conduct itself, not merely to general or incidental commercial activity in the forum. *See Walden*, 571 U.S. at 289; *Axiom Foods*, 874 F.3d at 1068.

In *Walden v. Fiore*, the Supreme Court held that even substantial financial interactions with the people in the forum do not satisfy the express aiming requirement where none of the challenged conduct was directed at the forum itself. *See Walden,* 571 U.S. at 289. Likewise, in *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, the Ninth Circuit emphasized that a defendant's general business presence in the forum is insufficient to establish express aiming unless there is a direct connection between the forum-specific conduct and the alleged tort. *See Axiom Foods, Inc.*, 874 F.3d at 1068.

Here, Plaintiff alleges only that AutoNation derives approximately twenty percent of its revenue from California. Plaintiff does not plausibly allege that AutoNation's decision to install or operate call-recording technology was directed at California customers, motivated by California law, or otherwise tailored to the California market. Nor does Plaintiff allege that the challenged conduct was implemented differently in California than elsewhere. Instead, Plaintiff alleges that AutoNation contracted with Invoca to implement call-recording technology across

AutoNation's operations, suggesting a uniform, nationwide practice rather than conduct expressly directed at California. Accordingly, any connection between the alleged wrongdoing and California appears incidental, not intentional, and Plaintiff's revenue-based allegations fail to satisfy the express aiming requirement.

Plaintiff next contends that AutoNation's ownership or acquisition of at least two California-located subsidiary entities demonstrates express aiming at California. The Court is unpersuaded. The Ninth Circuit has established that parent company status alone does not automatically confer specific jurisdiction over a non-resident parent based on its subsidiaries' in-forum activities. *See Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1020–22 (9th Cir. 2017). To rely on subsidiary activity for the purposes of specific jurisdiction, a plaintiff must allege facts demonstrating that the subsidiaries were acting as agents of the parent for the purpose of the allegedly tortious conduct. *See id.* at 1024–25; *see also Holly v. Alta Newport Hosp., Inc.*, 612 F. Supp. 3d 1017, 1023 (C.D. Cal. 2020) ("Whether a principal-agent relationship exists between a parent corporation and its subsidiary hinges on the degree of control the parent exerts over the subsidiary.") (citation omitted).

Here, Plaintiff does not plausibly allege that AutoNation directed, controlled, or ratified the subsidiaries' alleged call-recording practices, or that AutoNation otherwise exercised control over the subsidiaries' day-to-day operations relevant to the alleged misconduct. Plaintiff likewise does not allege that AutoNation adopted or enforced California-specific policies regarding call recording, or that Defendant intentionally targeted California consumers through the challenged conduct. Instead, Plaintiff relies exclusively on the existence of California-based subsidiaries, which is insufficient to establish express aiming absent factual allegations demonstrating agency, control, or forum-directed conduct by AutoNation itself. Courts have held repeatedly that such conclusory and vague allegations are insufficient to establish express aiming. *See, e.g., Adobe Sys., Inc. v. Cardinal Camera & Video Ctr., Inc.*, 2015 WL 5834135 at *5 (N.D. Cal. Oct. 7, 2015) (stating that conclusory allegations are insufficient to meet the express aiming requirement); *Theos Med. Sys., Inc. v. Nytone Med. Prods., Inc.*, 2020 WL 500511, at *8 (N.D. Cal. Jan. 31, 2020) (stating that conclusory allegations are insufficient to meet the express aiming requirement).

Plaintiff's attempt to distinguish *Moledina v. Marriott Int'l, Inc.*, 635 F. Supp. 3d 941 (C.D. Cal. 2022), is unpersuasive. In *Moledina*, the court held that a California plaintiff's call to a hotel in Texas, recorded on a server in Utah, did not establish express aiming because the alleged tortious conduct occurred entirely

outside the forum and the plaintiff's unilateral activity in California was insufficient to confer jurisdiction. *Id.* at 948–49. Although Plaintiff here relies on AutoNation's ongoing business operations in California through subsidiaries, Plaintiff still fails to allege that AutoNation itself engaged in forum-directed conduct giving rise to the alleged injury. As in *Moledina*, any connection to California arises from the unilateral actions of consumers or the independent conduct of third parties, rather than AutoNation's own intentional acts.

Even considered cumulatively, Plaintiff has not alleged any conduct by AutoNation that is explicitly directed at California. Plaintiff does not identify any California-specific installation or deployment of the call-recording technology; any AutoNation decision-making, policies, or instructions directed toward California; or any intentional targeting of California consumers by AutoNation in connection with the alleged conduct. Without allegations of forum-directed conduct, Plaintiff's claims cannot satisfy the express aiming requirement. *See Walden,* 571 U.S. at 289. The connection to the forum must come from the defendant's own intentional acts, not the unilateral actions of consumers, intermediaries, or subsidiaries. *See id.; see also Helicopteros*, 466 U.S. at 417.

Plaintiff has therefore failed to satisfy the second prong of the *Calder* effects test. Because Plaintiff fails the express aiming prong, purposeful direction is not established. As the Court finds that Plaintiff has not established purposeful direction, it need not address the remaining elements of the specific jurisdiction analysis.

Accordingly, finding Plaintiff has failed to sufficiently allege facts demonstrating personal jurisdiction, the Court **GRANTS** AutoNation's Motion to Dismiss pursuant to Rule 12(b)(2) without prejudice.

## III. LEAVE TO AMEND

Having granted AutoNation's Motion for lack of personal jurisdiction, the Court turns to the question of whether Plaintiff should be granted leave to amend.

### A. Legal Standard

If a motion to dismiss is granted, the court should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). A "district court must give plaintiffs at least one chance to amend a deficient complaint, absent a clear showing that amendment would be futile." *Natl. Council of La Raza v. Cegavske*,

800 F.3d 1032, 1041 (9th Cir. 2015). The purpose of granting leave to amend is to allow "plaintiff[s] with a meritorious claim to cure any technical defects." *Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000). But leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). And "the district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *In re Read–Rite Corp.*, 335 F.3d 843, 845 (9th Cir. 2003) (internal quotations and citation omitted).

### B. Discussion

Plaintiff has already amended the Complaint once, though not in response to a motion to dismiss. This is therefore Plaintiff's first opportunity to amend to address the jurisdictional deficiencies identified by the Court. While the Court concludes that the FAC fails to allege facts sufficient to establish personal jurisdiction over AutoNation, the Court cannot say at this stage that amendment would necessarily be futile. Accordingly, and consistent with Rule 15(a)'s liberal amendment policy, the Court **GRANTS** Plaintiff leave to amend.

## IV. CONCLUSION

For the foregoing reasons, AutoNation's Motion to Dismiss Plaintiff's FAC is **GRANTED** on the ground that the Court lacks personal jurisdiction over AutoNation. This case is therefore **DISMISSED** ***without*** **prejudice and *with* leave to amend**. Should Plaintiff wish to attempt to remedy the defects discussed herein, Plaintiff may file a Second Amended Complaint within twenty-one (21) days of the issuance of this order.

**IT IS SO ORDERED**.