Eugene Y. Turin (State Bar No. 342413)
MCGUIRE LAW, P.C.
10089 Willowcreek Road, Suite 200
San Diego, California 92131
Tel: (312) 893-7002
Fax: (312) 275-7895
eturin@mcgpc.com

*Counsel for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIKE XAVIER, individually and on behalf of similarly situated individuals,<br><br>Plaintiff,<br><br>vs.<br><br>AUTONATION, INC.,<br><br>Defendant. | Case No. 5:25-CV-731-AB-DTB<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>1) **Violation of Cal. Penal Code § 631(a).**<br>2) **Violation of Cal. Penal Code § 632(a).**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Mike Xavier ("Plaintiff") brings this action on behalf of himself, and all others similarly situated against Defendant AutoNation, Inc. ("Defendant" or "AutoNation"). Plaintiff makes the following allegations pursuant to the investigation

- 1 -

SECOND AMENDED CLASS ACTION COMPLAINT

of his counsel and based upon information and belief, except as to the allegations specifically pertaining to himself, which are based on personal knowledge.

## <u>NATURE OF THE ACTION</u>

1. This action concerns the illegal surveillance and recording, by Invoca, Inc. ("Invoca"), of customer service calls placed to AutoNation, Inc. ("AutoNation") dealerships located in California in violation of the California Invasion of Privacy Act ("CIPA") §§ 631 and 632.

2. AutoNation employs a conversation intelligence software-as-a-service provided by Invoca for customer service calls placed to its dealerships located throughout California.

3. Invoca's conversation intelligence service derives information regarding the content of telephone conversations between AutoNation customers located in California and its California dealerships' call centers. Invoca's service records AutoNation customers' speech, transcribes it, then feeds it into Invoca's internal artificial intelligence (AI).

4. Once the data is classified by Invoca's internal AI, such data is then presented back to AutoNation and its California dealerships in the form of dashboards, searchable transcripts, and reports, sometimes in real-time to the customer service agents speaking with the customer.

5. As such, Invoca monitors, reads, records, learns the contents of, or otherwise intercepts the phone call conversations between AutoNation's dealership contact centers in California and current and prospective California consumers. Such calls include individuals who call AutoNation's California dealerships' customer service lines from California to, among other things, inquire about vehicles for sale, schedule sales and service appointments, provide financial information, and receive additional forms of customer support.

SECOND AMENDED CLASS ACTION COMPLAINT

6. Moreover, Invoca has the capability to use the contents of such recorded conversations for its own purposes separate from providing a recording to AutoNation and its California dealerships.

7. However, neither AutoNation nor Invoca procured the consent of any persons located in California who interacted with AutoNation's California dealerships' contact centers, prior to Invoca recording, accessing, reading, and learning the contents of their conversations.

8. Plaintiff brings this action to prevent Defendant from further violating the privacy rights of California residents, and to recover statutory damages from Defendant for failing to comply with the California Invasion of Privacy Act ("CIPA") §§ 631 and 632.

## **PARTIES**

9. Plaintiff Mike Xavier resides in Roseville, California and has an intent to remain there, and is therefore a citizen of California.  Mr. Xavier was in California when he called the customer service line for Autonation dealerships in California, in or around April 2021 and November 2023.

10. Defendant AutoNation, Inc. is a Delaware corporation with its principal place of business at 110 SE 6th Street, Fort Lauderdale, FL 33301. Defendant directs the operations of its AutoNation dealership and parts center locations throughout California.[1] Defendant also directs AutoNation call center operations in California and contracted with Invoca to implement the Invoca services at issue in California. [2]

\

---

[1] https://www.autonationdrive.com/locations/index.htm;
https://www.autonationwholesaleparts.com/locations/

[2] *See, e.g.,* https://www.invoca.com/customers/autonation ("'Providing a great customer experience is . . . why our sales managers constantly provide feedback to our agents. Invoca's call recordings and transcriptions are invaluable coaching tools.' Anand Rao, SVP of Digital Business, AutoNation").

SECOND AMENDED CLASS ACTION COMPLAINT

## JURISDICTION AND VENUE

11.   This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action where there are more than 100 members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one member of the putative Class is a citizen of a state different from Defendant.

12.   The Court has personal jurisdiction over Defendant because Defendant has purposefully availed itself of the laws and benefits of doing business in California, and Plaintiff's claims arise out of Defendant's forum-related activities. Defendant directs the operations of AutoNation parts and dealership locations throughout California and thus has availed itself of the privilege of doing business in California, Additionally, Defendant contracted with Invoca to implement its call recording services on customer service phone lines for AutoNation dealerships located in California to record calls placed by California residents.

13.   Invoca is itself headquartered in California, from where it directs and operates its call recording services. The contract for the call recording services at issue is also itself governed by California law and both Invoca and Autonation agreed that "the superior or district court in Los Angeles County, California" was the exclusive venue for any litigation involving their contract for the services at issue.[3]

14.   Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial portion of the events giving rise to this action occurred in this District as Invoca's headquarters are located in this District and the allegedly unlawful recording occurred in this District.

---

[3] https://www.invoca.com/master-services-and-subscription-agreement (last accessed February 4, 2026).

SECOND AMENDED CLASS ACTION COMPLAINT

## FACTUAL ALLEGATIONS

**I.    The California Invasion Of Privacy Act.**

15.    CIPA was enacted "to protect the right of privacy of the people of [California]." Cal. Penal Code § 630. The California Legislature was concerned about emergent technologies that allowed for "eavesdropping upon private communications," believing such technologies "created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society." *Id.*

16.    As part of CIPA, the California Legislature enacted § 631(a), which prohibits any person or entity from [i] "intentionally tap[ping], or mak[ing] any unauthorized connection … with any telegraph or telephone wire," [ii] "willfully and without the consent of all parties to the communication … read[ing], or attempt[ing] to read, or to learn the contents or meaning of any … communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within [California]," or [iii] "us[ing], or attempt[ing] to use … any information so obtained."

17.    CIPA § 631(a) also penalizes [iv] those who "aid[], agree[] with, employ[], or conspire[] with any person" who conducts the aforementioned wiretapping, or those who "permit" the wiretapping.

18.    As part of the Invasion of Privacy Act, the California Legislature additionally introduced Penal Code § 632(a), which prohibits any person or entity from "intentionally and without the consent of all parties to a confidential communication, us[ing] an electronic amplifying or recording device to eavesdrop upon or record [a] confidential communication."

19.    Individuals may bring an action under CIPA §§ 631 and 632 for $5,000 per violation. Cal. Penal Code § 637.2(a)(1).

SECOND AMENDED CLASS ACTION COMPLAINT

## II.    Defendant's Violations of CIPA

### A.    Overview of the Invoca Service.

20.    Invoca uses artificial intelligence to "analyze phone conversations at scale and unlock insights."[4] Such insights include allowing Invoca's customers to "measure call quality, intent, and outcomes, transforming conversations into actionable data. This data is crucial for optimizing marketing strategies, improving customer service, and driving revenue growth."[5]

21.    Invoca offers a broad suite of products aimed at call recording and transcription. One such product, Signal AI Studio, "uses Invoca's advanced machine-learning technology to automatically analyze phone conversations."[6] Such analysis includes "if each caller was a lead, if they converted, and what product or service the[y] called from."[7] Invoca's customers are then able to use such data to "make smarter marketing optimizations to drive more high-value phone leads at a lower cost" and utilize the Invoca product suite to further "track contact center agent performance and call handling across multi-location businesses, aiding in the coaching process."[8]

22.    Another product, Invoca's Call Recordings and Transcriptions, provides "a searchable database of every call recording and transcript."[9] Such transcription is powered by generative AI LLMs (large language models) that turn call recordings into text with, as Invoca brags, "unmatched precision" that "identifies and extracts words and terms spoken on a call, storing it in Invoca as structured, actionable data."[10]

---

[4] https://www.invoca.com/product/call-tracking-analytics.
[5] *Id.*
[6] https://www.invoca.com/product/signal-ai-studio.
[7] *Id.*
[8] *Id.*
[9] https://www.invoca.com/product/call-recordings-and-transcriptions.
[10] https://www.invoca.com/blog/signal-ai-launch.

- 6 -
SECOND AMENDED CLASS ACTION COMPLAINT

23. Invoca effectively eavesdrop upon, records, extracts data from, and analyzes conversations to which it is not a party. Invoca itself is collecting the content of the conversations.

24. That data is then analyzed by Invoca before being provided to any entity that was a party to the conversation. Indeed, Invoca has the capability to use the contents of conversations it collects through its product offerings for its own purposes beyond simply furnishing recordings to its customers. For example, Invoca can perform comprehensive analysis on the content of the calls it eavesdrops upon, including identifying the category of the speaker and determining the intent of the call, hence why Invoca "stores calls and call transcripts for internal queries."[11]

25. Invoca states in its Privacy Policy that it uses "Personal Data"—which includes call information "including phone numbers and recordings"—to "improve, operate, maintain, and, in some cases, market the Invoca Platform" and "conduct internal research in order to enhance the Invoca Platform and Services."[12]

26. Thus, Invoca has the capability to use the wiretapped data it collects through its product suite, namely the content of the phone calls it records, to operate, maintain, improve, and market its products and services.

**B.     AutoNation Intentionally Aids And Employs Invoca's Wiretapping of Customer Calls to Its Dealerships.**

27. AutoNation, America's largest and most recognized automotive retailer,[13] contracted with Invoca to provide its services to track customer interactions with AutoNation's California dealership entities. Specifically, publicly available

---

[11] https://www.invoca.com/data-privacy-security-compliance.

[12] https://www.invoca.com/privacy-policy.

[13] https://investors.autonation.com/news-and-events/press-releases/press-release-details/2020/AutoNation-for-the-Third-Year-in-a-Row-is-Americas-1-Public-Automotive-Retailer-According-to-Reputation.com/default.aspx

SECOND AMENDED CLASS ACTION COMPLAINT

information shows that AutoNation utilized Invoca's marketing attribution, signal building, and conversation analytics features.[1415]

28.     An Invoca press release revealed that "AutoNation uses Invoca data across multiple departments," and that AutoNation "[uses] AI Signals in their service center scorecards and marketing optimization."[16] Moreover, "[AutoNation's] participation in product Beta testing has been instrumental in strengthening Invoca's solutions."[17]

29.     Specifically, "Invoca automatically records and transcribes each inbound call, and AutoNation uses these insights to identify sales agents' weaknesses and coach them to improve their performance."[18] And "[AutoNation] feed[s] these recordings into their CRM to keep complete and accurate records of *every customer interaction.*"[19] AutoNation also uses Invoca automated call QA "to automatically scan every call for [] criteria . . . includ[ing] if the agent is greeting a caller correctly, if they're asking them to set an appointment, if they're mentioning a recent promotion, and more."[20] Anand Rao, AutoNation's SVP of Digital Business, also stated that AutoNation makes use of "Invoca's call recordings and transcriptions . . . so we can understand how our customers think, what matters to them, and their sentiments."[21]

30.     This granular level of analysis by Invoca provided unprecedented insight into the content of consumer calls to AutoNation's California dealership network and allowed AutoNation and its California dealerships to more effectively market and sell products to California residents. Thus, by contracting with Invoca to implement its call recording and analysis services, AutoNation aided, employed, agreed with, permitted,

---

[14] https://www.youtube.com/watch?v=ohxPPYzRCQM at 00:06.
[15] https://www.invoca.com/blog/ci-hero-matteo-togni
[16] https://www.invoca.com/press-release/invoca-celebrates-2024-impact-award-winners-showcasing-excellence-in-revenue-execution
[17] *Id.*
[18] https://www.invoca.com/customers/autonation
[19] *Id.* (emphasis added).
[20] *Id.*
[21] *Id.*

SECOND AMENDED CLASS ACTION COMPLAINT

or otherwise enabled Invoca to read, learn, monitor, or otherwise intercept the content of communications between current and prospective customers residing in California and AutoNation's California dealerships.

31. Critically, Invoca's call recording technology did not simply operate as a "tape recorder" as Invoca is a third-party separate and apart from AutoNation that is *itself* collecting the contents of phone call conversations between consumers and customer service agents and performing the analysis described above before it is ever made available to AutoNation and its dealerships. Moreover, Invoca itself uses the call recordings and information derived therefrom for its own wholly separate internal purposes.

32. During California consumers' calls to AutoNation's California dealerships, consumers reasonably expected that their conversations would be private and only between themselves and the AutoNation dealership that they called. Neither AutoNation nor Invoca informed California consumers, prior to any recording, that Invoca was listening in on and obtaining their information from the calls, and that the content of the calls were being recorded and analyzed by a third party. California consumers were also unaware that any third party, and specifically Invoca, was capable of using the recordings and analysis for its own purposes.

33. Neither AutoNation nor Invoca obtained California consumers' consent for the conduct at issue.

**III.    Plaintiff's Experience**.

34. Plaintiff is a California resident has called the customer service line of at least two AutoNation dealerships in California, including in or around April 2021 and November 2023, and intermittently since September 2021, to inquire about vehicle purchases and to receive service on his vehicles. The California AutoNation dealerships Plaintiff called were subsidiaries of AutoNation.

SECOND AMENDED CLASS ACTION COMPLAINT

35.    Plaintiff disclosed personally identifiable or otherwise private information while on the phone with the California AutoNation dealerships' customer representatives, including his name, address, phone number, vehicle description, license plate, and billing information.

36.    When speaking with the contact center agents, Plaintiff reasonably expected his conversation would only be between the agent and himself and Plaintiff did not expect or have any reason to expect that Invoca, a third party, was listening in on his conversations.

37.    Nonetheless, Invoca eavesdropped on Plaintiff's entire conversations with the California AutoNation dealerships' contact center agents. Invoca monitored, recorded, and transcribed Plaintiff's conversations with the California AutoNation dealerships in real-time and performed AI analysis on the content of the calls. This included capturing Plaintiff's intent and/or reason for calling, service interests, conversion outcome, and tracking the words and phrases he said during the conversations. Through this process, Invoca read and learned, in real-time, the contents of Plaintiff's conversations with AutoNation's dealerships.

38.    Neither AutoNation nor Invoca informed Plaintiff prior to recording that Invoca was listening in on his phone calls with AutoNation's California dealerships, including that the content of his phone calls were being recorded and analyzed by Invoca. AutoNation and Invoca, therefore, failed to obtain Plaintiff's consent for the conduct at issue.

39.    Plaintiff did not have any knowledge about Defendant's unlawful actions at the time that he placed calls to AutoNation's California dealerships and had no reason to believe that the unlawful conduct at issue occurred. Plaintiff found out about Defendant's unlawful use of Invoca's service only shortly before the filing of his original Complaint in this case.

- 10 -

SECOND AMENDED CLASS ACTION COMPLAINT

40.    Plaintiff has had his privacy rights invaded by having his private phone call conversations with AutoNation's California dealerships wiretapped without his knowledge or consent.

## CLASS ALLEGATIONS

41.    Plaintiff seeks certification of the following class: All California residents who called the customer service line for a California AutoNation dealership while in California and whose conversations were intercepted and recorded by Invoca.

42.    Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the other members of the Class, and have the financial resources to do so. Neither Plaintiff nor his counsel have any interest adverse to those of the other members of the Class.

43.    Absent a class action, most members of the Class would find the cost of litigating their claims to be prohibitive and would have no effective remedy. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication.

44.    Defendant has acted and failed to act on grounds generally applicable to Plaintiff and the other members of the Class, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class, and making injunctive or corresponding declaratory relief appropriate for the Class as a whole.

45.    The factual and legal bases of Defendant's liability to Plaintiff and to the other members of the Class are the same, resulting in injury to Plaintiffs and to all of the other members of the Class. Plaintiff and the other members of the Class have all suffered harm and damages as a result of Defendant's unlawful and wrongful conduct.

SECOND AMENDED CLASS ACTION COMPLAINT

46. There are many questions of law and fact common to the claims of Plaintiff and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not limited to, the following:

(a) Whether Invoca recorded Plaintiff's and the Class' phone calls with Defendant's California dealerships;

(b) Whether Defendant and Invoca obtained valid consent to perform such recording;

(c) Whether Defendant aided and abetted Invoca in recording Plaintiff's and the Class' phone calls with its California dealerships;

(d) Whether Invoca's service that was used to record Plaintiff's and the Class' phone calls constitutes an "electronic amplifying or recording device";

(e) Whether Defendant's conduct constitutes a violation of Cal. Penal Code § 631(a);

(f) Whether Defendant's conduct constitutes a violation of Cal. Penal Code § 632(a);

(g) Whether Plaintiff and the Class are entitled to monetary and/or restitutionary and/or injunctive relief or other remedies, and, if so, the nature of such remedies.

**FIRST CAUSE OF ACTION**
**Violation of the California Invasion of Privacy Act,**
**Cal. Penal Code § 631(a)**
**(On Behalf of Plaintiff and the Class)**

47. Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

48. CIPA provides that a person is liable to another where, "by means of any machine, instrument, contrivance, or in any other manner," they commit any of the following: (i) intentionally tap, or make any unauthorized connection, whether

- 12 -

physically, electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, cable, or instrument of any internal telephonic communication system; or (ii) willfully and without consent of all parties to the communication, or in any unauthorized manner, read or attempt to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state; or (iii) use, or attempt to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained; or (iv) aid, agree with, employ, or conspire with any person or persons to unlawfully do, or permit or cause to be done any of the acts or things mentioned above in this section. Cal. Pen. Code. § 631 (a).

49.    Within the relevant time period, Plaintiff and members of the Class called AutoNation's California dealerships' customer service phone lines.

50.    Defendant aided, agreed with, conspired with, and employed Invoca's tracking tools and technology to accomplish the wrongful conduct at issue here when it contracted with Invoca to implement the services described herein for calls placed by California residents to its California dealerships.

51.    Specifically, Defendant aided and conspired with Invoca, a tracking entity, to intercept California callers' phone communications with its California dealerships, which included personally identifiable and sensitive information, and did so with knowledge that the callers' data would be sent to Invoca.

52.    Furthermore, as a result of Defendant contracting with and paying Invoca for its call interception technology, Invoca has the ability to use the data it obtained from Plaintiff's calls to Defendant's California dealerships for its own purposes totally unknown by Plaintiff.

SECOND AMENDED CLASS ACTION COMPLAINT

53.     Plaintiff and the other members of the Class did not authorize or consent to the tracking, interception, and collection of any of their electronic communications with Defendant's California dealerships.

54.     Plaintiff and the other members of the Class seek all relief available under Cal. Pen. Code § 637.2, including injunctive relief and statutory damages of $5,000.

**SECOND CAUSE OF ACTION**
**Violation of the California Invasion of Privacy Act,**
**Cal. Penal Code § 632(a)**
**(On Behalf of Plaintiff and the Class)**

55.     Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

56.     CIPA § 632(a) prohibits an entity from "intentionally and without the consent of all parties to a confidential communication, us[ing] an electronic amplifying or recording device to eavesdrop upon or record the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio." Cal. Penal Code § 632(a).

57.     Invoca's software is an "electronic amplifying or recording device" because the software can record conversations and, in doing so, violates the rights of at least one of the callers. *See Tate v. VITAS Healthcare Corp.,* 2025 WL 50447 (E.D. Cal. Jan. 8, 2025).

58.     At all relevant times, AutoNation intentionally contracted, paid for, and implemented Invoca's product suite to record the confidential communications between Plaintiff and the other Class Members and its California dealerships, which included personally identifiable and sensitive information such as consumer financial related information (i.e., Plaintiff's and the other Class Members' methods of payment for car servicing and other related purchases).

SECOND AMENDED CLASS ACTION COMPLAINT

59.     When communicating with AutoNation's California dealerships, Plaintiff and the other Class Members had an objectively reasonable expectation of privacy. Plaintiff and the other Class Members did not expect that AutoNation would intentionally use an electronic amplifying or recording device to record their confidential communications.

60.     Plaintiff and the other Class Members did not consent to AutoNation's intentional use of an electronic amplifying or recording device to record their confidential communications.

61.     Pursuant to Cal. Penal Code § 637.2, Plaintiff and the other Class Members have been injured by the violations of CIPA § 632(a), and seeks statutory damages of $5,000 for each of AutoNation's violations of CIPA § 632(a).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a)     For an order certifying the Class, naming Plaintiff as Class Representative, and naming Plaintiff's attorneys as Class Counsel to represent the Class;

(b)     For an order declaring that Defendant's conduct violates Cal. Penal Code § 631(a);

(c)     For an order declaring that Defendant's conduct violates Cal. Penal Code § 632(a);

(d)     For actual, compensatory, statutory, and/or punitive in amounts to be determined by the Court and/or jury;

(e)     For prejudgment interest on all amounts awarded;

(f)     For an order of restitution and all other forms of equitable monetary relief;

(g)     For injunctive relief as pleaded or as the Court may deem proper; and

- 15 -

SECOND AMENDED CLASS ACTION COMPLAINT

(h)    For an order awarding Plaintiff and the Class their reasonable attorneys' fees, expenses, and costs of suit.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all causes of action and issues so triable.

Dated: February 4, 2026                               Respectfully Submitted,

                                             By: */s/ Eugene Y. Turin*

**McGuire Law, P.C.**
Eugene Y. Turin (SBN 342413)
10089 Willowcreek Road, Suite 200
San Diego, CA 92131
Tel: (312) 893-7002
Fax: (312) 275-7895
eturin@mcgpc.com

*Counsel for Plaintiff and the Proposed Class*

SECOND AMENDED CLASS ACTION COMPLAINT