USAMA KAHF (SBN 266443)
ukahf@fisherphillips.com
FISHER & PHILLIPS LLP
2050 Main Street, Suite 1000
Irvine, California 92614
Telephone: (949) 851-2424
Facsimile: (949) 851-0152

DARCEY M. GRODEN (SBN 296492)
dgroden@fisherphillips.com
XUAN ZHOU (SBN 333504)
xzhou@fisherphillips.com
FISHER & PHILLIPS LLP
4747 Executive Drive, Suite 1000
San Diego, California 92121
Telephone: (858) 597-9600
Facsimile: (858) 597-9601

Attorneys for Defendant
AUTONATION, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIKE XAVIER individually and on behalf of similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>AUTONATION, INC.,<br><br>Defendant. | CASE NO.: 5:25-cv-00731-AB-DTB<br><br>**DEFENDANT AUTONATION, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS RULE 12 MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**<br><br>*[Filed Concurrently with the Notice of Motion, Declarations of Beth Fergus and Darcey M. Groden, Request for Judicial Notice and [Proposed] Order]*<br><br>Date:      May 1, 2026<br>Time:      10:00 A.M.<br>Crtrm:    7B<br>Judge:     André Birotte Jr.<br><br>Complaint Filed: March 24, 2025<br>FAC Filed:      June 24, 2025<br>SAC Filed:      February 4, 2026<br>Trial Date:      None |

# TABLE OF CONTENTS

**Page(s)**

I.      INTRODUCTION ...........................................................................................1

II.     SUMMARY OF RELEVANT FACTS ...........................................................1

III.    PLAINTIFF FAILS TO ESTABLISH PERSONAL JURISDICTION...........2

    A.    Legal Standard Under Rule 12(b)(2) ......................................................2

    B.    Plaintiff Fails to Establish General Jurisdiction ...................................3

        1.    AutoNation is Not At Home In California....................................3

        2.    Plaintiff Has Not Pled Alter Ego Facts to Establish General
Jurisdiction as to AutoNation.......................................................4

    C.    Plaintiff Fails to Establish Specific Jurisdiction...................................8

        1.    AutoNation Did Not Purposefully Avail Itself of California ...............8

        2.    AutoNation Did Not Purposefully Direct Its Activities at Plaintiff or
California.....................................................................................10

IV.     PLAINTIFF LACKS ARTICLE III STANDING .........................................11

    A.    Legal Standard Under Rule 12(b)(1) ....................................................11

    B.    Plaintiff Has Not Alleged an Injury In Fact..........................................12

V.      PLAINTIFF FAILS TO STATE A CLAIM UNDER CIPA .........................14

    A.    Legal Standard Under Rule 12(b)(6) ....................................................14

    B.    Both of Plaintiff's CIPA Claims Are Time Barred ............................14

    C.    Plaintiff Fails to State a Claim for Violation of Penal Code § 631(a).15

        1.    Invoca's Alleged Conduct Falls Within Section 631(B)(1)'S
Exemption From Liability For Telephone Companies.........................16

        2.    The Dealerships Who Used Invoca Are Not Third Parties to Plaintiff's
Communications .........................................................................17

        3.    Invoca Is Not A Third-Party, But A Service Provider To AutoNation17

    D.    Plaintiff Fails to State a Claim Under CIPA § 632(a) ........................21

1

TABLE OF CONTENTS

1. Invoca's Platform Is Not An "Electronic Amplifying Or Recording Device" Within The Meaning Of Section 632(a) ................................21

2. Plaintiff Does Not Allege Facts Supporting that Any Communication Was Confidential..................................................................................23

3. Plaintiff Fails to Plead that He Did Not Have Knowledge of or Consent to Recording.......................................................................24

VI. CONCLUSION ...........................................................................................25

TABLE OF CONTENTS

FP 61663269.9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ambriz v. Google*, LLC,
No. 23-cv-05437-RFL, 2024 WL 3282521 (N.D. Cal. June 20, 2024) ................................................................................................ 16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................... 14

*AV Media Pte. Ltd. v. Promounts*,
No. 2:07-cv-00059-FMC-CTx .............................................................. 5

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
874 F.3d 1065 (9th Cir. 2017) ........................................................... 10

*Bristol Myers Squibb Co. v. Super. Ct.*,
582 U.S. 255 (2017) ............................................................................. 3

*Brown v. Elec. Arts, Inc.*,
724 F.3d 1235 (9th Cir. 2013) ........................................................... 14

*Busby v. Invoca*,
No. 24-cv-05542-JD, 2025 WL 822664 (N.D. Cal. Mar. 14, 2025) ................. 20

*Cahen v. Toyota Motor Corp.*,
147 F. Supp. 3d 955 (N.D. Cal. 2015) ............................................... 13

*Calder v. Jones*,
465 U.S. 783 (1984) ........................................................................... 10

*City of Huntington Beach v. Pub. Util. Comm'n*,
214 Cal. App. 4th 566 (2013) ............................................................ 16

*Congoleum Corp. v. DLW Aktiengesellschaft*,
729 F.2d 1240 (9th Cir. 1984) ............................................................. 2

*Daimler AG v. Bauman*,
571 U.S. 117 (2024) ............................................................................. 3

FP 61663269.9

*Delacruz v. Serv. Corp. Int'l*,
No. 1:18-cv-00154-LJO-EPG, 2018 WL 2287962 (E.D. Cal. May 18, 2018) ............................................................................... 7

*Doe v. Microsoft Corp.*,
No. C23-0718-JCC, 2023 WL 8780879 (W.D. Wash. 2023) ............. 22

*Dole Foods Co., Inc. v. Watts*,
303 F.3d 1104 (9th Cir. 2002) ......................................................... 10

*Dyna-Med, Inc. v. Fair Employ. & Hous. Comm'n*,
43 Cal. 3d 1379 (1987) ................................................................... 22

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......................................................... 17

*Faulkner v. ADT Sec. Servs., Inc.*,
No. C 11-00968 JSW, 2011 WL 1812744 (N.D. Cal. 2011), *aff'd*
706 F.3d 1017 (9th Cir. 2013) .................................................... 23, 24

*Flanagan v. Flanagan*,
27 Cal. 4th 766 (2002) .................................................................... 23

*Fodor v. AOL Time Warner, Inc.*,
217 F. App'x 622 (9th Cir. 2007) ..................................................... 15

*Forest E. Olson, Inc. v. Super. Ct.*,
63 Cal. App. 3d 188 (1976) ............................................................. 25

*Fox v. Ethicon Endo-Surgery, Inc.*,
35 Cal. 4th 797 (2005) .................................................................... 15

*Frio v. Super. Ct.*,
203 Cal. App. 3d 1480 (1988) ......................................................... 23

*Gladstone v. Amazon Web Servs., Inc.*,
739 F. Supp. 3d 846 (W.D. Wash. 2024) .......................................... 22

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011) .......................................................................... 3

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) .................................... 11, 16, 18

2

TABLE OF AUTHORITIES

*Gutierrez v. Converse, Inc.*,
  No. 24-4797, 2025 WL 1895315 (9th Cir. July 9, 2025)................................18, 20

*Hale v. S. Cal. IPA Med. Grp., Inc.*,
  86 Cal. App. 4th 919 (2001)....................................................................................21

*Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*,
  328 F.3d 1122 (9th Cir. 2003)...................................................................................5

*Herbal Brands, Inc. v. Photoplaza, Inc.*,
  72 F.4th 1085 (9th Cir. 2023)....................................................................................8

*Holly v. Alta Newport Hosp., Inc.*,
  612 F. Supp. 3d 1017 (C.D. Cal. 2020)...................................................................11

*Int'l Shoe Co. v. Washington*,
  326 U.S. 310 (1945) ..................................................................................................3

*Javier v. Assurance IQ, LLC*,
  649 F. Supp. 3d 891 (N.D. Cal. 2023).....................................................................18

*Javier v. Assurance IQ, LLC*,
  No. 21-16351, 2022 WL 1744107 (9th Cir. 2022)..................................................22

*Johnston v. Irontown Hous. Co.*,
  No. 13-CV-0523 ........................................................................................................6

*Kearney v. Salomon Smith Barney, Inc.*,
  39 Cal. 4th 95 (2006)...............................................................................................24

*L.A. Unified Sch. Dist. v. Super. Ct.*,
  14 Cal. 5th 758 (2023).............................................................................................21

*Lares v. W. Bank One (In re Lares)*,
  188 F.3d 1166 (9th Cir. 1999)..................................................................................21

*Lazy Y Ranch Ltd. v. Behrens*,
  546 F.3d 580 (9th Cir. 2008)....................................................................................19

*Lien v. Talkdesk, Inc.*,
  No. 24-cv-06467-VC, 2025 WL 551664 (N.D. Cal. Feb. 19, 2025) .....12, 13, 24

*Lujan v. Def. of Wildlife*,
  504 U.S. 555 (1992) ..........................................................................................11, 12

3
TABLE OF AUTHORITIES

FP 61663269.9

*Manetti-Farrow, Inc. v. Gucci Am., Inc.*,
858 F.2d 509 (9th Cir. 1988) .................................................................................. 9

*Maxim v. Guanghzou NetEase Comput. Syst. Co., Ltd.*,
No. 2:20-cv-11331-AB-JC, 2021 WL 4839579 (C.D. Cal. Aug. 11, 2021) ......................................................................................................................... 5

*Maya v. Centex Corp.*,
658 F.3d 1060 (9th Cir. 2011) ................................................................................ 11

*Meza v. Portfolio Recovery Assocs., LLC*,
6 Cal. 5th 844 (2009) .............................................................................................. 21

*Mireskandari v. Daily Mail & Gen. Trust PLC*,
No. CV 12-02943 MMM, 2013 WL 12114762 (C.D. Cal. Oct. 8, 2013) ....................................................................................................................... 15

*Montalti v. Catanzariti*,
191 Cal. App. 3d 96 (1987) .................................................................................... 14

*MSP Recovery Claims, Series LLC v. Actelion Pharm. US, Inc.*,
No. 3:22-cv-07604-JSC, 2024 WL 3408221 (N.D. Cal. July 12, 2024) ......................................................................................................................... 4

*NetApp, Inc. v. Nimble Storage, Inc.*,
No. 5:13-CV-05058-LHK (HRL), 2015 WL 400251 (N.D. Cal. Jan. 29, 2015) .............................................................................................................. 5, 7

*Notorious B.I.G. LLC v. Hutson*,
No. CV 14-02415 SJO, 2014 WL 12589626, . (C.D. Cal. July 3, 2014) ......................................................................................................................... 9

*Pebble Beach Co. v. Caddy*,
453 F.3d 1151 (9th Cir. 2006) .................................................................................. 8

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ........................................................................... 12, 14

*Powell v. Union Pac. R. Co.*,
864 F. Supp. 2d 949 (E.D. Cal. 2012) ................................................................... 20

*Prime Loyalty LLC v. GoDaddy Inc.*,
No. CV-24-03359-PHX-JJT, 2025 WL 1807721 (D. Ariz. July 1, 2025) ......................................................................................................................... 7

4

TABLE OF AUTHORITIES

*Ranza v. Nike, Inc.*,
   793 F.3d 1059 (9th Cir. 2015)............................................................................4

*Remme v. Herzog*,
   222 Cal. App. 2d 863 (1963) ..............................................................................5

*Ribas v. Clark*,
   38 Cal. 3d 355 (1985) ................................................................................. 17, 18

*Rodgers v. Ulrich*,
   52 Cal. App. 3d 894 (1975) ........................................................................ 17, 18

*Schwarzenegger v. Fred Martin Motor Co.*,
   374 F.3d 797 (9th Cir. 2004) ..............................................................................8

*Serna v. 1-800-GOT-JUNK, LLC,*
   No. 5:24-cv0047-HDV-MRw, 2024 WL 3915074 (C.D. Cal. Aug.
   6, 2024) ............................................................................................................13

*Sher v. Johnson*,
   911 F.2d 1357 (9th Cir. 1990)..................................................................2, 3, 10

*Smith v. Facebook, Inc.*,
   262 F. Supp. 3d 943 (N.D. Cal. 2017)................................................................9

*Smith v. LoanMe, Inc.*,
   11 Cal. 5th 183 (2021)......................................................................................21

*Sonora Diamond Corp. v. Super. Ct.*,
   83 Cal. App. 4th 523 (2000)...............................................................................5

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) .................................................................................... 12, 14

*Stasi v. Inmediata Health Grp. Corp.*,
   501 F. Supp. 3d. 898 (S.D. Cal. 2020) ...............................................................9

*Tate v. VITAS Healthcare Cor.*,
   762 F. Supp. 3d 949 (E.D. Cal. 2025).......................................................20, 22

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021) ..............................................................................12, 13, 14

*United States v. Ritchie*,
   342 F.3d 903 (9th Cir. 2003)............................................................................14

TABLE OF AUTHORITIES

*Valencia v. Invoca, Inc.*,
   No. 2:25-cv-01323-HDV-BFM, 2025 WL 3691970 (C.D. Cal. Nov. 17, 2025) .................................................................................................. 17, 20

*Walden v. Fiore*,
   571 U.S. 277 (2014) ...................................................................................... 10

*Warden v. Kahn*,
   99 Cal. App. 3d 805 (1979) ........................................................................... 23

*Williams v. Yamaha Motor Co.*,
   851 F.3d 1015 (9th Cir. 2017) .................................................................... 4, 8

**Statutes**

CIV. CODE § 1798.140(ag)(1) .............................................................................. 19

CORP. CODE § 200 ................................................................................................. 6

CORP. CODE § 202 ................................................................................................. 6

CORP. CODE § 300 ................................................................................................. 6

CORP. CODE § 1502 ............................................................................................... 6

CODE CIV. PROC. § 410.10 .................................................................................... 2

DEL. CODE ANN. tit. 8, § 131 ............................................................................... 7

DEL. CODE ANN. tit. 8, § 141(a)-(b) ..................................................................... 7

DEL. CODE ANN. tit. 8, § 211(c) ........................................................................... 7

PEN. CODE § 631 ............................................................................................ 16, 17

PEN. CODE § 631(a) ...................................................................................... *passim*

PEN. CODE § 631(b)(1) ........................................................................................ 16

PEN. CODE § 631(c) ............................................................................................. 16

PEN. CODE § 632(a) ...................................................................................... *passim*

PEN. CODE § 632(c) ............................................................................................. 23

PEN. CODE § 638(c)(3) ........................................................................................ 16

6
TABLE OF AUTHORITIES

FP 61663269.9

PUB. UTIL. CODE § 234 ................................................................................. 16

VEH. CODE § 16025(a)................................................................................. 13

**Other Authorities**

U.S. Const. art. III, § 2................................................................................ 11

U.S. Constitution Article III ................................................................*passim*

TABLE OF AUTHORITIES

## I.    INTRODUCTION

This Court still lacks personal jurisdiction over AutoNation, Inc. ("AutoNation") as to Plaintiff's Second Amended Complaint ("SAC"). Despite being afforded a second opportunity to amend, Plaintiff does not allege new facts establishing the requisite contacts between AutoNation and California. Instead, he repackages the same theory that calls placed by California residents to AutoNation's California dealerships were recorded using software provided by a vendor, without connecting those claims to conduct by AutoNation sufficient to support jurisdiction.

Beyond this threshold failure, federal courts within the Ninth Circuit have consistently declined to extend Penal Code §§ 631(a) and 632(a), which are sections of the California Invasion of Privacy Act ("CIPA"), to ordinary customer service and marketing technologies absent well-pleaded facts satisfying the statute's elements. Plaintiff's claims must be dismissed for several reasons: *First*, Plaintiff has not demonstrated a concrete injury to satisfy Article III standing. *Second,* Plaintiff's CIPA claims are time-barred by a one-year statute of limitations. *Third*, the § 631(a) claim fails because the statute does not apply where there is no interception by a third party to the communication. *Fourth*, the § 632(a) claim fails as the third party falls within the telephone corporation exception, Plaintiff does not allege that AutoNation used an electronic amplifying or recording device, and he cannot establish that the conversations involved a "confidential communication."

Having already failed once to cure these defects, Plaintiff's renewed attempts to characterize AutoNation's subsidiaries' routine customer service practices as a violation of state wiretapping law by AutoNation, Inc. cannot proceed. This Court should therefore dismiss Plaintiff's Second Amended Complaint in its entirety without further leave to amend.

## II.    SUMMARY OF RELEVANT FACTS

Plaintiff alleges that AutoNation contracted with Invoca, Inc. ("Invoca") to provide AutoNation's subsidiaries with conversation intelligence software-as-a-

1

service. (SAC ¶¶ 2, 3, 10.) Plaintiff alleges two of AutoNation's subsidiaries used Invoca's platform to monitor, record, transcribe, and analyze his conversations with those dealerships. (*Id.* ¶¶ 2, 3, 10, 12, 29, 34, 37.) Plaintiff alleges that Invoca is not a tape recorder because it conducts the analyses before providing the data to AutoNation, and that Invoca is capable of using the call recordings and information derived therefrom for its own internal purposes. (*Id.* ¶ 31.)

Plaintiff's assertion is contradicted by the Privacy Policy linked in footnote 12 of Plaintiff's SAC, which makes clear that Invoca maintains call recordings and related information solely, on behalf of, and at the direction of, its clients. In a section titled "Categories of information collected from or on behalf of our Clients":

> Invoca, as part of our Services, collects or receives Personal Data from consumers who interact with our Clients' websites and assigned phone numbers. Depending on how a Client configures and uses the Invoca Platform and Services, this may include the content of recorded telephone calls . . . **This information, which we maintain exclusively on behalf and at the direction of our Clients,** may include sensitive Personal Data . . . **Our clients control this Personal Data and its collection and use are governed by their respective privacy policies, which may differ from Invoca's policy.** . . .

(RJN, Ex. A (bolding added).)

## III.   PLAINTIFF FAILS TO ESTABLISH PERSONAL JURISDICTION

### A.   Legal Standard Under Rule 12(b)(2)

Dismissal for lack of personal jurisdiction under Rule 12(b)(2) depends on whether (1) "a state statute potentially confers personal jurisdiction over the nonresident defendant, and (2) … the exercise of jurisdiction accords with federal constitutional principles of due process." *Congoleum Corp. v. DLW Aktiengesellschaft*, 729 F.2d 1240, 1241 (9th Cir. 1984). California's long-arm statute authorizes the exercise of personal jurisdiction to the fullest extent permissible under the Due Process Clause of the United States Constitution. *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990); CODE CIV. PROC. § 410.10. Due process permits exercise of personal jurisdiction only if a court has either general or specific jurisdiction over a nonresident. *Sher*, 911 F.2d at 1361. "General jurisdiction applies

where a defendant's activities in the state are 'substantial' or 'continuous and systematic,' even if the cause of action is unrelated to those activities." *Id.* (internal citation omitted). Where general jurisdiction is inappropriate, a court may exercise specific jurisdiction if the defendant has sufficient contacts with the forum state in relation to the claim. *Id.*

To comport with due process, a plaintiff must show that a defendant has "certain minimum contacts" with California so that the maintenance of their lawsuit "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation omitted). The Supreme Court recognizes two types of personal jurisdiction: "general jurisdiction" and "specific jurisdiction." *Bristol Myers Squibb Co. v. Super. Ct.*, 582 U.S. 255, 262 (2017). Which category applies depends on the nature and extent of the defendant's contacts with the forum. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Both types satisfy the "minimum contacts" test. *Id.*

### B.    Plaintiff Fails to Establish General Jurisdiction

#### 1.    *AutoNation is Not At Home In California*

For a corporation, the "place of incorporation and principal of business are paradigm bases for general jurisdiction." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2024) (internal quotations omitted). Plaintiff has not alleged sufficient facts to show that AutoNation is "essentially at home" in California. *Id*. at 139. Plaintiff admits that AutoNation is a Delaware corporation with its principal place of business in Florida. (SAC ¶ 10.) Plaintiff's own allegations reflect that Plaintiff called AutoNation's California subsidiaries, not AutoNation itself. (*Id*. ¶¶ 34-35, 37-38.) The subsidiaries Plaintiff called were Roseville Motor Corporation and Auto Car, Inc. (Aug. 7, 2025 Declaration of Beth Fergus ("2025 Fergus Decl.") ¶ 2.) As such, to establish general jurisdiction, Plaintiff must demonstrate that AutoNation is an "exceptional case" where its operations are "so substantial and of such a nature as to render the corporation at home" in California. *Daimler AG*, 571 U.S. at 139 n.19. This is not

DEFENDANT'S MEMORANDUM OF P'S AND A'S ISO ITS RULE 12 MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

FP 61663269.9

such a case. As of December 31, 2025, California is not AutoNation's largest market; both Texas and Florida have more retail stores, more franchises, and more "other" locations. (RJN, Ex. B at p. 6.) Both Texas and Florida make up larger chunks of AutoNation's total revenue at 26% and 20% compared to California's 19%. (*Id.*)

In sum, AutoNation is not an exceptional case. While California may be an important market for AutoNation, it is not "at home" in California.

### 2. *Plaintiff Has Not Pled Alter Ego Facts to Establish General Jurisdiction as to AutoNation*

The Ninth Circuit has held that the alter ego test may be used to extend personal jurisdiction to a foreign parent or subsidiary where the two entities are not genuinely distinct. *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1021 (9th Cir. 2017). Plaintiff must establish (1) a unity of interest and ownership such that their separate identities of the entities no longer exist, and (2) that failure to disregard their separateness would result in fraud or injustice. *Id*.

The burden is on Plaintiff to plead facts establishing alter ego; Plaintiff's SAC (like the FAC) is silent as to any such allegations, which alone is sufficient to grant the motion to dismiss for lack of general jurisdiction. *Williams*, 851 F.3d at 1022; *MSP Recovery Claims, Series LLC v. Actelion Pharm. US, Inc.*, No. 3:22-cv-07604-JSC, 2024 WL 3408221, at *3-4 (N.D. Cal. July 12, 2024). But, even if Plaintiff had pleaded such facts, he would be unable to establish alter ego liability.

### a) Plaintiff Cannot Establish Unity of Interest and Ownership

"The unity of interest and ownership prong . . . requires a showing that the parent controls the subsidiary to such a degree as to render the latter the mere instrumentality of the former." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015) (citation and quotation omitted). Relevant factors in considering unity of interest include: (1) inadequate capitalization, (2) commingling of funds and other assets, (3) holding out by one entity that it is liable for the debts of the other, (4) identical equitable ownership, (5) use of the same offices and employees, (6) use of

4

one as a mere conduit for the affairs of the other, (7) disregard of the corporate formalities, (8) lack of segregation of corporate records, and (9) identical directors and officers. *Maxim v. Guanghzou NetEase Comput. Syst. Co., Ltd.*, No. 2:20-cv-11331-AB-JC, 2021 WL 4839579, at \*7 (C.D. Cal. Aug. 11, 2021). No one factor governs; courts must look at all the circumstances to determine whether an entity is an alter ego. *Sonora Diamond Corp. v. Super. Ct.*, 83 Cal. App. 4th 523, 539 (2000).

*Adequate Capitalization*: Inadequate capitalization exists when "the capital is illusory or trifling compared with the business to be done and the risks of loss." *Remme v. Herzog*, 222 Cal. App. 2d 863, 867-868 (1963). Both Roseville Motor Corporation and Auto Car, Inc. were adequately capitalized at the time of acquisition, and they are as such on an ongoing basis. (2025 Fergus Decl. ¶ 9.) Each entity is separately responsible for covering its foreseeable operations and obligations. (*Id*.) Roseville Motor Corporation does not incorporate the income figures of Auto Car, Inc. into its financial reports and vice versa. (*Id.* ¶ 10.)

*No Commingling of Funds and Other Assets; No Holding Out by One Entity that It is Liable for the Debts of the Others*: AutoNation has never commingled funds and assets with either Roseville Motor Corporation or Auto Car, Inc. (2025 Fergus Decl. ¶¶ 10-11.) *AV Media Pte. Ltd. v. Promounts*, No. 2:07-cv-00059-FMC-CTx; 2018 WL 11337209, at \*4 (C.D. Cal. July 1, 2008) (no commingling of assets where parties kept separate bank accounts and records of transfer to and from the various parties); *see NetApp, Inc. v. Nimble Storage, Inc.*, No. 5:13-CV-05058-LHK (HRL), 2015 WL 400251, at \* (N.D. Cal. Jan. 29, 2015) ("the fact that a parent corporation reports the financial results of its subsidiaries in the parent's financial statements is not proof of an alter ego relationship . . .").

*Identical Equitable Ownership*: While AutoNation is a grandparent company of both Roseville Motor Corporation and Auto Car, Inc., "100% control through stock ownership does not by itself make a subsidiary the alter ego of the parent." *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135

5

(9th Cir. 2003). (2025 Fergus Decl. ¶¶ 2, 4.)

*Use of the Same Offices and Employees*: The addresses for Roseville Motor Corporation and Auto Car, Inc. are both located in Roseville, California. (2025 Fergus Decl. ¶¶ 7-8.) Both dealerships carry out the majority of their day-to-day operations at and have their own employees at their respective car dealerships in Roseville, California. (*Id*. ¶¶ 7-9.) AutoNation, on the other hand, has its principal place of business in Fort Lauderdale, Florida and does not maintain any offices or physical presence in California. (*Id*. ¶¶ 2, 4-5.) AutoNation is a holding company with no employees involved in the business of any of its California subsidiaries, no employees working for its California subsidiaries, and no employees who have direct relationships or interactions with the customers of its subsidiaries. (*Id*. ¶¶ 2, 5.)

*No Disregard of Corporate Formalities; Segregation of Corporate Records*: A disregard of the corporate formalities means not following the laws for corporations for the state in which the corporation is incorporated. *See Johnston v. Irontown Hous. Co.*, No. 13-CV-0523 W (BLM), 2014 WL 12531189, at *6-7 (S.D. Cal. Dec. 9, 2014). Plaintiff does not claim that AutoNation, Roseville Motor Corporation, or Auto Car, Inc. failed to observe the corporate formalities, let alone specify which corporate formalities he alleges they failed to observe.

As California corporations, both Roseville Motor Corporation and Auto Car, Inc. have followed formalities required by the California Corporations Code. For example, both dealerships have executed and filed articles of incorporation. CORP. CODE §§ 200, 202. (RJN, Exs. C, D, E, H, & I.) Both dealerships have filed Statements of Information annually with the California Secretary of State. CORP. CODE § 1502. (*See* RJN, Exs. F, G, J, & K.) Both dealerships are managed by directors. CORP. CODE § 300. (2025 Fergus Decl. ¶¶ 12-13; RJN, Exs. F, G, J, & K.)

As a Delaware corporation, AutoNation has followed formalities required by the Delaware Code regulating corporations. For example, AutoNation maintains a registered office in Delaware and files with the Delaware Secretary of State a

DEFENDANT'S MEMORANDUM OF P'S AND A'S ISO ITS RULE 12 MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

FP 61663269.9

document listing the registered office. DEL. CODE ANN. tit. 8, § 131. (2025 Fergus Decl. ¶ 3.) AutoNation is managed by a board of directors consisting of one or more members who are natural persons. DEL. CODE ANN. tit. 8, § 141(a)-(b). (2025 Fergus Decl. ¶ 3.) AutoNation holds either an annual meeting of the stockholders to elect a board of directors *or* the election of directors by written consent. DEL. CODE ANN. tit. 8, § 211(c). (2025 Fergus Decl. ¶ 3.)

*Not a Conduit for the Affairs of the Other*: A parent's involvement in some of the subsidiary's operations does not create the type of pervasive and direct control required for the assertion of general jurisdiction. *Delacruz v. Serv. Corp. Int'l*, No. 1:18-cv-00154-LJO-EPG, 2018 WL 2287962, at *6 (E.D. Cal. May 18, 2018). That AutoNation contracted for a service that its subsidiaries could use does not make it a conduit for the affairs of its subsidiaries. *Prime Loyalty LLC v. GoDaddy Inc.*, No. CV-24-03359-PHX-JJT, 2025 WL 1807721, at *8-9 (D. Ariz. July 1, 2025) (migration of some of subsidiary's customers to the operational services managed by the parent insufficient to justify disregard of separate corporate structure); *NetApp, Inc.*, 2015 WL 402251, at * 6 (sharing of administrative functions not indicative of alter ego liability). As discussed above, Roseville Motor Corporation and Auto Car, Inc. are not a conduit for the affairs of AutoNation. (*See* 2025 Fergus Decl. ¶¶ 1-14.)

*Identical Directors and Officers*: AutoNation, Inc. does not have overlapping directors or officers with either Roseville Motor Corporation or Auto Car, Inc. (RJN, Ex. B at p. 114 and Exs. F, G, J, & K; 2025 Fergus Decl. ¶¶ 11-14.)

In sum, in balancing all of these factors, the *only* factor (out of nine) that Plaintiff can point to is that AutoNation is a grandparent owner to both Roseville Motor Corporation and Auto Car, Inc. That falls far short of being able to establish the unity of interest and ownership prong.

### b) Plaintiff Cannot Establish Fraud or Injustice

Even if AutoNation could not disprove the unity of interest and ownership prong, there is no fraud or injustice which would justify piercing the corporate veil.

DEFENDANT'S MEMORANDUM OF P'S AND A'S ISO ITS RULE 12 MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

FP 61663269.9

Accordingly, because AutoNation is neither "at home" in California nor subject to imputed jurisdiction through its subsidiaries, the Court lacks general jurisdiction over AutoNation.

### C.    Plaintiff Fails to Establish Specific Jurisdiction

Courts in the Ninth Circuit can exercise "specific jurisdiction over a non-resident defendant only when three requirements are satisfied: (1) the defendant either "purposefully direct[s]" its activities or "purposefully avails" itself of the benefits afforded by the forum's laws; (2) the claim "arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction [] comport[s] with fair play and substantial justice, i.e., it [is] reasonable." *Williams*, 851 F.3d at 1023 (internal citation omitted); *accord Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). Plaintiff initially bears the burden to establish sufficient contacts under the first two prongs before the burden shifts to the defendant to demonstrate that exercising jurisdiction would be unreasonable. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154-55 (9th Cir. 2006).

### 1.    AutoNation Did Not Purposefully Avail Itself of California

Purposeful direction and purposeful availment are "two distinct concepts." *Schwarzenegger*, 374 F.3d at 802. The purposeful availment analysis is typically used for contract claims and unintentional tort claims, while the purposeful direction analysis is used for intentional torts or tort-like actions. *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1090 (9th Cir. 2023). There are no contract claims here, and CIPA claims typically rely on the purposeful direction analysis. Nevertheless, Plaintiff's SAC appears to rely on two allegations to establish personal jurisdiction over AutoNation: (1) that the contract between Invoca and AutoNation is governed by California law and any lawsuit between the two entities be litigated in California and (2) that Invoca is headquartered in California. (SAC ¶ 13.) The first reason is factually incorrect, and neither reason is availing.

/ / /

FP 61663269.9

First, the contract between Invoca and AutoNation states that the governing law and the forum for all disputes arising from the contract is Florida, not California, and it has been since 2019. (March 5, 2026 Declaration of Beth Fergus ("2026 Fergus Decl."), ¶ 2, Ex. A at ¶ 10.7.) Plaintiff's claim that a template agreement on Invoca's website is the governing contract is erroneous. (*See* SAC ¶ 13 n.3.)

Second, even if the forum selection clause had identified California (which it did not), Plaintiff still would not have personal jurisdiction. Non-parties can be bound by a forum selection clause under either a third-party beneficiary theory or if the non-signatory is "closely related to the contractual relationship." *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 n.5 (9th Cir. 1988). Plaintiff does not plead he is a third-party beneficiary or that he is closely related to the parties' contractual relationship. (SAC ¶¶ 13, 34-36.) *See Stasi v. Inmediata Health Grp. Corp.*, 501 F. Supp. 3d. 898, 920 (S.D. Cal. 2020) Rather, Plaintiff pleads he communicated with one contractual party's subsidiaries. (SAC ¶¶ 34-36.)

In the few cases within California district courts in which a *plaintiff* sought to enforce a forum selection clause to a contract in which he was not a party to create personal jurisdiction, the courts rejected the plaintiff's attempts where the contract's forum selection clause indicated an intent to only bind the parties to the contract and only as to disputes arising from the contract. *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 946, 950, 953 (N.D. Cal. 2017); *Notorious B.I.G. LLC v. Hutson*, No. CV 14-02415 SJO (JCx), 2014 WL 12589626, at *3. (C.D. Cal. July 3, 2014). Like in those cases, the forum selection clause in the online agreement cited by Plaintiff is limited to the parties to the contract and to disputes arising from the contract. (SAC ¶ 13; RJN, Ex. L at ¶ 10.7.) Because Plaintiff's claims are not based on the underlying agreement and Plaintiff is also not a party to the agreement, the agreement cannot create personal jurisdiction over AutoNation.

Third, without a forum selection clause, Plaintiff's only remaining argument is that AutoNation availed itself of California because Invoca – a non-party to this

9

FP 61663269.9

lawsuit – is headquartered in California. (*See* SAC ¶ 13.) This court must assess personal jurisdiction against AutoNation; Plaintiff cannot bootstrap personal jurisdiction onto AutoNation based on allegations against Invoca. *Calder v. Jones*, 465 U.S. 783, 790 (1984); *Sher v. Johnson*, 911 F.2d 1357, 1365 (9th Cir. 1990).

For the foregoing reasons, Plaintiff cannot establish "purposeful availment."

> ### 2.    *AutoNation Did Not Purposefully Direct Its Activities at Plaintiff or California*

Purposeful direction requires that the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Dole Foods Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002).

This Court previously ruled that Plaintiff failed to establish express aiming. (ECF 40 at 7, citing to *Walden v. Fiore*, 571 U.S. 277, 289 (2014); *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1065, 1068 (9th Cir. 2017).) This Court suggested some mechanisms by which Plaintiff may be able to show personal jurisdiction, such as "AutoNation's decision to install or operate call-recording technology was directed at California's customers . . . or otherwise tailored to the California market" in order to show that AutoNation's conduct in California was somehow different than what it was doing nationwide. (ECF 40 at 7-8.) Or, alternatively, that AutoNation directed, controlled, or ratified the subsidiaries' call-recording practices or otherwise exercised control over the subsidiaries' call-recording practices. (*Id.* at 8.)

Plaintiff has not tried – and cannot – make such showings. Invoca's platform and services are used by AutoNation subsidiaries across the country, with California new car dealerships accounting for less than 17% of the new vehicle dealerships that utilize Invoca. (2026 Fergus Decl. ¶ 3.). AutoNation did not contract for Invoca to configure, implement, or use the Invoca platform services differently in California. (*Id.* ¶ 4.) AutoNation did not direct Invoca to configure or implement the Invoca platform services differently in California. (*Id.*) AutoNation did not direct any

10

FP 61663269.9

affiliate, subsidiary, or any other entity or person to configure or implement the Invoca platform differently in California. (*Id.*) AutoNation does not have any California-specific policies for use of the Invoca platform. (*Id.*) Plaintiff's repeated insertion of the word "California" in the SAC cannot change these facts. (*See* SAC ¶¶ 3-7, 10, 27, 30-35, 37-41, 46(a), 46(c), 49-50, 52-53, and 58-59.)

While Plaintiff claims that AutoNation directs its own call center operations in California (SAC ¶ 10), this allegation is wrong: AutoNation has no employees and does not maintain any offices or physical locations in California. (2025 Fergus Decl. ¶¶ 4-5; 2026 Fergus Decl. ¶ 5.)

Plaintiff appears to be relying on AutoNation being the indirect parent of the two California dealerships Plaintiff contacted *and* conclusorily lumping AutoNation together with other affiliated entities – which the court has already said is not enough. (ECF 40 at 8, citing *Williams*, 851 F.3d at 1020-22, 24-25 and *Holly v. Alta Newport Hosp., Inc.*, 612 F. Supp. 3d 1017, 1023 (C.D. Cal. 2020).) *See also Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 837 (N.D. Cal. 2021) (lack of specific personal jurisdiction where plaintiffs only alleged that a vendor sold software to a business where the business operated in California).

For all these reasons, Plaintiff has still failed to allege specific personal jurisdiction against AutoNation and this case must be dismissed.

## IV.    PLAINTIFF LACKS ARTICLE III STANDING

### A.    Legal Standard Under Rule 12(b)(1)

Article III of the U.S. Constitution limits federal court jurisdiction to "cases" and "controversies." U.S. Const. art. III, § 2; Fed. R. Civ. P. 12(b)(1). "[L]ack of Article III standing requires dismissal for lack of subject matter jurisdiction." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) (italics omitted). To satisfy Article III standing, a plaintiff must show that the alleged injury is "fairly traceable to the challenged action of *the defendant*." *Lujan v. Def. of Wildlife*, 504 U.S. 555, 560 (1992) (emphasis added) (alterations and quotations omitted).

11

FP 61663269.9

To establish standing and invoke federal jurisdiction, a plaintiff must demonstrate: "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

To establish "injury in fact," a plaintiff must show that he suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (quotations omitted). A "concrete injury" must be "de facto," meaning, it cannot be abstract and must be real and "actually exist." *Spokeo*, 578 U.S. at 340. "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* at 341.

**B.    Plaintiff Has Not Alleged an Injury In Fact**

Recently, the Ninth Circuit held that Article III "requires a plaintiff to demonstrate more than just a statutory violation when evaluating whether a plaintiff has alleged a concrete injury." *Popa v. Microsoft Corp.*, 153 F.4th 784, 793 (9th Cir. 2025). In doing so, the Ninth Circuit affirmed that there was no Article III standing for a claim arising from the alleged violation of Pennsylvania's Wiretapping and Electronic Surveillance Contract Act for use of session replay software on a website. *Id.* at 786-87, 794-95 (9th Cir. 2025). The Ninth Circuit has recognized that "*TransUnion* contemplates a standing inquiry particularized to a plaintiff's circumstances and benchmarked to a specific tort," thereby rejecting generalized invasion of privacy harms as sufficient to establish Article III standing. *Id.* at 791. There is "no free-roaming privacy right at common law." *Id.* at 792. Rather, Plaintiff must tether the harm to a harm similar in of the following four torts: intrusion upon seclusion, appropriation of another person's name or likeness, publicity given to another person's private life, and publicity that places one in a false light. *Id.*

Plaintiff fails to identify any such tort or harm here. In *Lien v. Talkdesk, Inc.*, No. 24-cv-06467-VC, 2025 WL 551664 (N.D. Cal. Feb. 19, 2025), a district court

12

DEFENDANT'S MEMORANDUM OF P'S AND A'S ISO ITS RULE 12 MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

FP 61663269.9

granted a motion to dismiss in a lawsuit with similar allegations to here. The plaintiff alleged that the defendant used a third-party customer service product powered by artificial intelligence called Talkdesk CX Cloud, which would monitor the contents of telephone calls between customer service agents and customers. (RJN, Ex. M at ¶¶ 1-2.) Like as alleged for Invoca, Talkdesk CX Cloud was alleged to provide real-time collection, recording, transcription, and analysis by AI which Talkdesk CX Cloud could use for its own independent purposes. (*Id.* ¶¶ 38, 46-51.) The plaintiff alleged callers disclosed a wide variety of personal information on calls, including name, address, telephone number, credit card numbers, and other sensitive financial and personal information, with the two named plaintiffs providing names and contact information and asking about store hours, events, and products. (*Id.* ¶¶ 40, 59, 69.)

In granting the motion to dismiss, the court in *Lien* ruled that the information allegedly intercepted about the two named plaintiffs "is simply not private or personal enough to confer standing where the plaintiff alleges that it was collected from one call made to one retailer." *Lien*, 2025 WL 551664, at \*1. The court also distinguished *Lien* from the myriad website lawsuits, noting that "there is arguably an even weaker expectation of privacy in phone calls to live humans that in web browsing." *Id.* at \*1 n.1. *But see Serna v. 1-800-GOT-JUNK?, LLC*, No. 5:24-cv0047-HDV-MRw, 2024 WL 3915074, at \*2 (C.D. Cal. Aug. 6, 2024) (ruling Article III standing existed at the pleading stage in another lawsuit involving use of Invoca where the argument was focused on whether plaintiffs received notice of recording; court did not analyze whether this met the standard of an injury in fact under the *TransUnion* standard).

Much of the information identifies by Plaintiff is required by law to exchange in the event of a traffic accident. VEH. CODE § 16025(a); *see Cahen v. Toyota Motor Corp.,* 147 F. Supp. 3d 955, 973 (N.D. Cal. 2015) (no injury in fact for invasion of privacy relating to disclosure of vehicle location, driving history, or performance metrics). While Plaintiff references "billing information" (SAC ¶ 35), Plaintiff does not state the type of billing information he provided (e.g., that he intended to pay by

13

credit card when he arrived, his actual credit card number, his address for where bills could be directed, etc.). Plaintiff does not allege that any sensitive financial data was misused, that his information was publicly disclosed, or that he suffered any tangible or intangible consequences as a result of the alleged monitoring.

Instead, Plaintiff merely points to the statutory violation itself as the basis for his claims. (SAC ¶¶ 8, 19, 54, 61.) That is precisely what *Spokeo*, *TransUnion*, and *Popa* prohibit. Absent allegations of a concrete and particularized injury closely analogous to a traditionally recognized privacy harm, Plaintiff fails to establish Article III standing and his claims must be dismissed.

## V.    PLAINTIFF FAILS TO STATE A CLAIM UNDER CIPA

### A.    Legal Standard Under Rule 12(b)(6)

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matters, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). When ruling on a motion to dismiss under Ruel 12(b)(6), courts must accept as true all well-pleaded factual allegations in the complaint. *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1247 (9th Cir. 2013). However, this presumption of truth does not extend to legal conclusions couched as factual allegations or to "threadbare recitals of the elements of a cause of action, supported by mere conclusionary statements." *Ashcroft*, 556 U.S. at 678. The court may also properly consider documents that are incorporated by reference into the complaint, without converting the motion into one for summary judgment, so long as plaintiff refers extensively to the document or it forms the basis of plaintiff's claims. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

### B.    Both of Plaintiff's CIPA Claims Are Time Barred

Plaintiff's CIPA claims are subject to a one-year statute of limitations. *Montalti v. Catanzariti*, 191 Cal. App. 3d 96, 98 (1987). Plaintiff called the relevant dealerships in April 2021, September 2021, and November 2023. (SAC ¶¶ 9, 34.) Plaintiff did not initiate this lawsuit until March 2025, approximately 16 months after

14

the most recent alleged interaction. On its face, the complaint is untimely.

To avoid dismissal, Plaintiff invokes the delayed discovery rule. To successfully plead delayed discovery, Plaintiff must plead: "(1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005); *accord Fodor v. AOL Time Warner, Inc.*, 217 F. App'x 622, 623 (9th Cir. 2007); *Mireskandari v. Daily Mail & Gen. Trust PLC*, No. CV 12-02943 MMM (SSx), 2013 WL 12114762, at *14 (C.D. Cal. Oct. 8, 2013).

Plaintiff's conclusory allegations that he became aware of AutoNation's alleged violations only shortly before filing the original complaint are insufficient. (SAC ¶ 39.) Plaintiff does not plead the manner of discovery (*id.* ¶ 39), which is also necessary to evaluate the claim that the alleged conduct could not have been uncovered within the statutory period with reasonable diligence. Indeed, there is no reason that Plaintiff could not have discovered the alleged conduct with reasonable diligence based on the links footnoted in the SAC showing online publicity from 2022 and 2023 relating to AutoNation's use of Invoca's call recording services. For example, footnote 15 is an Invoca blog dated July 14, 2022. (RJN, Ex. N.) Footnote 18 refers to an Invoca webpage mentioning AutoNation from 2022. (RJN, Ex. O.) Based on Plaintiff's own SAC, this was a public fact which Plaintiff *could* have discovered sooner; Plaintiff's failure to explain why he did not discover this fact earlier with reasonable diligence is fatal to his claim. Accordingly, Plaintiff's CIPA claims are time-barred and should be dismissed with prejudice.

### C.     Plaintiff Fails to State a Claim for Violation of Penal Code § 631(a)

Plaintiff's CIPA wiretapping claim is premised on Penal Code § 631(a), which targets interception by third parties, not the routine use of service providers by businesses. The statute contains four clauses, creating four avenues for relief:

> Any person [1] who, by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any

15

DEFENDANT'S MEMORANDUM OF P'S AND A'S ISO ITS RULE 12 MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

FP 61663269.9

unauthorized connection . . . with any telegraph or telephone wire, line, cable, or instrument, . . . or [2] who willfully and without consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state, or [3] who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or [4] who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above[.]

*Graham*, 533 F. Supp. 3d at 831 (quoting PEN. CODE § 631(a)). None is satisfied.

> ### 1. *Invoca's Alleged Conduct Falls Within Section 631(B)(1)'S Exemption From Liability For Telephone Companies*

Section 631 does not apply to "[a]ny public utility, or telephone company, engaged in the business of providing communications services . . . where the acts otherwise prohibited herein are for the purpose of . . . maintenance, conduct or operation of the services . . . of the . . . telephone company." PEN. CODE § 631(b)(1).

The term telephone company incorporates the definition of a "telephone corporation" under the Public Utilities Code. PEN. CODE §§ 631(c), 638(c)(3). A "telephone corporation" includes every corporation or person owning, controlling, operating, or managing any telephone line for compensation within this state. PUB. UTIL. CODE § 234. A "telephone line," in turn, is defined expansively to include the facilities, equipment, and property used to facilitate telephone communications. *Id.* § 233. The technology being used to operate or manage the telephone line need not be necessary for its function; one district court ruled that a software-as-a-service which used AI to record, transcribe, and analyze conversations was covered by the telephone company exemption. *Ambriz v. Google,* LLC, No. 23-cv-05437-RFL, 2024 WL 3282521, at *2-3 (N.D. Cal. June 20, 2024). As the court explained in *City of Huntington Beach v. Pub. Util. Comm'*, 214 Cal. App. 4th 566 (2013), "[i]f an entity

DEFENDANT'S MEMORANDUM OF P'S AND A'S ISO ITS RULE 12 MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

owns, controls, operates, or manages telephone lines in connection with telephone communication, the entity is a 'telephone corporation.'" *Id.* at 587.

Invoca's platform assigns telephone numbers, provides call routing/transfers, and supports outbound dialing. (RJN, Ex. L at ¶ 2.5 & 2.6, Ex P at ¶¶ 2(c)(viii), 3(b), 3(c), 13(f).) By providing these services, Invoca operates and manages telephone lines used in connection with telephone communications. (Ex. P at ¶ 11(i) (noting Invoca has contracted with telecommunications providers). Accordingly, Invoca qualifies as a telephone corporation and is exempt from liability as a matter of law. Because there is no underlying wrongdoing by Invoca, Plaintiff fails to state a claim against AutoNation for aiding and abetting Invoca. (*See* SAC ¶¶ 50-51.)

> **2.      *The Dealerships Who Used Invoca Are Not Third Parties to Plaintiff's Communications***

Section 631(a) has consistently been applied solely to eavesdropping by **third parties**, and not to recordings made by parties to the communications. *Rodgers v. Ulrich*, 52 Cal. App. 3d 894, 898-99 (1975); *Ribas v. Clark*, 38 Cal. 3d 355, 359 (1985); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020). There are no allegations that *AutoNation* eavesdropped on the calls, nor are there allegations that the dealerships themselves were not parties to the phone calls. (SAC ¶¶ 34-40, 48-54.) Rather, Plaintiff alleges that AutoNation aided and abetted Invoca. (*Id.* ¶¶ 50-51.) As such, liability is contingent on Plaintiff pleading that *Invoca* violated clauses one, two, or three of Penal Code § 631.

> **3.      *Invoca Is Not A Third-Party, But A Service Provider To Autonation***

> > **a)      Foundational Underpinnings of Eavesdropping**

Two foundational California cases guide the courts' analysis of third-party involvement under the CIPA: *Rogers v. Ulrich*, 52 Cal. App. 3d 894 (1975) and *Ribas v. Clark*, 38 Cal. 3d 355 (1985). In *Rogers*, the defendant Ulrich utilized a tape recorder connected to his telephone to record a conversation with plaintiff Rogers

17

and subsequently replayed the recording for a third party who had not been involved in the original communication. *Rogers*, 52 Cal. App. 3d at 897-98. The California Court of Appeal concluded that Ulrich's conduct did not violate Section 631(a) because Ulrich was a party to the call. *Id*. at 899. The court emphasized that the statutory prohibition applies solely to third parties who surreptitiously intercept private communications. *Id*. at 899.

By contrast, in *Ribas*, a woman called her husband and allowed Clark, a third party, to secretly listen in on the conversation as the husband allegedly admitted to preventing her from obtaining legal counsel during their marital dissolution proceedings. *Ribas*, 38 Cal. 3d at 358-59. The California Supreme Court held that Clark's secret monitoring of the call violated Section 631(a) because the information was simultaneously disseminated to an unannounced auditor. *Id*. at 360-61.

*Rogers* and *Ribas* historically resulted in a split amongst district courts regarding whether a third-party entity must actually use the data it obtains for its own purposes or whether merely having the capability to do so is sufficient to qualify as a third party. *Compare Graham*, 533 F. Supp. 3d at 832-33 (granting motion to dismiss because session replay software was a "service provider" that "provide[d] a tool – like the tape recorder in *Rogers*" which allowed defendant to record and analyze its own data in furtherance of its own business) *with Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 900 (N.D. Cal. 2023) (capability of the third party to use a business's data for its own purposes, regardless of any intent to do so, was sufficient to survive a motion to dismiss).

           b)     Ninth Circuit Decision Favors Tape Recorder Exception Even If a Service Provider's Has the Capability to Use Data for Its Own Purposes

On July 9, 2025, the Ninth Circuit affirmed summary judgment in favor of Converse, rejecting the argument that a third party's mere *capability* of reading the contents of a message – absent the message actually being read by the third party –

established wiretapping under the second prong of Section 631(a). *Gutierrez v. Converse, Inc.*, No. 24-4797, 2025 WL 1895315, at *1 (9th Cir. July 9, 2025).

While the Plaintiff here argues "use" by selectively quoting Invoca's Privacy Policy (SAC ¶ 25 & n.12), reviewing the Privacy Policy reveals that Plaintiff misread it. The Privacy Policy applies to data that Invoca collects from *all* sources (not just data collected as part of the services Invoca provides to its business customers), which is discussed in three sections of the policy: "Collection of information collected from consumers"; "Categories of information collected from our clients" (which covers data collected directly from consumers who interact with Invoca, but does not cover data that Invoca collects from or about individuals as part of Invoca's provision of services to its clients); and "Categories of information collected from or on behalf of our Clients." (RJN, Ex. A.) In this third section, Invoca states that it "maintain[s this information] exclusively on behalf of and at the direction of our Clients." (*Id.*) Consistent with that, in the "How we use Personal Data" section – which addresses usage of personal data from *all* three categories of sources – Invoca states that "[a]s a service provider, [it uses customer data] to facilitate access to and use of that information by our Clients in pursuit of their individual commercial and business purposes and subject to their privacy policies." (*Id.*) *See Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008) (courts "need not accept as true allegations contradicting documents that are referenced in the complaint or that are properly subject to judicial notice").

Under the California Consumer Privacy Act (CCPA), a service provider is defined as a business "that processes personal information on behalf of a business and that receives from or on behalf of the business consumer's personal information for a business purpose pursuant to a written contract." CIV. CODE § 1798.140(ag)(1). As noted at the link in footnote 12 in the SAC, Plaintiff acknowledges that Invoca operates in that capacity as a service provider. (*See* RJN, Ex. A.)

Moreover, at that same link in footnote 12 of the SAC, Invoca states under

19

Customer Data Policy: "**Data Anonymization:** Invoca only collects the Caller ID of the caller as personal data and redacts confidential information and call recordings and transcriptions." (RJN, Ex. A.) In other words, despite Plaintiff claiming that Invoca can do anything with the data and collects all sorts of dealership data for its own uses, Invoca itself has access to a much narrower subset of data (the caller ID) and otherwise is only processing data on behalf of its customers.

Plaintiff's allegations thus show, at best, that Invoca has the capability to intercept or listen to calls in real time. But the very citations which Plaintiff relies on show that Invoca does not *use* that ability, which brings AutoNation within the ambit of dismissal under *Gutierrez*.

To the extent that other district courts have previously ruled against Invoca, **all** such decisions pre-date *Gutierrez* and rely on the capability of Invoca to use data for its own purposes, as well as failing to consider how the relevant parts of the privacy policy bars such use as a service provider. *Valencia v. Invoca, Inc.*, NO. 2:25-cv-01323-HDV-BFM, 2025 WL 3691970, at *3-5 (C.D. Cal. Nov. 17, 2025) (court relied on *Tate* and *Busby* and read privacy policy out of context); *Tate v. VITAS Healthcare Cor.*, 762 F. Supp. 3d 949, 954-57 (E.D. Cal. 2025) (court concluded that plaintiff pleaded that the terms of service permitted Invoca to use the data to improve its own products and services; as discussed above, the Privacy Policy was quoted out of context in both this lawsuit and *Tate*); *Busby v. Invoca*, No. 24-cv-05542-JD, 2025 WL 822664, at *1 (N.D. Cal. Mar. 14, 2025) (court denied Invoca's motion to dismiss Section 631(a) claim because the operative complaint alleged that Invoca claimed the right to independent use of the data to market and enhance its own services; however, as discussed above, Invoca's Privacy Policy specifically carves out the usage of client data and states that such client data is only used on the client's behalf and direction).

Accordingly, Plaintiff's allegation that AutoNation "aided and conspired" with Invoca (SAC ¶¶ 50-51) fails to state a claim because Section 631(a)'s fourth clause applies only when the underlying eavesdropping is itself unlawful, i.e., when it is

20

FP 61663269.9

performed by a third party. *See Powell v. Union Pac. R. Co.*, 864 F. Supp. 2d 949, 955 (E.D. Cal. 2012) (rejecting aiding/conspiracy claim where defendant was a party to the call). Because Invoca acted as the dealerships' service provider and not as an independent third party, its conduct cannot constitute eavesdropping under Section 631(a). Plaintiff's claim, which seeks to impose liability on AutoNation for entering into a contract allowing dealerships in the same automotive group to use Invoca to facilitate their own communications, falls squarely outside the scope of the statute. Therefore, Plaintiff fails to plausibly allege a third-party interception of his communications, and as such, his Section 631 (a) should be dismissed with prejudice.

**D.    Plaintiff Fails to State a Claim Under CIPA § 632(a)**

*1.    Invoca's Platform Is Not An "Electronic Amplifying Or Recording Device" Within The Meaning Of Section 632(a)*

Federal courts apply California rules of statutory construction when interpreting a California statute. *Lares v. W. Bank One (In re Lares)*, 188 F.3d 1166, 1168 (9th Cir. 1999). "The touchstone of statutory interpretation is the probable intent of the Legislature." *Hale v. S. Cal. IPA Med. Grp., Inc.*, 86 Cal. App. 4th 919, 924 (2001); *accord L.A. Unified Sch. Dist. v. Super. Ct.*, 14 Cal. 5th 758, 767-68 (2023) (citing *Meza v. Portfolio Recovery Assocs., LLC*, 6 Cal. 5th 844, 856-57 (2009)). When interpreting a statute, courts begin with the statutory language, applying its plain and commonsense meaning. *Meza*, 6 Cal. 5th at 856-57. Courts do not interpret language in isolation but consider it in the context of the statutory framework to determine the statute's scope and purpose. *Id*. If statutory language is ambiguous, courts may turn to other factors, such as the statute's purpose, legislative history, and public policy. *Id*. Courts also interpret language in the context of the entire statute and the statutory scheme, giving significance to every word, phrase, sentence, and part of an act to fulfill the Legislature's intent. *Id*. Interpretation of a statute presents a question of law. *Smith v. LoanMe, Inc.*, 11 Cal. 5th 183, 190 (2021).

Section 632(a) prohibits the use of an "electronic amplifying or recording

21

device" to intentionally eavesdrop upon or record a confidential communication without the consent of all parties. In Section 632(a), the term "electronic amplifying device" is used in connection with an exemplar of two tangible types of devices ("telegraph, telephone") and then a catch-all term of "other device." Under the doctrine of *ejusdem generis*, "where general words follow the enumeration of particular classes of persons or things, the general words will be construed as applicable only to persons or things of the same general nature or class as those enumerated. The rule is based on the obvious reason that if the Legislature had intended the general words to be used in their unrestricted sense, it would not have mentioned the particular things or classes of things which would in that event become mere surplusage.'" *Dyna-Med, Inc. v. Fair Employ. & Hous. Comm'n*, 43 Cal. 3d 1379, 1391 n.12 (1987) (citation omitted).

Plaintiff alleges that Invoca is a software, not a tangible item. (SAC ¶¶ 2, 57.) As such, Section 632(a) does not apply because software is not a "device." While courts have disagreed over how to interpret the term "device" and whether to rely on Section 637.7 (another provision of CIPA) for interpretative guidance, the doctrine of *ejusdem generis* leads to the conclusion that devices must be tangible things. *See Doe v. Microsoft Corp.*, No. C23-0718-JCC, 2023 WL 8780879, at *8 (W.D. Wash. 2023) (court dismissed a Section 632(a) claim where the alleged recording was accomplished using software, rather than a physical device; the court relied on *In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 193 (N.D. Cal. 2019), which concluded that "[s]oftware like Google Maps, Chrome, etc. are not 'devices' within the meaning of CIPA because they are not 'equipment.'"). While some district courts have pushed for a broader interpretation, this is not grounded in California statutory interpretation principles. *See Tate*, 762 F. Supp. 3d at 957-58 (the court relied on *Gladstone v. Amazon Web Servs., Inc.*, 739 F. Supp. 3d 846, 857 (W.D. Wash. 2024) and adopted the broader interpretation of "device" from the federal Wiretap Act (which courts have interpreted to include software) for purposes of Section 632).

22

While the Ninth Circuit has acknowledged that CIPA should be interpreted broadly in light of its privacy-protecting statutory purposes (*Javier v. Assurance IQ, LLC*, No. 21-16351, 2022 WL 1744107, at *2 (9th Cir. 2022)), this interpretive principle does not justify expanding the statute to encompass software in the absence of statutory language or legislative history supporting that conclusion. Reading the term device (a thing) to include software (an intangible) expands the statutory language beyond its plain and commonsense meaning.

Accordingly, Invoca's software platform does not constitute an "electronic amplifying or recording device" under CIPA Section 632(a).

### 2. Plaintiff Does Not Allege Facts Supporting that Any Communication Was Confidential

Section 632(a) prevents a participant to a "confidential conversation" from recording the conversation without the other party's "knowledge or consent." *Warden v. Kahn*, 99 Cal. App. 3d 805, 812 (1979) (citation omitted). A "confidential communication" is defined as: "any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto, but excludes a communication made in a public gathering or in any legislative, judicial, executive, or administrative proceeding open to the public, **or in any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded**." PEN. CODE § 632(c) (emphasis added).

To put it another way, a conversation is confidential "if a party to that conversation has an **objectively reasonable** expectation that the conversation is not being overheard or recorded." *Flanagan v. Flanagan*, 27 Cal. 4th 766, 768 (2002) (emphasis added). The test for confidentiality is objective and context-specific, requiring courts to consider the circumstances surrounding the communication. *Frio v. Super. Ct.*, 203 Cal. App. 3d 1480, 1488 (1988).

In *Faulkner v. ADT Sec. Servs., Inc.*, No. C 11-00968 JSW, 2011 WL 1812744,

23

FP 61663269.9

at *3 (N.D. Cal. 2011), *aff'd* 706 F.3d 1017 (9th Cir. 2013), the court found that plaintiff had no reasonable expectation that a conversation with a business about a billing dispute would not be recorded or overheard. "Plaintiff's subjective beliefs that his telephone call was not being recorded, standing alone, are not sufficient to support the objective determination whether the conversation was confidential under Section 632." *Id.* at *3. In considering the totality of the circumstances–the nature of ADT's business (home security) and the character of the telephone call (a billing dispute)–a customer would not have an objectively reasonable expectation that the call would not be recorded or overheard. *Id.* at *4.

Here, Plaintiff voluntarily contacted or interacted with dealerships by telephone, a medium where call recording is widely known and reasonably expected in commercial contexts. Plaintiff does not allege he was misled into believing his conversations would remain confidential, nor does he offer any factual basis for a reasonable expectation that his calls would not be recorded. The nature of Plaintiff's calls was just transactional, about products (in this case, vehicles) from a retail establishment, just like in *Lien* where the court held that similar information in the retail context (such as phone numbers and questions about store hours, events, and products) was not private or personal enough. *See Lien*, 2025 WL 551664, at *1. Given the context of Plaintiff's phone calls, his expectation of privacy would not be reasonable under *Faulkner*. In fact, Plaintiff does not even allege that he did not receive a notice of recording, so he knew the calls were being recorded and is just complaining about Invoca not being identified as the provider of the software the dealerships used to record the calls. Therefore, Plaintiff has no reasonable expectation of confidentiality.

### 3. *Plaintiff Fails to Plead that He Did Not Have Knowledge of or Consent to Recording*

Section 632(a) prohibits a party to a confidential communication from recording the conversation without the other party's *knowledge or consent*. PEN.

24

FP 61663269.9

CODE § 632(a). The statute is phrased in the disjunctive, meaning that liability is avoided if the other party either *consents to* or *knows about* the recording. *See Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 118 (2006) ("A business that adequately advises all parties to a telephone call, at the outset of the conversation, of its intent to record the call would not violate [Section 632]."); *Forest E. Olson, Inc. v. Super. Ct.*, 63 Cal. App. 3d 188, 191 (1976) (holding that a participant in a telephone conversation is not subject to Section 632's prohibition on recording if the other party is aware that the call is being recorded and plaintiff did not allege that the real party was unaware the recording was taking place).

While Plaintiff asserts that he did not consent to the use of Invoca (SAC ¶¶ 35, 38, 60), Plaintiff's SAC is conspicuously silent as to whether he expected or consented to the *dealerships* recording his conversations. As such, Plaintiff's cause of action fails for that reason alone.

To the extent that Plaintiff is arguing that he disagrees with the use of Invoca as a recording device, Plaintiff's SAC would make actionable under Section 632(a) any recording device if a plaintiff disagreed with the device used for recording – even if notified that a recording device was being used. Such an interpretation would allow any recording device to be labelled a "third party" and give rise to liability if a plaintiff after-the-fact decided he found something objectionable about the recorder.

## VI.   CONCLUSION

For the foregoing reason, the Court should grant this Motion to Dismiss Plaintiff's Second Amended Complaint without leave to amend.

Dated: March 6, 2026                    FISHER & PHILLIPS LLP

By: */s/ Usama Kahf*

USAMA KAHF
DARCEY M. GRODEN
XUAN ZHOU
Attorneys for Defendant
AUTONATION, INC.

25
DEFENDANT'S MEMORANDUM OF P'S AND A'S ISO ITS RULE 12 MOTION TO DISMISS
PLAINTIFF'S SECOND AMENDED COMPLAINT

FP 61663269.9