Eugene Y. Turin (State Bar No. 342413)
MCGUIRE LAW, P.C.
1089 Willowcreek Road, Suite 200
San Diego, CA 92131
Tel: (312) 893-7002
Fax: (312) 275-7895
eturin@mcgpc.com

*Counsel for Plaintiff and the Proposed Class*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MIKE XAVIER, individually and on behalf of similarly situated individuals,<br><br>Plaintiff,<br><br>vs.<br><br>AUTONATION, INC.,<br><br>Defendant. | Case No. 5:25-CV-731-AB-DTB<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S RULE 12 MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**<br><br>Date: May 1, 2026<br>Time: 10:00 a.m.<br>Courtroom: 7B<br>Judge: André Birotte Jr.<br><br>Complaint Filed: March 24, 2025<br>SAC Filed: February 4, 2026<br>Trial Date: None |

## TABLE OF CONTENTS

Page

**INTRODUCTION** ........ **1**

**STATEMENT OF FACTS** ........ **2**

**LEGAL STANDARD** ........ **3**

I. 12(b)(2) Standard of Review for Motions to Dismiss ........ 3

II. 12(b)(1) Standard of Review for Motions to Dismiss ........ 3

III. 12(b)(6) Standard of Review for Motions to Dismiss ........ 3

**ARGUMENT** ........ **4**

I. This Court Has Personal Jurisdiction Over Defendant. ........ 4

II. Plaintiff Has Standing To Bring This Suit ........ 7

III. Plaintiff Pled Facts Sufficient to Satisfy The Delayed Discovery Rule. ........ 9

IV. Defendant's Challenge To Plaintiff's § 631(a) Claim Is Premature And Ignores Plaintiff's Well-Pled Allegations. ........ 11

A. Invoca is not a "telephone corporation." ........ 11

B. Whether Invoca's technology was simply a "tape recorder" is a question of fact that is inappropriate to resolve at the pleading stage. ........ 12

C. Whether Invoca makes "independent use" of the recordings that it obtains is irrelevant as to whether Plaintiff stated a claim under Sec. 631(a). ........ 13

D. Plaintiff sufficiently alleges that Invoca independently used the information it obtained from customer phone calls with Defendant. ........ 14

V. Plaintiff Pleads Sufficient Facts That Defendant Violated Cal. Pen. Code § 632(a) ........ 16

A. Defendant erroneously tries to apply the definition of "device" from § 637.7 to Plaintiff's claim under § 632(a). ........ 16

B. Given the contents of Plaintiff's conversation that was recorded it was objectively reasonable to believe that it was confidential. ........ 17

C. Plaintiff did not consent to his conversations being recorded. ........ 19

**CONCLUSION** .......... **20**

## Cases

*Adams v. Johnson*,
335 F.3d 1179 (9th Cir. 2004) .... 4

*Ass'n for Los Angeles Deputy Sheriffs v. Cnty of Los Angeles*,
648 F.3d 986 (9th Cir. 2011) .... 3

*Balanzar v. Fid. Brokerage Servs., LLC*,
654 F. Supp. 3d 1075 (S.D. Cal. 2023) .... 9

*Briskin v. Shopify, Inc.*,
135 F.4th 739 (9th Cir. 2025) .... 3

*Burdick v. Union Sec. Ins. Co.*,
No. 07-cv-4028, 2009 WL 4798873 (C.D. Cal. 2009) .... 9

*Busby v. Invoca*,
No. 24-cv-05542-JC, 2025 WL 822664 (N.D. Cal. 2025) .... 1, 14, 16, 18, 20

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) .... 19

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) .... 20

*Doe v. Holy See*,
557 F.3d 1066 (9th Cir. 2009) .... 3

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) .... 17

*Doe v. Microsoft Corp.*,
No. 23-cv-0718, 2023 WL 8780879 (W.D. Wash. 2023) .... 16

*Esparza v. Kohl's, Inc.*,
723 F. Supp. 3d 934 (S.D. Cal. 2024) .... 13

*Faulkner v. ADT Sec. Servs., Inc.*,
706 F.3d 1017 (9th Cir. 2013) .... 18

*Flanagan v. Flanagan*,
27 Cal. 4th 766 (2002) .... 18

*Gaige v. Exer Holding Co., LLC*,
No. 24-cv-06099, 2025 WL 559719 (C.D. Cal. 2025)........................................10

*Gutierrez v. Converse,*
No. 24-4797, 2025 WL 1895315 (9th Cir. 2025)...............................................13

*Herbal Brands, Inc. v. Photoplaza, Inc.*,
72 F.4th 1085 (9th Cir. 2023)...............................................................................6

*In re Google Inc.*,
2013 WL 5423918 (N.D. Cal. 2013)....................................................................19

*Javier v. Assurance IQ, LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023).................................................................13

*Kauffman v. Papa John's Int'l, Inc.*,
No. 22-cv-1492, 2024 WL 171363 (S.D. Cal. 2024)...........................................12

*Lien v. Talkdesk, Inc.*,
No. 24-cv-06467, 2025 WL 551664 (N.D. Cal. 2025) ..........................................9

*Rodriguez v. Aquatic Sales Sols*. LLC,
735 F. Supp. 3d 1208 (C.D. Cal. 2024).................................................................7

*Roney v. Miller*,
705 F. App'x 670 (9th Cir. 2017).........................................................................10

*Safe Air for Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004)...............................................................................3

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004).................................................................................7

*Serna v. 1-800-GOT-JUNK? LLC*,
No. 24-cv-00047, 2024 WL 3915074 (C.D. Cal. 2024)......................................10

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ..............................................................................................7

*Swarts v. Home Depot, Inc.*,
689 F. Supp. 3d 732 (N.D. Cal. 2023)...................................................................7

*Tate v. VITAS Healthcare Corp.*,
762 F. Supp. 3d 949 (E.D. Cal. 2025) ........................................ 1, 13, 16, 17, 20

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ........................................................................................ 7

*U.S. Dep't of Just. v. Reps. Comm. For Freedom of Press*,
489 U.S. 749 (1989) ........................................................................................ 7

*United States v. United Healthcare Ins. Co.*,
848 F.3d 1161 (9th Cir. 2016) ........................................................................ 10

*Walden v. Fiore*,
571 U.S. 277 (2014) ........................................................................................ 3

*Wilson v. Hewlett-Packard Co.*,
668 F.3d 1136 (9th Cir. 2012) ........................................................................ 4

*Yockey v. Salesforce, Inc.*,
745 F. Supp. 3d 945 (N.D. Cal. 2024) ............................................................ 17

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ........................................................... 12

## STATUTES

Cal. Penal Code § 631 ........................................................................................ 11

Cal. Penal Code § 631(a) ........................................................................... 11, 12

Cal. Penal Code § 631(a)(ii) ........................................................................ 13-14

Cal. Penal Code § 631(a)(iii) ........................................................................... 14

Cal. Penal Code § 632 ..................................................................... 16, 17, 20

Cal. Penal Code § 632(a) ........................................................................... 16-19

Cal. Penal Code § 637.7 ........................................................................... 16-17

Cal. Penal Code § 637.7(d) .............................................................................. 17

Plaintiff Mike Xavier ("Plaintiff") respectfully submits this memorandum in opposition to Autonation, Inc.'s ("Defendant") Motion to Dismiss Plaintiff's Second Amended Complaint (Dkt. 45-1) ("Motion to Dismiss").

## INTRODUCTION

Plaintiff's Second Amended Complaint ("Amended Complaint") (Dkt. 41) directly addresses the sole deficiency that the Court noted in its order granting Defendant's prior Motion to Dismiss (Dkt. 40) ("MTD Order") regarding whether Defendant "specifically targeted" California when it contracted for an installed the Invoca call recording technology at issue. Plaintiff's Amended Complaint alleges that *Defendant* contracted with a California company – Invoca – to install software that recorded California residents' calls to dealerships located in California. As such, and directly addressing the Court's prior ruling, Plaintiff alleges that there is personal jurisdiction over Defendant through Defendant's own actions in installing a call recording system that was operated by a California entity to record calls that Defendant knew would be placed by California residents.

Moreover, on the merits of Plaintiff's claims under CIPA, Defendant's Motion to Dismiss fails to raise any new arguments or credibly distinguish the now *three* other decisions involving the *same exact* Invoca software that have denied nearly identical motions to dismiss. *See Tate v. VITAS Healthcare Corp.*, 762 F. Supp. 3d 949 (E.D. Cal. 2025); *Busby v. Invoca*, No. 24-cv-05542, 2025 WL 822664 (N.D. Cal. Mar. 14, 2025); *Valencia v. Invoca*, No. 25-cv-01323, 2025 WL 3691970 (C.D. Cal. Nov. 17, 2025). While Defendant's Article III argument ignores Plaintiff's allegations about the particularly sensitive nature of the information disclosed to Invoca that even the Ninth Circuit itself has found sufficient to constitute a concrete injury. Finally, Defendant's argument that Invoca is somehow a "telephone corporation" similarly fails given that Defendant fails to present any evidence that Invoca provided any telecommunication services for the inbound calls other than the call recording features pled in Plaintiff's

Amended Complaint. For these reasons and those stated in further detail below, Defendant's renewed Motion to Dismiss should be denied in its entirety.

## STATEMENT OF FACTS

Invoca is a California corporation that operates a conversation intelligence software-as-a-service to analyze phone conversations at scale and unlock insights. (SAC, ¶¶13, 20.) Its broad suite of products operate by eavesdropping on phone calls in order to analyze them and extract large amounts of useable data which are then provided to Invoca's customers such as AutoNation. (*Id.* at ¶¶21-24.) Invoca directs and operates its call recording services from its California headquarters. (*Id.* at ¶13.) AutoNation itself directly contracted with and paid Invoca to provide its services to track customer interactions with its California dealership entities. (*Id.* at ¶27.) Indeed, as evidenced by the contract provided by Invoca itself in support of its Motion to Dismiss, the contract for Invoca's services was entered into between Defendant AutoNation, Inc. and Invoca, Inc.—*not* with any specific AutoNation subsidiary dealership. (*See* Dkt. 45-4.) Pursuant to its contract with Defendant, Invoca "automatically records and transcribes each inbound call" made by California residents to its California dealerships and "automatically scan[s] every call for" certain performance criterias. (SAC, at ¶¶27-29, 58.) Importantly Invoca uses the call information it obtains for its own purposes to improve, operate, maintain, and, in some cases, market the Invoca Platform and conduct internal research in order to enhance the Invoca Platform and Services. (*Id.* at ¶¶25, 31.)

Plaintiff, a California resident, called two of AutoNation's dealerships in California. (*Id.* at ¶¶9, 31.) Plaintiff disclosed sensitive confidential information while on the phone with an AutoNation dealerships' customer representatives, including his name, address, phone number, vehicle description, license plate, and billing information. (*Id.* at ¶35.) When Plaintiff placed his calls Invoca eavesdropped on Plaintiff's entire conversations and in real time performed AI analysis on the contents of the calls. (*Id.* at ¶37.) Such analysis included capturing Plaintiff's intent and/or reason for calling, service interests, conversion outcome, and tracking the words and phrases he said during the

conversations. (SAC, ¶37.) Plaintiff was never informed that Invoca was recording or eavesdropping on his calls to AutoNation's dealerships nor did he provide authorization for Invoca to do so. (*Id*. at ¶38.) As a result, Plaintiff has had his privacy rights invaded. (*Id*. at ¶40.)

## LEGAL STANDARD

### I. 12(b)(2) Standard of Review for Motions to Dismiss

"The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.' For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 283–84 (2014). Specific personal jurisdiction is analyzed under a three-part test; if a plaintiff satisfies the first two prongs, the burden of disproving the third prong shifts to the defendant. *Briskin v. Shopify, Inc.*, 135 F.4th 739, 750 (9th Cir. 2025). The three prongs are: (1) The non-resident defendant must purposefully direct its activities towards the forum; (2) The claim must arise out of or relate to the defendant's forum-related activities; and (3) The exercise of jurisdiction must comport with fair play and substantial justice (it must be reasonable). *Id* at 750-51.

### II. 12(b)(1) Standard of Review for Motions to Dismiss

Rule 12(b)(1) jurisdictional challenges can be either facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). When a motion to dismiss attacks subject-matter jurisdiction on the face of the complaint, as here, the court assumes the factual allegations in the complaint are true and draws all reasonable inferences in the plaintiff's favor. *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009).

### III. 12(b)(6) Standard of Review for Motions to Dismiss

When ruling on a Rule 12(b)(6) motion, the court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Ass'n for Los Angeles Deputy Sheriffs v. Cnty of Los Angeles*, 648 F.3d 986, 991 (9th Cir. 2011). "A complaint need not state 'detailed factual

allegations,' but must contain sufficient factual matter to 'state a claim to relief that is plausible of its face.'" *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). Thus, dismissal is only proper where "it appears beyond doubt that the non-movant can prove no set of facts to support its claims." *Adams v. Johnson*, 335 F.3d 1179, 1183 (9th Cir. 2004).

## ARGUMENT

### I. This Court Has Personal Jurisdiction Over Defendant.

Plaintiff does not dispute that there is no general jurisdiction over Defendant in California. However, the facts at issue make clear that there is specific personal jurisdiction over Defendant due to Defendant's California-specific conduct. Specifically, directly addressing the Court's concerns in its ruling granting Defendant's original motion to dismiss, it is critical to note that the basis for personal jurisdiction here does *not* arise from any conduct by Defendant's dealership subsidiaries located in California. (*See* MTD Order at 7, noting that "mere generation of revenue from a forum state" does not establish personal jurisdiction; *see also* MTD Order at 8, noting that Defendant's subsidiary dealerships' actions do not give rise to personal jurisdiction). Rather, as alleged by Plaintiff, Defendant "directed, controlled, or ratified" (MTD Order at 8) Invoca's unlawful recording of calls placed by California residents to its California dealerships. (*See* SAC, ¶27 ("AutoNation ... contracted with Invoca to provide its services to track customer interactions with AutoNation's California dealership entities"); *Id.* at ¶30 ("by contracting with Invoca to implement its call recording and analysis services, AutoNation aided, employed, agreed with, permitted …. Invoca to … intercept the content of communications between … customers residing in California and AutoNation's California dealerships"); *Id.* at ¶12.) This is further supported by the actual underlying contract for Invoca's call recording services that was provided as supplemental evidence by Defendant. (*See* Dkt. 45-4.) Critically, not only did Defendant specifically implement and direct the unlawful recording of calls placed by California residents to its California dealerships, but Defendant did so knowing that Invoca was a

California entity that performed its call recording services from California. (*See* SAC, ¶13 ("Invoca is itself headquartered in California, from where it directs and operates its call recording services"); *see also* Dkt. 45-4 at 1 (contract between Defendant and Invoca noting that Invoca's "principal place of business" is in "Santa Barbara, CA").

In short, not only did Defendant "expressly aim" its conduct at California because it "implement[ed] its call recording services on customer service phone lines for AutoNation dealerships located in California, to record calls placed by California residents" (SAC, ¶12), but Defendant *also* expressly aimed its conduct at California because it knowingly contracted with a California entity that engaged in the unlawful call recording from its California headquarters. (*Id.* at ¶13.) These facts establish a much closer relationship between Defendant and California than in other similar CIPA cases where courts have found personal jurisdiction over the defendant.

For example in *Rodriguez v. Aquatic Sales Sols. LLC*, 735 F. Supp. 3d 1208 (C.D. Cal. 2024) the defendant operated a nationwide website that did not have any specific connection to California other than "operatin[ng] a Website with chat functionality that is accessible in California," which sold "aquarium supplies ... throughout the United States and in California," and from which "12.51% of defendant's total sales were made to California residents." 735 F. Supp. 3d at 1218. The court nonetheless found that there was personal jurisdiction over the defendant for CIPA claims arising from the chat feature on its website. In particular, the court found that the defendant "expressly aimed its conduct at California" because it made "sales of products to [California] residents." *Id.* at 1224. Here, Defendant went far beyond simply operating a nationwide website that happened to make sales to California residents, it had actual California subsidiary dealerships which *Defendant* directed to implement Invoca's call recording service. (*See* Dkt. 45-3 at ¶3 ("The Master Services and Subscription Agreement provides for implementation of Invoca's platform ... at AutoNation, Inc. subsidiaries across the

country" including the "42" out of the "252 new vehicle dealerships nationwide" located in California")). Moreover, Defendant contracted with a California entity, Invoca, to engage in such call recording within California. Similarly, in *Hassid v. Alex & Ani, LLC*, No. 25-cv-0679, 2026 WL 160535 (C.D. Cal. Jan. 20, 2026) the defendant implemented tracking technology on its nationally accessible website that was accessed by California residents. 2026 WL 160535, at *5. The court found that the defendant "expressly aimed" its conduct at California where it gathered information about California residents' "name, date of birth, and address" even though it collected the exact same information as to other residents nationwide. *Id.* Here, just as in *Hassid*, Plaintiff alleges that Invoca's call recording technology collected California residents' "personally identifiable and sensitive information such as consumer financial related information" including "Class Members' methods of payment for car servicing and other related purchases." (SAC, ¶¶ 35, 58.) Moreover, not only did Defendant engage in the exact same type of conduct that other courts have found sufficient to constitute "express aim," but it did so by implementing technology provided by a *California* entity and that was itself operated in *California*.

Plaintiff's pleadings also satisfy the second prong of the specific personal jurisdiction analysis that a plaintiff's claims arise out of or relate to the defendant's contacts with the forum. *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1096 (9th Cir. 2023). Here, Plaintiff's claim that Defendant aided Invoca in listening in on and obtaining his information from calls placed to its California subsidiaries necessarily only exists because of Defendant's forum related activities—namely contracting for and installing Invoca's technology to record calls from California-based consumers to Defendant's California-based subsidiaries. Thus, Plaintiff's claims arise directly from Defendant's conduct targeted at the forum, and as such the second prong is satisfied. *See Hassid,* 2026 WL 160535, at *5; *Rodriguez*, 735 F. Supp. 3d at 1224–25 ("Here,

defendant was aware that it was recording its online chat conversations with customers, which could foreseeably cause harm in California").

The third prong of the analysis that jurisdiction must comport with fair play and substantial justice is the defendant's burden to carry. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). If the first two prongs are proven by the plaintiff, the defendant must present a compelling case that the exercise of jurisdiction would not be reasonable. *Id*. Here, Defendant presents no such argument such that this prong is also satisfied. *See Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 743 (N.D. Cal. 2023); *Rodriguez*, 735 F. Supp. 3d at 1225.

Because the facts at issue satisfy all the three-prongs for establishing personal jurisdiction over Defendant for the aiding and abetting of the unlawful wiretapping at issue, this Court should find that it has specific personal jurisdiction over Defendant.

## II. Plaintiff Has Standing To Bring This Suit

To satisfy the constitutional requirements of standing, a plaintiff must have: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). An injury in fact must be concrete, meaning that it is real and not abstract. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021). "Certain harms readily qualify as concrete injuries under Article III" and while "[t]he most obvious are traditional tangible harms…[v]arious intangible harms can also be concrete" including "injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts" such as "disclosure of private information" and "intrusion upon seclusion." *TransUnion LLC* 594 U.S. at 425. "[B]oth the common law and the literal understandings of privacy encompass the individual's control of information concerning his or her person." *U.S. Dep't of Just. v. Reps. Comm. For Freedom of Press*, 489 U.S. 749, 763 (1989). As Defendant itself mentions in its Motion to Dismiss, numerous federal district courts have held that allegations of violations of CIPA constitute an injury in fact. *See Hassid*, 2026 WL 160535, at *3

(finding that "[v]iolations of the right to privacy have long been actionable at common law" and "enompass[] the individual's control of information concerning his or her person"); *see also Conohan v. Rad Power Bikes Inc.*, No. 25-cv-106, 2025 WL 1111246, at *5 (C.D. Cal. Apr. 3, 2025) ("Federal district courts have consistently found that violations of plaintiffs' statutory rights under CIPA, even without more, constitute injury in fact because instead of a bare technical violation of a statute, *a CIPA violation involves a violation of privacy rights*." (collecting authorities) (emphasis added).

This is why Defendant's citation to *Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025) (MTD at 12)[1] is largely inapplicable because *Popa* involved claims of a basic website tracker that was specifically designed to anonymize any sensitive information that it gathered. 153 F.4th at 786 (explaining that the tracker at issue anonymized the plaintiff's "mailing address" and only tracked what parts of the website the plaintiff interacted with). As such, the Ninth Circuit found that the plaintiff "identifies no . . . private information collected by [the tracker]." *Id.* at 791. Indeed, in reaching its decision the Ninth Circuit in *Popa* differentiated its decision in *Jones v. Ford Motor Co.*, 85 F.4th 570 (9th Cir. 2023) where it found that the plaintiff had pled a concrete injury on the basis that the alleged privacy violation involved the defendant downloading "text messages and call logs" from the class members' cell phones. *Popa*, 153 F.4th at 793. Here, Plaintiff alleges precisely the sort of "sensitive . . . financial information" that creates a concrete "privacy interest" that the *Popa* court recognized. 153 F.4th at 791; *see* SAC, ¶¶35, 58; *see also Cordero v. Sportsman's Warehouse, Inc.*, No. 24-cv-575, 2025 WL 1114196, at *4 (D. Utah Apr. 15, 2025) (finding that had the plaintiffs alleged they had provided defendant with their "payment card information" there would be a concrete injury).

Plaintiff's allegations are also precisely why Defendant's reliance on *Lien v. Talkdesk, Inc.*, No. 24-cv-06467, 2025 WL 551664 (N.D. Cal. Feb. 19, 2025) is misplaced. In *Lien*, the complaint only made general allegations about improperly

[1] It is worth noting that the decision in *Popa* predates the ruling in *Hassid*.

disclosing information including "credit card numbers and other sensitive financial and personal information" to Talkdesk. *Lien v. Talkdesk, Inc.*, No. 24-cv-06467, Dkt. 1, Complaint ¶40 (N.D. Cal. Sep. 13, 2024). But the allegations regarding the information intercepted from the plaintiffs specifically only included the plaintiffs' phone numbers and questions about the stores' products, hours, and events. (*Id.* at ¶¶59, 69.) This is why the court ultimately found that the "information allegedly intercepted by Talkdesk—the plaintiffs' phone numbers and questions they asked about store hours, events, and products carried by the retailers—is simply not private or personal enough to confer standing…" *Lien*, 2025 WL 551664, at *1. The information that *Plaintiff* himself alleges was intercepted by Invoca as a result of Defendant implementing its call recording technology is far more sensitive and personal such that its unlawful disclosure to Invoca was an injury in fact sufficient to confer Article III standing on Plaintiff. (SAC, ¶¶35, 58.)

## III. Plaintiff Pled Facts Sufficient to Satisfy The Delayed Discovery Rule.

While Defendant challenges Plaintiff's allegations related to his delayed discovery of the offending conduct, courts in this district are clear that these are factual challenges that are improper to be resolved at the pleading stage. *See Burdick v. Union Sec. Ins. Co.*, No. 07-cv-4028, 2009 WL 4798873, at *10 (C.D. Cal. Dec. 9, 2009) ("When a plaintiff reasonably should have discovered facts for purposes of the accrual of a cause of action or application is generally a question of fact"); *Balanzar v. Fid. Brokerage Servs., LLC*, 654 F. Supp. 3d 1075, 1083 (S.D. Cal. 2023) ("Whether the 'delayed discovery' rule tolled the statute of limitations for Plaintiff's claims that would normally be time-barred … is a factual question the Court is not prepared to answer at this point").

Moreover, Plaintiff has pled facts sufficient to satisfy his burden to plead delayed discovery and which other courts have found sufficient under identical circumstances. Specifically, Plaintiff alleges that he "reasonably expected his conversation would only be between the agent and himself and Plaintiff did not expect or have any reason to

expect that Invoca, a third party, was listening in on his conversations" and that "Plaintiff did not have any knowledge about Defendant's unlawful actions at the time that he placed calls to AutoNation's dealerships and had no reason to believe that the unlawful conduct at issue occurred." (SAC, ¶¶36, 39.) Plaintiff also alleges that he "found out about Defendant's unlawful use of Invoca's service only shortly before the filing of his original Complaint in this case." (*Id.* at ¶39.) These are the same allegations that other courts have found sufficient to plead the discovery rule. *Gaige v. Exer Holding Co., LLC*, No. 24-cv-06099, 2025 WL 559719, at *3 (C.D. Cal. Mar. 2, 2025) (finding the plaintiff's allegations that "he did not know and had no way of knowing that his personally identifiable information ... was intercepted and unlawfully disclosed" as well as the date when "Plaintiff became aware of the disclosure of this information" were sufficient to plead delayed discovery); *see also Serna v. 1-800-GOT-JUNK? LLC*, No. 24-cv-00047, 2024 WL 3915074, at *2 (C.D. Cal. Aug. 6, 2024) ("Here, Plaintiffs allege that they were unaware of the recordings until they met with counsel on November 7, 2023. [] The allegation is plausible and sufficient for pleading purposes to avoid the statute of limitations challenge").[2] Defendant's argument that Plaintiff should have been put on notice of his claims based on Invoca webpages referenced in his Complaint (MTD at 15) is farcical given that, as explained above, Plaintiff had no reason to know of Invoca's existence to begin with at the time that he made the calls in question, let alone have any reason to look for and visit Invoca's website to educate himself about its unlawful conduct.

[2] If the Court were to find Plaintiff's allegations regarding the delayed discovery insufficiently specific, the proper remedy is permitting amendment to allow Plaintiff to plead additional facts. *See, e.g.*, *Roney v. Miller*, 705 F. App'x 670, 671 (9th Cir. 2017); *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1183 (9th Cir. 2016) (reversing denial of leave to amend notwithstanding three prior amendments by the plaintiff).

## IV. Defendant's Challenge To Plaintiff's § 631(a) Claim Is Premature And Ignores Plaintiff's Well-Pled Allegations.

### A. Invoca is not a "telephone corporation."

Acknowledging that its arguments on the merits of Plaintiff's CIPA claims will fail, Defendant attempts to raise a new hail-Mary argument that there was no CIPA violation because Invoca was somehow a "telephone corporation." (MTD at 16-17.) Defendant's argument is misleading on multiple levels. To begin with, while Defendant cites to Invoca's *general* Master Services and Subscription Agreement and Terms of Service regarding the technical abilities of its service (*Id.* at 17), Defendant does not claim that it actually used Invoca's service to "assign[] telephone numbers, provide[] call routing" or "support[] outbound dialing." (*Id.*) Indeed, the Master Services and Subscription agreement actually entered into between AutoNation and Invoca explicitly states that it is "[*AutoNation*] [that] is responsible for procuring telecommunications services capable of receiving inbound phone calls[.]" (Dkt. 45-4, at § 2.1) (emphasis added). Given that this case involves solely Defendant's recording of *inbound* calls to its California dealerships, there is no question that the "telephone line" (MTD at 16) at issue was *not* Invoca's.

Furthermore, the exception to liability under Section 631 is limited to any "telephone company" and specifically defines that as a "telephone corporation" under Section 234 of the Public Utilities Code. Telephone corporation is thereunder defined as "every corporation or person owning, controlling, operating, or managing any telephone line for compensation within this state." Pub. Util. Code § 324. However, neither Section 631 nor Section 324 explicitly include the definition of "telephone line" that Defendant appeals to therein. Nor, as noted above, does Defendant provide any evidence that Invoca "facilitate[d] [any] communication by telephone" when Plaintiff exclusively pleads that Invoca provided call recording and analysis services. (SAC, ¶¶ 20–24, 27–32, 37.)

Finally, Defendant's citation to *Ambriz v. Google, LLC*, No. 23-cv-05437, 2024 WL 3282521 (N.D. Cal. June 20, 2024) fails to support its argument entirely. In *Ambriz* the defendant was *itself* the vendor that provided AI support services for calls placed to Verizon. 2024 WL 3282521, at *1. As such, there was no dispute that Verizon was a "telephone company within the meaning of § 631(b)" and the court found that the defendant was subject to the exception because it acted as Verizon's agent. *Id.* None of these facts are present here where Invoca is not itself the defendant *and* did not provide services to a "telephone company" such that it can argue that the exception should apply to it.

Put simply, to find that Invoca, a company that records phone calls placed *over* telephone lines, is itself a "telephone corporation," would be contrary to the facts and the plain language of the statute at issue.[3]

B. Whether Invoca's technology was simply a "tape recorder" is a question of fact that is inappropriate to resolve at the pleading stage.

Defendant attempts to challenges Plaintiff's §631(a) claim by arguing that Invoca is merely a service provider to Defendant. (MTD at 20.) To begin with, numerous courts have held that determining whether a technology provider like Invoca is a party to the communication by simply being a service provider or is a third-party eavesdropper is a question of fact not suitable for determination on a motion to dismiss. *See Kauffman v. Papa John's Int'l, Inc.*, No. 22-cv-1492, 2024 WL 171363, at *7 (S.D. Cal. Jan. 12, 2024) ("Whether FullStory acts akin to a tape recorder or whether its actions are closer to 'an eavesdropper standing outside the door' is a question of fact which is better answered after discovery into the session replay technical context of the case"); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1080 (C.D. Cal. 2021) ("Quantum Metric a tape recorder held by Lululemon, or is it an eavesdropper standing outside the door? This is a question of fact for a jury"); *Esparza v. Kohl's, Inc.*, 723 F. Supp. 3d 934, 942

---

[3] Indeed, Defendant's argument begs the question that if Invoca was a "Telephone Corporation" why did Invoca itself never argue that it is subject to the exception in *Busby* and *Valencia* where it was itself sued for the exact same claims as here.

(S.D. Cal. 2024) (same). Indeed, even the *Gutierrez v. Converse*, No. 24-4797, 2025 WL 1895315 (9th Cir. July 9. 2025) decision that Defendant clings to was ultimately decided on summary judgment after full merits discovery. Therefore, this question should be resolved at a more appropriate stage of the litigation.

C. Whether Invoca makes "independent use" of the recordings that it obtains is irrelevant as to whether Plaintiff stated a claim under Sec. 631(a).

Even looking at the merits of Defendant's argument, courts have also held that it is irrelevant at this stage of litigation whether Invoca makes independent use of recorded calls between consumers and Defendant. Indeed, the Eastern District of California rejected a substantially similar argument in another CIPA case concerning the same Invoca technology at issue here, and recognized that "Section 631(a)'s text . . . does not actually contain a use requirement." *Tate*, 762 F. Supp. 3d at 955 (citing *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 899–900 (N.D. Cal. 2023)). "In other words, an entity can violate the statute by learning the contents of the message *or* by using information obtained from listening in on a conversation." *Id*. The *Tate* court therefore found "it unnecessary to consider a third party's intention to collect or use data from a call" and held that "[o]btaining that data while reserving the capability to utilize it makes a third party distinct from one of the parties to the call and may trigger a violation of section 631(a)." *Id*.; *see* SAC ¶31 ("Invoca itself uses the call recordings and information derived therefrom for its own wholly separate internal purposes").

Defendant's argument regarding *Gutierrez v. Converse, Inc.* takes a limited – and unpublished – ruling with minimal reasoning well past its text. (MTD at 18, 20.) The Ninth Circuit in *Gutierrez v. Converse* did not impute a use requirement on *any* CIPA violation. 2025 WL 1895315, at *1. Rather, *Gutierrez* stands for the premise that at the summary judgment stage there must be sufficient evidence to show that the alleged wiretapping entity has read or attempted to read the plaintiff's message in violation of CIPA § 631(a)(ii). *Guttierez,* 2025 WL 1895315, at *1. Reading or attempting to read is not the same as using for one's own business purposes, which Defendant insists is the

appropriate reading of *Gutierrez*. For example, CIPA itself has two distinct clauses, one which deals with reading information (§ 631(a)(ii)) and another which deals with using information (§ 631(a)(iii)). As such, *Gutierrez* does nothing to, as Defendant argues, "reject" *Javier*'s reasoning. (MTD at 18.)

D. Plaintiff sufficiently alleges that Invoca independently used the information it obtained from customer phone calls with Defendant.

Even if this Court were to decide to take up Defendant's argument on the merits, Defendant cannot ultimately overcome the directly on-point decisions in *Busby v. Invoca* and *Valenica v. Invoca* that involved the same exact Invoca technology as at issue here. In both cases Invoca argued as Defendant does here that Invoca is merely "an extension of" "DISH and DirectTV" and "AT&T." *Busby*, 2025 WL 822664, at *1; *Valencia*, 2025 WL 3691970, at *3. Both courts rejected Invoca's self-characterization as an extension of its customers based on the plaintiffs' allegations that: Invoca was a separate legal entity from its customers; Invoca recorded conversations between the plaintiffs and its customers to which it was not itself a party; and that the plaintiffs alleged Invoca's independent use of the data. *Busby*, 2025 WL 822664, at *1; *Valencia*, 2025 WL 3691970, at *5. Indeed, directly addressing Defendant's argument that Plaintiff only alleges that Invoca had the "capability" to use data for its own purposes, the court in *Valencia* explicitly noted that the plaintiff's allegations went "beyond the existence of Invoca's capability and alleges actual use of the recorded calls for its own independent purposes." *Valencia*, 2025 WL 3691970, at *5

Here, Plaintiff's Amended Complaint alleges facts directly analogous to *Busby* and *Valencia* that "Invoca is a third-party separate and apart from AutoNation that is itself collecting the contents of phone call conversations between consumers and [Defendant's] customer service agents and performing the analysis described above before it is ever made available to AutoNation and its dealerships"; that "[n]either AutoNation nor Invoca informed consumers, prior to any recording, that Invoca was listening in on and obtaining consumer's information from their calls, and that the content of the calls were being recorded and analyzed by a third party"; and that "Invoca

itself uses the call recordings and information derived therefrom for its own wholly separate internal purposes." (SAC, ¶¶31, 32, 33.)

Moreover, as the court in *Valencia* noted, Invoca explicitly mentions in its own Privacy Policy "that it uses 'Personal Data'—which includes call information "including phone numbers and recordings'—to 'improve, operate, maintain, and, in some cases, market the Invoca Platform" and "conduct internal research in order to enhance the Invoca Platform and Services.'" 2025 WL 3691970, at *5; SAC, ¶25. Defendant's assertions that other clauses in Invoca's privacy policies somehow invalidate the quoted language merely raise questions of fact best inquired into post-discovery. To begin with, it is difficult to see how Defendant can credibly present any argument interpreting *another* entity's privacy policy. If Defendant wishes to lean on Invoca's privacy policies then it should do so through discovery by serving a subpoena on Invoca to explain exactly how its technology operates and what its privacy policies provide for. Even on the merits Defendant's argument that Plaintiff has misread Invoca's privacy policy fails to address head-on the disclosure cited above and in Plaintiff's Amended Complaint regarding Invoca using "Personal Data…To provide, run, personalize, improve, operate, maintain, and, in some cases, market the Invoca Platform and our Services." (SAC ¶25 & n.12.) While Defendant attempts to obfuscate by pointing to other sections of Invoca's privacy policies, Defendant fails to explain exactly how the other sections it cites contradict its general "Privacy Policy." Specifically, Defendant cannot self-servingly categorize Invoca as a service provider simply because Invoca considers itself subject to the California Consumer Privacy Act (CCPA). (MTD at 19.) It is the nature of a party's actions, not a sentence in their Privacy Policy, which determines if said party is a service provider or, as Plaintiff alleges, a third party. Nor is there anything about the phrase "exclusively on behalf and at the direction of our Clients" which would preclude Invoca from utilizing such data to run their services, personalize their services, improve their services, operate their services, or maintain their services. (*Id.*) Similarly, Defendant's attempted wordsmithing regarding Invoca's data anonymization policy actually

*supports* Plaintiff's allegations. (MTD at 20.) While Invoca's anonymization policy could have simply read "Invoca only collects the Caller ID of the caller as personal data[.]" , it instead reads that "Invoca only collects the Caller ID of the caller as personal data ***and*** redacts confidential information and call recordings and transcriptions." (*Id.*) (emphasis added). As such, implicit in Invoca's data anonymization policy is the disclosure that Invoca *does* "collect" "confidential information" and "call recordings and transcriptions" but redacts some unknown portions thereof. Such use plainly goes beyond simply being a "service provider." At a minimum the various provisions of Invoca's privacy policies raise issues of fact as to whether Invoca independently used the recorded information it obtained.

This Court should follow the lead of the *Tate*, *Busby*, and *Valencia* courts that have already evaluated the exact same technology at issue and determined that Invoca was a third party distinct from both the plaintiffs and its respective customers. *See Tate*, 762 F. Supp. 3d at 956–57; *Busby*, 2025 WL 822664, at *1.

## V. Plaintiff Pleads Sufficient Facts That Defendant Violated Cal. Pen. Code § 632(a)

### A. Defendant erroneously tries to apply the definition of "device" from § 637.7 to Plaintiff's claim under § 632(a).

Defendant's challenge to Plaintiff's claim under § 632(a) of CIPA that Invoca's software (and software more broadly) cannot be considered a "device" is based on a flawed application of one interpretation of what constitutes a "device" for purposes of CIPA § 637.7 (not at issue here) to § 632(a). This borrowing of the definition of device from § 637.7 and grafting it onto § 632(a) has not been endorsed by any courts other than the court in *Doe v. Microsoft Corp.*, No. 23-cv-0718, 2023 WL 8780879, at *8 (W.D. Wash. Dec. 19, 2023). However, as another court in the same district held just a year later the *Doe* court erred in its transposition of defined terms from § 637.7 to § 632(a). *See Gladstone*, 739 F. Supp. 3d at 857 ("[C]ourts have understood 'device' in Section 637.7 to refer to equipment. *See, e.g., In re Google Location Hist. Litig.*, 428 F. Supp. 3d at 193. But Section 632 contains materially different language than Section

637.7, and it does not contain similar context that would narrow the meaning of 'device' here"). California courts have also consistently rejected the reasoning cited by Defendant. *See Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1080 (N.D. Cal. 2023), motion to certify appeal denied, No. 22-cv-03580, 2024 WL 4375776 (N.D. Cal. Oct. 2, 2024) ("The section 637.7 cases are distinguishable, and absent contrary authority under section 632(a), I agree that the Pixel software is a device under section 632(a)"); *see also Yockey v. Salesforce, Inc.*, 745 F. Supp. 3d 945, 955 (N.D. Cal. 2024) ("The Court agrees with those Ninth Circuit district court decisions that have found that software qualifies as a device under Section 632"); *see also id.* at n.6 ("The Court is aware of *Doe v. Microsoft Corp*…However, *Doe v. Microsoft Corp.* relied on *In re Google Location Hist. Litig*…and *Moreno v. San Francisco Bay Area Rapid Transit Dist*… Those cases both involved Penal Code Section 637.7 and are distinguishable on that basis. *Doe v. Meta Platforms*, 690 F. Supp. 3d at 1080"). The court in *Tate v. VITAS Healthcare Corp.* was even more explicit in its dismantling of Defendant's argument:

> [S]ection 637.7(d) defines an "electronic tracking device" as one that can be "attached to a vehicle or other movable thing" which evinces the statute's emphasis on proscribing physical tracking devices. See § 637.7(d). Section 632(a), however, lacks any language suggesting that an "electronic amplifying or recording device" must be physical in nature. Relying on the more specific text of section 637.7(d) to inform section 632(a) is misguided[.]

762 F. Supp. 3d at 957-58. Here, Plaintiff properly alleged that "Invoca's software is an 'electronic amplifying or recording device' because the software can record conversations and, in doing so, violates the rights of at least one of the callers." (SAC ¶57.) As such Defendant's argument for an often-dismissed rogue interpretation of "device" under § 632(a) must be rejected.

B. <u>Given the contents of Plaintiff's conversation that was recorded it was objectively reasonable to believe that it was confidential.</u>

With regards to the confidential nature of Plaintiff's communications with Defendant, Cal. Penal Code § 632 states that "confidential communication means any

communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto." Plaintiff plainly alleged as much that he "disclosed personally identifiable or otherwise private information…including his name, address, phone number, vehicle description, license plate, and billing information" and that he "reasonably expected his conversation would only be between the [contact center] agent and himself[.]" SAC, ¶¶35-36; *see Busby,* 2025 WL 822664, at *1 ("that expectation does not encompass Invoca"); *Valencia*, 2025 WL 3691970, at *5 (same). While the party's expectation that a communication is "confidential" must be objectively reasonable, there is nothing to suggest that Plaintiff's expectation was not. *Flanagan v. Flanagan*, 27 Cal. 4th 766, 768 (2002). As such, for the same reasons as discussed in Section II above, Defendant's citations to *Lien v. Talkdesk* is inapplicable given the fundamentally different and confidential nature of Plaintiff's phone call. (MTD at 24.) While Defendant's citation to *Faulkner v. ADT Sec. Servs., Inc.* (MTD at 23-24) actually *supports* Plaintiff's 632(a) claim given the Ninth Circuit's reasoning on appeal. *See Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1020 n.** (9th Cir. 2013) ("There is nothing inherently *non-confidential* about a billing dispute... For example, a caller might…confirm[] his social security number or his unlisted telephone number, or…disclose other private or potentially private information. If adequately pled, such facts might well support a finding of confidentiality") (emphasis added). While the Ninth Circuit ultimately upheld the District Court's dismissal of the complaint, it only did so because the plaintiff's complaint was missing exactly the sort of information that Plaintiff has pled here. *See id.* at 1020 (dismissing without prejudice and giving leave to amend where the plaintiff had *only* two allegations that (1) the call was to "dispute a charge" and (2) that the conversation was such that a party would have expected it to be confidential). Defendant cites no case law to support its bald assertion that "call recording is widely known and reasonably expected in commercial contexts" (MTD at 24), a proposition which stands in total opposition to the consent requirements under CIPA. As mentioned above, Plaintiff explicitly pleads that he disclosed highly

confidential information during his phone calls, in direct contrast to both the plaintiff's allegations in *Faulkner* and *Lien*. It is *objectively* reasonable to believe that a communication involving such private and sensitive information would be confidential and subject to the protections of § 632(a).

C. Plaintiff did not consent to his conversations being recorded.

Finally, while Defendant attempts to argue that Plaintiff "consented" to the recording (MTD at 25), as Defendant itself admits Plaintiff explicitly pleads that he did not consent to the conduct at issue (*see* SAC, ¶¶7, 33, 38, 40, 60) nor expect it. (*See id.* at ¶¶ 36, 59.) Nor is there any basis to dismiss Plaintiff's claims because he did not specifically allege that he also did not consent to Defendant's *dealerships* recording his conversations. (MTD at 25.) As discussed above, and as alleged by Plaintiff, the call recording at issue was initiated by, contracted for, and directed by Defendant, AutoNation, Inc. (SAC ¶¶12, 27, 30; Dkt. 45-4.) There is nothing pled in Plaintiff's Amended Complaint to suggest that it was the dealerships themselves that were recording the conversations. As such, Defendant's argument on this point is an improper attempt to challenge the facts alleged by Plaintiff and disregard the legal standard that at the pleading stage all pleadings should be read in Plaintiff's favor. It would turn the applicable standard on a 12(b)(6) motion to dismiss on its head for the Court to rule that it can read facts not alleged by Plaintiff into his complaint and infer that the dealerships themselves were recording the conversations *and* that Plaintiff provided consent for them to do so.

Moreover, even if Defendant's veiled assertion that Plaintiff consented to or should have expected he would be recorded by *someone* were true (MTD at 25), though it is not, such knowledge does not defeat the fact that explicit notification is required in this context. *See Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 620 (N.D. Cal. 2021) ("In order for consent to be actual, the disclosures must 'explicitly notify' users of the practice at issue"); *In re Google Inc.*, 2013 WL 5423918, at *13 (N.D. Cal. Sept. 26, 2013) ("Google points to its Terms of Service and Privacy Policies, to which all Gmail

and Google Apps users agreed, to contend that these users explicitly consented to the interceptions at issue. The [c]ourt finds, however, that those policies did not explicitly notify plaintiffs that Google would intercept users' emails for the purposes of creating user profiles or providing targeted advertising"); *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 848 (N.D. Cal. 2014) ("any consent with respect to the processing and sending of messages itself does not necessarily constitute consent to the specific practice alleged in this case—that is, the scanning of message content for use in targeted advertising"). Therefore, as pled by Plaintiff here, and as resolved by *Tate*, *Busby*, and *Valencia*, Plaintiff did not consent to Invoca's recording of his calls with Defendant as a matter of law. *See Tate*, 762 F. Supp. 3d at 952 ("Neither VITAS nor Invoca obtain the consent of any caller to VITAS's call center …."); *Busby,* 2025 WL 822664, at *1 ("these disclosures did not request or obtain plaintiffs' consent for Invoca to record the calls in the manner alleged"); *Valencia*, 2025 WL 3691970, at *5 ("Plaintiffs explicitly pled lack of consent to the conduct at issue").[4] Accordingly, Defendant's Motion with respect to Plaintiff's § 632 claim must be similarly denied.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint in its entirety.

[4] Defendant's argument that Plaintiff is essentially treating "consent" as a subjective standard that turns on whether Plaintiff "disagrees with the use of Invoca as a recording device" is nonsensical. Plaintiff pleads that he did not consent to the recording at issue. To the extent that Defendant has any evidence otherwise, it can introduce it at the appropriate time and file for summary judgment. Nothing in Plaintiff's SAC that Plaintiff consented to the recording at issue but nonetheless filed this suit simply because he "disagreed" with Defendant's use of Invoca to eavesdrop on his phone calls.

DATED: March 27, 2027

Respectfully Submitted,
By: */s/ Eugene Y. Turin*

**MCGUIRE LAW, P.C.**
Eugene Y. Turin (SBN 342413)
1089 Willowcreek Road, Suite 200
San Diego, CA 92131
Tel: (312) 893-7002
Fax: (312) 275-7895
eturin@mcgpc.com

*Counsel for Plaintiff and the Proposed Class Members*

## CERTIFICATE OF COMPLIANCE WITH L.R. 11-6.1

The undersigned, counsel of record for Plaintiff Mike Xavier, certifies that the foregoing memorandum contains 6,996 words, which complies with the word limit of L.R. 11-6.1.

DATED: March 27, 2026

By: */s/ Eugene Y. Turin*

Eugene Y. Turin (SBN 342413)
1089 Willowcreek Road, Suite 200
San Diego, CA 92131
Tel: (312) 893-7002
Fax: (312) 275-7895
eturin@mcgpc.com

*Counsel for Plaintiff and the Proposed Class Members*