USAMA KAHF (SBN 266443)
ukahf@fisherphillips.com
FISHER & PHILLIPS LLP
2050 Main Street, Suite 1000
Irvine, California 92614
Telephone: (949) 851-2424
Facsimile: (949) 851-0152

DARCEY M. GRODEN (SBN 296492)
dgroden@fisherphillips.com
XUAN ZHOU (SBN 333504)
xzhou@fisherphillips.com
FISHER & PHILLIPS LLP
4747 Executive Drive, Suite 1000
San Diego, California 92121
Telephone: (858) 597-9600
Facsimile: (858) 597-9601

Attorneys for Defendant
AUTONATION, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

MIKE XAVIER individually and on behalf of similarly situated individuals,

Plaintiffs,

v.

AUTONATION, INC.,

Defendant.

CASE NO.: 5:25-cv-00731-AB-DTB

**DEFENDANT AUTONATION, INC.'S REPLY TO PLAINTIFF'S OPPOSITION TO RULE 12 MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

Complaint Filed: March 24, 2025
Trial Date: None

# TABLE OF CONTENTS

**Page(s)**


I. INTRODUCTION ........ 1
II. PLAINTIFF FAILS TO ESTABLISH PERSONAL JURISDICTION ........ 1
A. Plaintiff Fails to Cure the "Express Aiming" Deficiency ........ 1
B. Invoca's California Headquarters Has No Impact on Personal Jurisdiction Under the "Express Aiming Test" ........ 3
C. Because There is No Purposeful Direction, AutoNation, Inc. Need Not Address Other Personal Jurisdiction Factors ........ 4
III. PLAINTIFF DOES NOT HAVE STANDING ........ 4
A. A Bare Statutory Violation Does Not Create An Injury-in-Fact ........ 4
B. Plaintiff's Opposition Appears to Abandon Arguments Not Related to "Billing Information" and "Methods of Payment" ........ 5
C. Plaintiff's Arguments as to "Billing Information" and "Methods of Payment" Do Not Create Standing ........ 6
IV. PLAINTIFF'S CIPA CLAIMS ARE TIME BARRED ........ 7
V. PLAINTIFF FAILS TO STATE A CLAIM UNDER SECTION 631(A) ........ 8
A. Invoca's Conduct Falls Within "Telephone Company" Exemption ........ 8
B. Invoca's Conduct Falls Within the Tape Recorder Exception ........ 10
1. The Court May Properly Address Whether Plaintiff Plausibly Pleads that Invoca Is Not a Tape Recorder ........ 10
2. Invoca's Privacy Policy Does Not Support Plaintiff's Allegations ........ 11
VI. PLAINTIFF FAILS TO STATE A CLAIM UNDER SECTION 632(A) ........ 13
A. Plaintiff Fails to Address the Ejusdem Generis Argument as to "Device" ........ 13
B. Plaintiff Does Not Plausibly Allege a Confidential Communication ........ 14
C. Plaintiff's Artful Allegations Do Not Plead Lack of Consent ........ 15
VII. CONCLUSION ........ 15




FP 63386960.1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ambriz v. Google, LLC*,
No. 23-cv-05437, 2024 WL 3282521 (N.D. Cal. June 20, 2024) ..................... 10

*Balanzar v. Fid. Brokerage Servs., LLC*,
654 F. Supp. 3d 1075 (S.D. Cal. 2023) ..................... 8

*Briskin v. Shopify, Inc.*,
135 F.4th 739 (9th Cir. 2024) ..................... 2, 3

*Burdick v. Union Sec. Ins. Co.*,
No. 07-cv-4028, 2009 WL 4798873 (C.D. Cal. Dec. 9, 2009) ..................... 7

*Cahen v. Toyota Motor Corp.*,
147 F. Supp. 3d 955 (N.D. Cal. 2015) ..................... 5, 6

*Calder v. Jones*,
465 U.S. 783 (1984) ..................... 3, 5

*Conohan v. Rad Power Bikes Inc.*,
No. CV 25-0106 PVC, 2025 WL 1111246 (C.D. Cal. Apr. 3, 2025) ..................... 5

*Cordero v. Sportsman's Warehouse, Inc.*,
No. 2:24-CV-575-DAK-CMR, 2025 WL 1114196 (D. Utah Apr. 15, 2025) ..................... 6

*Faulkner v. ADT Security Services, Inc.*,
706 F.3d 1017 ..................... 14, 15

*Fodor v. AOL Time Warner, Inc.*,
217 F. App'x 622 (9th Cir. 2007) ..................... 7

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) ..................... 11

*Guerrero v. Greenpoint Mortg. Funding, Inc.*,
403 Fed. App'x 154 (9th Cir. 2010) ..................... 8

*Gutierrez v. Converse Inc.*,
No. 24-4797, 2025 WL 1895315 (9th Cir. 2025) ..................... 11, 12



FP 63386960.1

*Hassid v. Alex & Ani, LLC*,
No. CV 25-0679 FMO (JCX), 2026 WL 160535 (C.D. Cal. Jan. 20, 2026) ........ 2, 3, 5

*Jones v. Ford Motor Co.*,
85 F.4th 570 (9th Cir. 2023) ........ 5

*Lazy Y Ranch Ltd. v. Behrens*,
546 F.3d 580 (9th Cir. 2008) ........ 12

*Lien v. Talkdesk, Inc.*,
No. 24-cv-06467, 2025 WL 551664 (N.D. Cal. Feb. 19, 2025) ........ 6, 7, 14, 15

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
647 F.3d 1218 (9th Cir. 2011) ........ 2

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ........ 1, 4, 5

*Rodriguez Aquatic Sales Sols. LLC,*
735 F. Supp. 3d 1208 (C.D. Cal. 2024) ........ 2

*Serna v. 1-800-GOT-JUNK? LLC*,
No. 5:24-CV-00047-HDV-MRW, 2024 WL 3915074 (C.D. Cal. Aug. 6, 2024) ........ 8

*Sher v. Johnson*,
911 F.2d 1357 (9th Cir. 1990) ........ 3

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) ........ 12

*Steckman v. Hart Brewing, Inc.*,
143 F.3d 1293 (9th Cir. 1998) ........ 8

*Swartz v. KPMG LLP*,
476 F.3d 756 (9th Cir. 2007) ........ 2

*United States v. Kiriyuk*,
29 F.4th 1128 (9th Cir. 2022) ........ 6

*United States v. Ritchie*,
342 F.3d 903 (9th Cir. 2003) ........ 9

*Vieira v. Mentor Worldwide, LLC*,
392 F. Supp. 3d 1117 (C.D. Cal. 2019), aff'd 845 Fed. App'x 503 (9th Cir. 2021) .......... 8

*Walsh v. Nev. Dep't of Human Res.*,
471 F.3d 1033 (9th Cir. 2006) .......... 1

*Williams v. Yamaha Motor Co. Ltd.*,
851 F.3d 1015 (9th Cir. 2017) .......... 2, 4

**Statutes**

Penal Code § 631(a) .......... 1, 8, 10, 13

Penal Code § 632(a) .......... 13, 14, 15

Penal Code § 637.7 .......... 13, 14

Penal Code § 638 .......... 9

Public Utilities Code § 203 .......... 9

Public Utilities Code § 233 .......... 9, 10

Public Utilities Code § 234 .......... 9

Public Utilities Code § 324 .......... 9

**Other Authorities**

Fed. Civ. Rule 12(b)(2) .......... 9

Fed. Civ. Rule 12(b)(6) .......... 9, 10

# I. INTRODUCTION

Plaintiff's Opposition fails to cure the fundamental defects in his claims. First, Plaintiff does not and cannot rebut that this Court lacks personal jurisdiction over AutoNation, Inc. That alone warrants dismissal. Second, in *Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025), the Ninth Circuit made clear that an alleged violation of CIPA without a concrete injury in fact – i.e., a harm bearing a close relationship to a traditionally recognized privacy tort – is insufficient to confer Article III standing. Plaintiff neither alleges such an injury in his SAC nor identifies any analogous common-law privacy harm in his Opposition. Finally, even setting aside these threshold defects, Plaintiff still fails to state a claim under California Penal Code §§ 631(a) or 632(a).

For all of these reasons, the Court should grant AutoNation, Inc.'s Motion to Dismiss in its entirety, without leave to amend, as further amendment would be futile in light of Plaintiff's continued inability to cure the identified deficiencies.

# II. PLAINTIFF FAILS TO ESTABLISH PERSONAL JURISDICTION

Plaintiff does not dispute that there is no general jurisdiction over AutoNation, Inc. in California. (*See* Mtn. at 3:15-8:3; Opp. at 4:7-9.) As such, personal jurisdiction hinges on whether Plaintiff can establish specific personal jurisdiction – which he cannot. Plaintiff's Opposition argues "express aiming," which is an element of the purposeful direction test (Mtn. at 10:8-11); Plaintiff therefore concedes there is no personal jurisdiction under the purposeful availment test. (*See* Mtn. at 8:16 – 10:5.) *Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033, 1038 (9th Cir. 2006) (plaintiff abandoned claim when not raised in opposition to motion to dismiss).

## A. <u>Plaintiff Fails to Cure the "Express Aiming" Deficiency</u>

Plaintiff erroneously argues that conclusory allegations that AutoNation directed, controlled, and ratified its California subsidiaries conduct in recording calls evidences express aiming. (Opp. at 4:8-26.) "[M]ere 'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific

factual allegations will not satisfy a plaintiff's pleading burden." *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007). Here, the only specific fact Plaintiff has pled is that AutoNation, Inc. and Invoca entered into a contract to provide call recording services to AutoNation, Inc.'s subsidiaries. (Opp. at 4:18-24.) AutoNation, Inc. submitted an affidavit contradicting Plaintiff's allegations that AutoNation, Inc. directed, controlled, or ratified its California subsidiaries' conduct. (Dkt. 45-3 at ¶¶ 4-5.) The court "may not assume the truth of allegations in a pleading which are contradicted by affidavit." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (citation omitted).

To the extent that Plaintiff is relying on AutoNation, Inc. having entered the contract with Invoca to establish specific personal jurisdiction, this argument improperly attempts to repackage a theory of *general* personal jurisdiction as one for *specific* jurisdiction. The fact that AutoNation, Inc. contracts for some services for its indirect subsidiaries does not make it a conduit for of those indirect subsidiaries such as to establish personal jurisdiction. (Mtn. at 7:7-18.) In *Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015 (9th Cir. 2017), the Ninth Circuit rejected the argument that a parent company expressly aims at a forum merely by providing a product to a subsidiary that uses or sells it in that forum. *Id.* at 1023.

The authorities Plaintiff relies upon are inapposite. In *Rodriguez Aquatic Sales Sols. LLC*, 735 F. Supp. 3d 1208 (C.D. Cal. 2024), the defendant operated an interactive website with a chat feature and the defendant made sales directly to California residents, which supported a finding of express aiming. *Id.* at 1224. In *Hassid v. Alex & Ani, LLC*, No. CV 25-0679 FMO (JCX), 2026 WL 160535 (C.D. Cal. Jan. 20, 2026), the plaintiff was interacting with a website which sold jewelry nationwide, including into California. *Id.* at *1. The plaintiff's claims arose directly from the defendant's California-related conduct, specifically, its use of TikTok software on its website to collect and transmit users' personal information. *Id.* at *5. *Hassid* relied on *Briskin v. Shopify, Inc.*, 135 F.4th 739 (9th Cir. 2024), which

addressed specific personal jurisdiction over an e-commerce platform which sold directly to California customers. *Id.* at 745, 758. In contrast, here, Plaintiff interacted with AutoNation, Inc.'s *subsidiaries* and AutoNation, Inc. does not sell products directly to Californians – it is a holding company. (Dkt. 45-5 at ¶¶ 1-6.) This court has already ruled this is insufficient to create personal jurisdiction. (Dkt. 40 at 8.)

In short, unlike the defendants in Plaintiff's cited cases, AutoNation, Inc. did not engage in conduct purposefully directed at California. The Court in the prior ruling on the Motion to Dismiss provided Plaintiff with a roadmap of the type of factual allegations against AutoNation, Inc. which would be sufficient to establish express aiming. (Dkt. 40 at 8-9.) Despite that, Plaintiff still was unable to allege such facts – underscoring that Plaintiff is relying on the personal jurisdiction of other entities to attempt to haul AutoNation, Inc. into court in California.

### B. Invoca's California Headquarters Has No Impact on Personal Jurisdiction Under the "Express Aiming Test"

Plaintiff's reliance on Invoca's presence in California does not cure the jurisdictional deficiencies in his pleading. (*See* Opp. at 4:25 – 5:12.) As explained in the moving papers, Plaintiff cannot bootstrap personal jurisdiction onto AutoNation, Inc. based on personal jurisdiction allegations against Invoca. (Mtn. at 10:1-4.) *Calder v. Jones*, 465 U.S. 783, 790 ("Each defendant's contacts with the forum State must be assessed individually."); *Sher v. Johnson*, 911 F.2d 1357, 1365 (9th Cir. 1990) ("jurisdiction over each defendant must be established individually"). The fact that *Invoca* is headquartered in California is irrelevant to the specific personal jurisdiction analysis as to *AutoNation, Inc.*

Plaintiff's cited authorities do not support jurisdiction based on a third party's in-forum presence. Rather, both Plaintiff's cited cases rely on the defendant directly interacting with California residents – not a chain of connections connecting the defendant to a California resident. *Rodriguez*, 735 F.Supp.3d at 1224; *Hassid*, 2026 WL 160535, at *5. Nothing Plaintiff cites stands for the proposition that AutoNation,

Inc. contracting with a California company for services which its indirect California subsidiaries could use allows Plaintiff to rely on the service provider's California presence to create specific personal jurisdiction.

Ultimately, Plaintiff's attempt to rely on Invoca's California headquarters underscores the absence of any meaningful allegation that AutoNation, Inc. itself engaged in conduct purposefully directed at California. Because personal jurisdiction must arise from the defendant's own forum contacts, Invoca's location is legally immaterial and cannot satisfy the specific jurisdiction analysis.

### C. Because There is No Purposeful Direction, AutoNation, Inc. Need Not Address Other Personal Jurisdiction Factors

AutoNation, Inc.'s Motion focused solely on the lack of purposeful availment and purposeful direction. (Mtn. 8:4 – 11:19.) In light of Plaintiff's inability to establish either, Plaintiff's Opposition arguing that it can demonstrate that Plaintiff's claims arise from AutoNation, Inc.'s forum related activities and that AutoNation does not show venue fails to comport with fair play or substantial justice are moot. (Opp. at 6:18 – 7:12.) Plaintiff's failure to establish purposeful availment or purposeful direction is fatal to establishing specific personal jurisdiction. *Williams*, 851 F.3d at 1023. This Court lacks personal jurisdiction and should dismiss the case.

## III. PLAINTIFF DOES NOT HAVE STANDING

### A. A Bare Statutory Violation Does Not Create An Injury-in-Fact

Plaintiff misstates the facts of *Popa v. Microsoft Corporation*, 153 F.4th 784 (9th Cir. 2025) in arguing that it is inapplicable. Plaintiff claims that *Popa* involved a "simple website tracker that was specifically designed to anonymize any sensitive information." (Opp. at 8:8-11.) That is not an accurate description of the technology in *Popa*. The Ninth Circuit case involved a session replay tracker which had the ability to recreate a user's entire website visit, including mouse movements, clicks, keystrokes, and text inputted by the user into the website. *Popa*, 153 F.4th at 786. While the session replay software masked part of the mailing address – and was set

to mask certain sensitive information – the evidence before the court was that at least some text information was disclosed. *Id.* at 786-787 & n.1. And yet, that was not enough to create an injury in fact. Tellingly, while Plaintiff repeats that his right to privacy has been violated, Plaintiff's Opposition fails to anchor his claims to a specific privacy tort as required by *Popa*. 153 F.4th at 792-793. As the Ninth Circuit made clear: there is "no free-roaming privacy right at common law." *Id.* at 792.

Plaintiff likewise misses the mark when attempting to analogize the allegations here to *Jones v. Ford Motor Co.*, 85 F.4th 570 (9th Cir. 2023), discussed in *Popa.* In *Jones*, a vehicle's infotainment system downloaded <u>all</u> text messages and call logs from plaintiffs' phones as soon as the phones were connected to the vehicle and stored the private communications with plaintiffs' knowledge or consent. *Popa*, 153 F.4th at 793, citing to *Jones*, 85 F.4th at 574. Here, the only communications at issue are business phone calls with AutoNation, Inc.' indirect subsidiaries – a large difference from indiscriminate pilfering through a private cell phone.

To the extent that Plaintiff relies on *Hassid*, a post-*Popa* case, it is worth emphasizing that *Hassid* fails to address *Popa* at all. *Hassid*, 2026 WL 160353, at *2-3. Additionally, *Hassid* deals with the use of pixel-tracking software which aggregates data about users from across the entire internet and which was analogous to a California common law tort. *Id.* The instant case addresses a more discrete interaction and Plaintiff falls short of showing an analog to a privacy tort.

Plaintiff's reliance on *Conohan v. Rad Power Bikes Inc.*, No. CV 25-0106 PVC, 2025 WL 1111246, at *5-6 (C.D. Cal. Apr. 3, 2025) to support that a statutory violation of CIPA creates standing is misplaced. *Conohan* was decided over four months before *Popa* and has been effectively overruled by the Ninth Circuit.

### B. <u>Plaintiff's Opposition Appears to Abandon Arguments Not Related to "Billing Information" and "Methods of Payment"</u>

Plaintiff's Opposition is silent as to *Cahen v. Toyota Motor Corp.*, 147 F. Supp. 3d 955, 973 (N.D. Cal. 2015), which ruled that there is no injury in fact for invasion

of privacy related to the disclosure of vehicle information, driving history, or performance metrics. (Mtn. at 13:23-27.) Plaintiff's Opposition also does not dispute that much of the driving information he claims is private he does not actually have a legitimate privacy interest in because he is required by law to exchange it with others – even complete strangers – in the event of an accident. (*Id.*, citing VEH. CODE § 16025(a).) Indeed, Plaintiff's Opposition appears to implicitly concede that the Opposition relies on the disclosure of financial information. (Opp. at 8:19-20.) Accordingly, this court must dismiss the claim to the extent it relies on allegations other than "billing information" and methods of payment."

### C. <u>Plaintiff's Arguments as to "Billing Information" and "Methods of Payment" Do Not Create Standing</u>

Plaintiff's reliance on *Cordero v. Sportsman's Warehouse, Inc.*, No. 2:24-CV-575-DAK-CMR, 2025 WL 1114196 (D. Utah Apr. 15, 2025) is misguided. Plaintiff is arguing that if the plaintiff in *Cordero* had provided payment information to the website, the court would have found that plaintiff had standing. (Opp. at 8:21-24.) The court does not say that; rather, it is listing the types of information the plaintiff did not provide to the website. *Cordero*, 2025 WL 1114196, at *4; *see United States v. Kiriyuk*, 29 F.4th 1128, 1134 (9th Cir. 2022) ("Prior precedent that does not 'squarely address' a particular issue does not bind later panels on the question."). Moreover, Plaintiff does not plead he provided "payment card information" to the subsidiary dealerships; rather, Plaintiff provides the more generic "billing information" and "methods of payment." (Opp. at 8:21, citing SAC ¶¶ 35, 38.) An individual telling a subsidiary that they intend to pay by credit card, debit card, or cash is not sensitive information and is not "payment card information."

Plaintiff further fails to address key aspects of *Lien v. Talkdesk, Inc.*, No. 24-cv-06467, 2025 WL 551664 (N.D. Cal. Feb. 19, 2025). First, Plaintiff does not acknowledge that *Lien* conceptualizes a difference in privacy expectations between a phone call and a website visit, with the former having a lower expectation of

privacy. *Lien*, 2025 WL 551664, at *1. Despite that a court discussing the same type of recording technology at issue here as in *Lien*, Plaintiff relies heavily on pixel cases without grappling with how the phone call context impacts those rulings. Second, while Plaintiff keeps reiterating that sensitive financial information was disclosed, Plaintiff only references "billing information" and "methods of payments." (SAC ¶¶ 35, 38.) Plaintiff does not say he provided, for example, full credit card or debit card numbers with CVV/security codes and zip codes. Rather, Plaintiff's use of "methods of payment" make clear that Plaintiff, at best, mentioned the type of means he intended to use to pay. That is not sensitive personal information, and Plaintiff can point to no such case.

Plaintiff lacks Article III standing and this court should dismiss the case.

## IV. PLAINTIFF'S CIPA CLAIMS ARE TIME BARRED

Plaintiff's argument that this court cannot rule on whether Plaintiff has adequately pleaded delayed discovery is contradicted by Ninth Circuit law. (Mtn. at 15:2-8.) Plaintiff blusters that AutoNation, Inc. challenging delayed discovery is "farcical" because he did not know to look for the multitude of online evidence alleged throughout the SAC regarding the use of Invoca by AutoNation in the years prior to bringing this lawsuit. (Opp. at 10:16-21.) But, that begs the question: how and under what circumstances did Plaintiff discover the conduct giving rise to this lawsuit, and why could he not discover those links earlier if they are underscoring this lawsuit? When a plaintiff pleads delayed discovery, it is his burden to plead the time *and manner* of discovery as well as the inability to have made the discovery earlier despite reasonable diligence. *Fodor v. AOL Time Warner, Inc.*, 217 F. App'x 622, 623-624 (9th Cir. 2007).

The cases that Plaintiff cites do not move the needle on the obligation of Plaintiff to meet this pleading requirement. *Burdick v. Union Sec. Ins. Co.*, No. 07-cv-4028, 2009 WL 4798873, at *10 (C.D. Cal. Dec. 9, 2009) (ruling on a summary adjudication; does not address whether Plaintiff had adequately *pleaded* delayed

discovery); *Balanzar v. Fid. Brokerage Servs., LLC*, 654 F. Supp. 3d 1075, 1083 & n.4 (S.D. Cal. 2023) (court did not reach delayed discovery rule pleading standard because plaintiff pleaded events within the statute of limitations).

Plaintiff's SAC and Opposition do not attempt to reconcile Plaintiff's claim of only recently discovering AutoNation, Inc.'s alleged conduct with the multiple specific factual allegations in the SAC claiming that details about the conduct giving rise to this lawsuit were online for multiple years prior to bringing this instant lawsuit. *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998) (on a motion to dismiss, the court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint").

While Plaintiff points to other cases in which he claims that his vague assertions of lack of knowledge were ruled sufficient (Opp. at 10:6-10:16), none of those rulings address Plaintiff's SAC inconsistently pointing to years of publication about the practice in question. Indeed, in one of the cases cited in the Opposition, a plaintiff pleaded the means and manner of discovery – that is, through his attorney. *Serna v. 1-800-GOT-JUNK? LLC*, No. 5:24-CV-00047-HDV-MRW, 2024 WL 3915074, at *1-3 (C.D. Cal. Aug. 6, 2024).

Finally, Plaintiff's fallback request for leave to amend should also be denied. Plaintiff has already had the opportunity to amend and has failed to cure these deficiencies. Plaintiff offers no explanation in his Opposition as to how further amendment would do so. *Guerrero v. Greenpoint Mortg. Funding, Inc.*, 403 Fed. App'x 154, 157 (9th Cir. 2010); *Vieira v. Mentor Worldwide, LLC*, 392 F. Supp. 3d 1117, 1132 (C.D. Cal. 2019), aff'd 845 Fed. App'x 503, 506 (9th Cir. 2021). Plaintiff's CIPA claims should therefore be dismissed with prejudice as time barred.

## V. PLAINTIFF FAILS TO STATE A CLAIM UNDER SECTION 631(A)

### A. <u>Invoca's Conduct Falls Within "Telephone Company" Exemption</u>

Plaintiff appears to take issue that AutoNation, Inc. limited its argument to documents incorporated by reference rather than the actual contract introduced as

evidence for the Motion to Dismiss under Rule 12(b)(2). (Opp. at 11:7-9.) Under Rule 12(b)(6), the Parties cannot rely on extrinsic evidence. *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). Nevertheless, if Plaintiff wants to look at the actual contract, it is worth noting that the Invoca services include telephone equipment subject to the Telephone Consumer Privacy Act, outbound calls, and call transferring. (Dkt. 45-4 at 3, ¶ 2.5.) Invoca has the right to remove telephone numbers from a pool of dynamic or static telephone numbers. (*Id.* at 3, ¶ 2.6.) Additionally, in Exhibit A to the contract, Invoca notes that it provides call routing availability. (*Id.* at 13, ¶ 4.2.)

Plaintiff implies that the use of the definition of "telephone line" from Public Utilities Code § 233 is wrong. First, the definition of telephone corporation incorporated into Penal Code § 638 is located in Public Utilities Code § 234, *not* Public Utilities Code § 324. (*See* Opp. at 11:19-22.) Second, the definition of telephone corporation is in Division 1, Part 1, Chapter 1 of the Public Utilities Code; the Chapter is titled "General Provisions and Definitions." Public Utilities Code § 203 – also in Chapter 1 – states: "Unless the context otherwise requires, the definitions and general provisions set forth in this chapter govern the construction of this part." The term telephone corporation uses the word "telephone line." CAL. PUB. UTIL. CODE § 234. Telephone line is also defined in Chapter 1. *Id.* § 234. Plaintiff's argument that the definition of telephone line in Public Utilities Code § 234 is not the actual definition of the word "telephone line" when used in the definition of "telephone corporation" is contradicted by the plain language of the statute.

Having established that the definition of "telephone line" from the Public Utilities Code is the correct definition to apply, the next issue is whether Invoca owns, controls, operates, or manages a telephone line for compensation within the state of California. CAL. PUB. UTIL. CODE § 234. The answer is "yes." Telephone line is defined broadly to include "all conduits, . . . cables, instruments, and appliances, and all other . . . fixtures, and personal property owned, controlled, operated, or managed in connection with or to facilitate communication by telephone, whether such

communication is had with or without the use of transmission wires." *Id.* § 233.

Based on both the general Master Services and Subscription Services Agreement and Terms of Services and the contract specifically at issue in this case, Invoca is a telephone corporation because its services qualify as a telephone line. While Plaintiff may have pleaded around those facts, the court is not required to ignore the documents incorporated by reference. While Plaintiff argues *Ambriz v. Google, LLC*, No. 23-cv-05437, 2024 WL 3282521, at *2 (N.D. Cal. June 20, 2024) is inapposite because the defendant provided AI support services to Verizon (a telephone company), Plaintiff misses the point that the court ruled that the services provided by a vendor need not be "necessary" for the telephone to function. Plaintiff may disagree on whether some of the services provided by Invoca are necessary, but that does not affect whether Invoca can claim the telephone company exemption under the statute.

Finally, Plaintiff suggests that this court should find Invoca is not a telephone company because Invoca did not raise it in other litigations where it was not sued. (Opp. at 12:27-28.) What arguments Invoca made or did not make do not divest this court of the jurisdiction or obligation to rule on the decision for itself. Whether Invoca is a telephone company is dispositive of Plaintiff's aiding-and-abetting theory. Absent any underlying violation by Invoca, Plaintiff cannot state a claim against AutoNation, Inc. for aiding and abetting. (*See* SAC ¶¶ 50-51.) Because the telephone company exception applies, Plaintiff's claim fails and should be dismissed.

### B. <u>Invoca's Conduct Falls Within the Tape Recorder Exception</u>

#### 1. *The Court May Properly Address Whether Plaintiff Plausibly Pleads that Invoca Is Not a Tape Recorder*

Plaintiff incorrectly contends that the Court must defer any § 631(a) analysis until after discovery, asserting that whether Invoca is a "tape recorder" or a third-party "eavesdropper" is a factual question. That misstates the law; courts may determine on a Rule 12(b)(6) motion whether a plaintiff has pleaded the requisite

elements for a claim, including whether Plaintiff has plausibly pleaded that Invoca is not a tape recorder. While Plaintiff points to cases where courts declined to rule at the motion to dismiss stage because those courts concluded that the pleadings created factual questions (Opp. at 10:17-26), nothing in those cases excuses Plaintiff from pleading the requisite elements here. As noted in the moving papers, courts *have* concluded based on the allegations in the operative complaint that the session replay vendor acted as a tape recorder. (Mtn. at 18:16-19, citing to *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832 (N.D. Cal. 2021).)

Accordingly, whether Plaintiff plausibly pleaded that Invoca was a third party to the communication is a legal question that can properly be resolved at the motion to dismiss stage. Invoca only falls outside of the tape recorder section if it uses customer data from phone calls for its own purposes. While some courts have held that the tape recorder exception does not apply if a service provider has the mere capability to use customer data for its own purposes (regardless of whether it in fact did so), that is no longer enough after *Gutierrez v. Converse Inc.*, No. 24-4797, 2025 WL 1895315 (9th Cir. 2025). The Ninth Circuit rejected the argument that the mere capability of a company to do something (in that case, read messages) could create liability under the wiretapping statutes; the wrongful conduct, the interception, the eavesdropping actually needed to happen. *Id.* at *1.

Because of the tape recorder exception, there can be no liability without Invoca using recordings for its own purposes. Plaintiff's Opposition thus misapprehends the argument being made in the moving papers by focusing on whether Invoca "reads" the telephone recordings (which is a moot issue under the tape recorder exception). The actual issue is whether Invoca *uses* the telephone recordings for its own purposes thus taking Invoca outside of the tape recorder exception.

*2. Invoca's Privacy Policy Does Not Support Plaintiff's Allegations*

Plaintiff attempts to manufacture "independent use" by selectively quoting Invoca's Privacy Policy. (Opp. at 15:3-7.) But the Ninth Circuit has made clear that

courts "need not accept as true allegations contradicting documents that are referenced in the complaint or that are properly subject to judicial notice." *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008); *accord Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). The cited language does not plausibly establish that Invoca used Plaintiff's data for its own purposes in connection with the communications at issue. To the contrary, the Privacy Policy expressly distinguishes between *customer data* (information collected when a consumer interacts directly with Invoca) and *client data* (information collected when Invoca provides services to its business clients). (RJN, Ex. A at 3-4.)

Nor do Plaintiff's cited cases (Opp. at 13:7-20, 14:6-21) advance Plaintiff's position because none addressed whether Invoca actually used allegedly intercepted communications for its own purposes; at most, they considered Invoca's alleged capability to do so. In light of *Gutierrez*, this is no longer enough. Moreover, none of those decisions addressed Invoca's Privacy Policy, which is before this Court. To the extent that Plaintiff is relying on facts discussed in those rulings (Opp. at 14:6-16), such argument is improper – the issue is not whether other plaintiffs have stated a claim based on the facts they alleged and documents they did (or did not) incorporate by reference, but whether *this Plaintiff* has done so.

Plaintiff makes several arguments about why the Privacy Policy supports his claim, but none of them withstand scrutiny. First, Plaintiff cannot simultaneously rely on Invoca's Privacy Policy to support his claims while arguing that AutoNation, Inc. may not rely on the same document to assess plausibility. (SAC ¶¶ 25-26; Opp. at 15:7-13, citing SAC ¶ 25 & n. 12 [Invoca's Privacy Policy].) Plaintiff's aiding-and-abetting theory depends on AutoNation, Inc.'s purported knowledge of Invoca's practices as reflected in that Policy – if Plaintiff is now claiming that AutoNation, Inc. was somehow tricked by Invoca because Invoca's Privacy Policy was inaccurate (*see* Opp. at 15:9-13), then Plaintiff fails to explain how AutoNation, Inc. could have knowingly aided and abetted conduct it had no reason to suspect.

Second, Plaintiff misreads the Privacy Policy. The Policy as a whole makes clear that Plaintiff's call to AutoNation, Inc. fell under the "client data" section, which expressly limits Invoca's use of the information to processing on the client's behalf, subject to the client's privacy policy. The Policy further confirms that Invoca acts as a service provider, not an independent actor, when handling client data.

Likewise, Plaintiff complains that AutoNation, Inc. is wordsmithing Invoca's Privacy Policy, while raising quibbles over how Invoca conveyed that it does not collect the contents of the communication. (Opp. at 15:27-16:10.) There is no requirement under CIPA that Invoca have used Plaintiff's preferred language or that it uses the most perfect language; the question before the Court is whether the language in Invoca's Privacy Policy contradicts Plaintiff's allegations in the SAC rendering them implausible – and on that, there is no question that it does.

Ultimately, Plaintiff now appears to challenge the accuracy of Invoca's Privacy Policy and argues that its SAC should survive so Plaintiff can investigate the statements in Invoca's Privacy Policy. (Opp. at 15:7-16:10.) However, Plaintiff's entire theory that AutoNation, Inc. aided and abetted Invoca hinges on Plaintiff's allegations that AutoNation, Inc. was aware of Invoca's conduct vis-à-vis the Privacy Policy. Absent that, Plaintiff does not plead how AutoNation, Inc. would have known about and thus aided and abetted such alleged wrongdoing by Invoca.

Accordingly, because Invoca's Privacy Policy refutes the core theory of this Penal Code § 631(a) claim, it should be dismissed with prejudice.

## VI. PLAINTIFF FAILS TO STATE A CLAIM UNDER SECTION 632(A)

### A. <u>Plaintiff Fails to Address the Ejusdem Generis Argument as to "Device"</u>

Plaintiff misconstrues AutoNation, Inc.'s argument when he claims that AutoNation, Inc. is attempting to borrow the definition of "device" from Penal Code § 637.7. Rather, AutoNation, Inc. is asking this court to apply the rules of statutory interpretation to the term "device" in Penal Code § 632(a) by *only* looking at the

language of Penal Code § 632(a) – not any other section – in conducting such statutory interpretation. Critically, none of the cases cited by Plaintiff address the application of *ejusdem generis* as to the phrase "telegraph, telephone, or other devices, except a radio." CAL. PEN. CODE § 632(a). Equally critically, Plaintiff likewise does not address that argument, instead putting up a strawman argument by pointing to cases which compare the language of Penal Code § 632(a) with Penal Code § 637.7 to find a broader interpretation for Penal Code § 632(a). That is not the argument being made here. Neither Plaintiff nor any of his cited cases address this argument, and Plaintiff fails to argue that this *ejusdem generis* argument is legally incorrect. Plaintiff's failure to meaningfully oppose should be treated as a concession on its merits, and this claim should be dismissed.

**B. <u>Plaintiff Does Not Plausibly Allege a Confidential Communication</u>**

Plaintiff's reliance on *Faulkner v. ADT Security Services, Inc.*, 706 F.3d 1017, 1020 n.** (9th Cir. 2013) underscores the inadequacy of Plaintiff's pleading of confidential communications. While Plaintiff quotes dicta noting that disclosure of sensitive information *might* support confidentiality, the Ninth Circuit in *Faulkner* affirmed dismissal because the allegations lacked sufficient factual content to establish confidentiality. *Id.* at 1020. The footnote relied on by Plaintiff of the types of information that could be confidential are all things that Plaintiff has *not* pleaded in this case. (Opp. at 18:15-20.) The same defect that supported dismissal in *Faulkner* exists here. As discussed in the moving papers and in Section III.B & III.C, *supra*, Plaintiff has not pleaded information sufficient to give rise to a cognizable privacy interest. (*See also* Mtn. at 13:23-14:4.)

Plaintiff also argues that *Lien v. Talkdesk, Inc.*, No. 24-cv-06467-VC, 2025 WL 551664 (N.D. Cal. Feb. 19, 2025) is inapposite because his call was "fundamentally different and confidential." (Opp. at 18:10-13; *accord* Opp. at 8:27-9:9.) Plaintiff fails to articulate *how* his business call was "fundamentally different." *Lien* makes clear that routine commercial calls to a retailer, even when they involve

customer information, do not automatically qualify as "confidential." *Lien*, 2025 WL 551664, at *1. This point was previously made by the Ninth Circuit in *Faulkner*, which explained that there must be a "particular relationship between the parties, and the particular circumstances of the call, to lead to the plausible conclusion that an objectively reasonable expectation of confidentiality would have attended such a communication. *Faulkner*, 706 F.3d at 1020.

### C. Plaintiff's Artful Allegations Do Not Plead Lack of Consent

Plaintiff's Opposition misconstrues the point made by AutoNation, Inc. While Plaintiff pleads that AutoNation, Inc. and Invoca never obtained his consent, Plaintiff's complaint is conspicuously silent as to whether the dealerships – the entities that Plaintiff *actually* called (SAC ¶¶ 32, 34, 54) – obtained his consent. Lack of consent is an element of Plaintiff's claim. CAL. PEN. CODE § 632(a). Plaintiff's artful pleading to carve out any consents he provided to the parties with whom he was communicating (i.e., the dealerships) cause this cause of action to fail. Plaintiff implausibly claims that there are no allegations that the AutoNation, Inc. dealerships were recording the conversations. (Opp. at 19:12-15.) But that misses the point: the dealerships could have obtained the consent for the practices alleged *since they were the parties Plaintiff called.* There is no obligation that a specific party be the one to obtain the consent.

For all these reasons, Plaintiff has failed to state a claim under Section 632(a).

## VII. CONCLUSION

For the foregoing reasons, the Second Amended Complaint should be dismissed in its entirety, without leave to amend.

Dated: April 14, 2026

FISHER & PHILLIPS LLP

By: */s/ Usama Kahf*
USAMA KAHF
DARCEY M. GRODEN
XUAN ZHOU
Attorneys for Defendant
AUTONATION, INC.