UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.:   5:25-cv-00731-AB-DTB | Date:    June 11, 2026 |
|---|---|

| Title: | *Mike Xavier, et al. v. AutoNation, Inc.* |
|---|---|

| Present: The Honorable | **ANDRÉ BIROTTE JR., United States District Judge** |
|---|---|

| Evelyn Chun | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Appearing | None Appearing |

**Proceedings:      [In Chambers] ORDER <u>GRANTING</u> MOTION TO DISMISS
SECOND AMENDED COMPLAINT [Dkt. No. 45] AND
DENYING REQUEST FOR JUDICIAL NOTICE [Dkt. No. 46]**

Before the Court is Defendant AutoNation, Inc.'s ("AutoNation") Motion to Dismiss Plaintiff's Second Amended Complaint. ("Mot.," Dkt. No. 45) and Request for Judicial Notice ("RJN," Dkt. No. 46). Plaintiff Mike Xavier ("Plaintiff") filed an opposition ("Opp'n," Dkt. No. 51) and AutoNation filed a reply ("Reply," Dkt. No. 53). Finding the matter suitable for decision without oral argument, the Court **VACATES** the June 12, 2026 hearing. *See* Fed. R. Civ. P. 78; Local Rule 7-15. For the following reasons, the Court **GRANTS** the Motion to Dismiss and **DENIES** the Request for Judicial Notice as moot.

## I.      BACKGROUND

This matter relates to alleged unlawful recording, interception, and analysis of customer service telephone calls placed to AutoNation, Inc. dealership entities in California in violation of the California Invasion of Privacy Act ("CIPA"), California Penal Code §§ 631 and 632.

## A. Factual Background

The following facts are taken from Plaintiff's Second Amended Complaint ("SAC," Dkt. No. 41).

Invoca, Inc. ("Invoca") provides a conversation intelligence platform that records, transcribes, and analyzes telephone calls using machine-learning and large language models. *Id.* ¶¶20–21. The platform converts call audio into searchable transcripts and structured data and generates outputs regarding caller intent, conversion outcomes, agent performance, and marketing effectiveness. *Id.* ¶21. Invoca also provides a searchable database of call recordings and transcripts generated from customer communications. *Id.* ¶22.

Plaintiff alleges that Invoca actively eavesdrops upon and analyzes communications to which it is not a party, collecting call content before it is provided to customers. *Id.* ¶23. Invoca further uses such data for internal purposes, including categorizing speakers and analyzing call intent, and stores transcripts for internal queries. *Id.* ¶24. Invoca's privacy policy states it uses call data, including recordings, to operate, maintain, improve, and market its platform, as well as for internal research. *Id.* ¶25. Plaintiff alleges Invoca uses intercepted communications to enhance and market its services beyond customer delivery. *Id.* ¶26.

AutoNation allegedly contracted with Invoca to deploy call tracking and analytics tools across its California dealership network. *Id.* ¶27. Public statements indicate AutoNation uses Invoca data across multiple departments, including sales and service operations, and incorporates AI-generated signals into performance and marketing optimization. *Id.* ¶28. Invoca's system records and transcribes inbound calls that AutoNation uses for coaching employees and integrating customer interactions into its CRM systems. *Id.* ¶29. Plaintiff alleges this enables detailed analysis of consumer communications and enhances AutoNation's sales and marketing functions. *Id.* ¶30.

Plaintiff alleges Invoca's system is not a passive recording device but an active third-party platform that collects and analyzes call content before it is provided to AutoNation. *Id.* ¶31. Consumers were not informed that a third party would monitor or analyze their calls or that recordings would be used for additional purposes. *Id.* ¶32. Plaintiff alleges neither Defendant obtained consumer consent. *Id.* ¶33.

Plaintiff is a California resident who called AutoNation dealership service lines in California on multiple occasions between approximately 2021 and 2023. *Id.* ¶34. During those calls, Plaintiff disclosed personal and vehicle-related information. *Id.* ¶35. Plaintiff believed his communications were solely between himself and AutoNation representatives. *Id.* ¶36. Plaintiff alleges Invoca nevertheless eavesdropped on, recorded, and transcribed his calls in real time using artificial intelligence tools. *Id.* ¶37. Plaintiff further alleges neither Defendant disclosed Invoca's involvement or obtained his consent. *Id.* ¶38. Plaintiff learned of the alleged conduct shortly before filing suit and contends his privacy rights were violated. *Id.* ¶¶39–40.

## B. Procedural Background

On January 14, 2026, this Court granted AutoNation's Motion to Dismiss Plaintiff's First Amended Complaint with leave to amend on the grounds that Plaintiff failed to establish specific jurisdiction. *See* Dkt. No. 40 ("Order"). On February 4, 2026, Plaintiff filed his SAC. *See generally* SAC. AutoNation now moves to dismiss this action on numerous grounds, including pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(61) for lack of Article III standing, and pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim as to each and every cause of action. Because the Court concludes that it lacks personal jurisdiction over AutoNation, the remaining grounds are rendered moot, and the Court denies those portions of the Motion on that basis.

## II.    PERSONAL JURISDICTION

The Court begins by addressing AutoNation's challenge to personal jurisdiction. Finding Plaintiff has failed to sufficiently allege facts demonstrating personal jurisdiction, the Court **GRANTS** AutoNation's Motion pursuant to Rule 12(b)(2) without prejudice.

## A. Legal Standard

Pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(2), a defendant may move to dismiss a complaint for lack of personal jurisdiction. When a defendant brings a Rule 12(b)(2) motion, the plaintiff bears the burden of establishing that the court has personal jurisdiction over the defendant. *See Picot v. Weston*, 780 F.3d 1206, 1210 (9th Cir.2015); *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir.1990); *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th

Cir. 2011). The plaintiff "need only make a prima facie showing of jurisdictional facts" when the motion is based on solely written materials rather than an evidentiary hearing. *Sher*, 911 F.2d at 1361; *see also Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). The court assumes that uncontroverted allegations in the plaintiff's complaint are true, and conflicts between the parties' declarations are resolved in the plaintiff's favor. *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002).

"The general rule is that personal jurisdiction over a defendant is proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006); *see also* Cal. Code Civ. Proc. § 410.10 ("[A] court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States."). Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the two inquiries merge into a single due process analysis. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800–01 (9th Cir. 2004).

To comport with due process, a plaintiff must show that a defendant has "certain minimum contacts" with California such that the maintenance of their lawsuit "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v Myer*, 311 U.S. 457, 463 (1940)). The Supreme Court has recognized two types of personal jurisdiction: "general jurisdiction" and "specific jurisdiction." *Bristol-Myers Squibb Co. v. Super. Ct.*, 582 U.S. 255, 262 (2017). Which category applies depends on the nature and extent of the defendant's contacts with the forum. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Both general and specific jurisdiction satisfy the minimum contacts test. *Id*.

A court has general jurisdiction over foreign defendants to hear all claims against them when their affiliations with the forum state are so "continuous and systematic as to render them essentially at home in the forum State," even when the claim does not arise from those specific contacts. *Id.* at 923. "The standard for establishing general jurisdiction is high and requires that the defendant's contacts be substantial enough to approximate physical presence." *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) (internal citations omitted).

For a court to exercise specific personal jurisdiction over a defendant, " 'the suit' must 'arise out of or relate to the defendant's contacts with the forum.' "

CV-90 (12/02)                    **CIVIL MINUTES – GENERAL**                    Initials of Deputy Clerk EVC

4

*Bristol-Myers*, 582 U.S. at 272 (emphasis in original, brackets omitted). There must be " 'an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.' " *Id*. (brackets omitted). Accordingly, the question of whether a forum state may assert specific jurisdiction over a non-resident defendant "focuses on the relationship among the defendant, the forum, and the litigation." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984) (internal citation omitted).

## B. Discussion

AutoNation is a foreign entity, that is, it is not a citizen or resident of California, so the Court must consider whether AutoNation has sufficient minimum contacts with the state of California such that exercising personal jurisdiction over AutoNation comports with due process.

AutoNation argues that it lacks the contacts with California sufficient to vest this Court with either general or specific jurisdiction over it. *See* Mot. at 3–8. In particular, it lacks the "continuous and systematic" contacts necessary to establish general jurisdiction, and none of the events giving rise to Plaintiff's claims have any nexus with California, as necessary to support specific jurisdiction. *See id.* Plaintiff does not contend that the Court has general jurisdiction over AutoNation and argues only that the Court has specific jurisdiction. *See* Opp'n at 4. Therefore, the Court will only proceed with the specific jurisdiction analysis.

The Ninth Circuit has established a three-prong minimum contacts test for analyzing a claim of specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802 (citation omitted). "The plaintiff bears the burden of satisfying the first two prongs of the test." *Id.* "If the plaintiff fails to

satisfy either of these prongs, personal jurisdiction is not established in the forum state." *Id.* "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.*

The first element of the specific jurisdiction test requires either purposeful availment or purposeful direction. "A purposeful availment analysis is most often used in suits sounding in contract," while a "purposeful direction analysis…is most often used in suits sounding in tort." *Id*. Both parties agree that the purposeful direction test applies in this case.

### i.  *Purposeful Direction*

The Ninth Circuit employs the three-part *Calder* effects test to evaluate purposeful direction. *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002) (citing *Calder v. Jones*, 465 U.S. 783, 789 (1984)); *see also Schwarzenegger,* 374 F.3d at 803. The *Calder* effects test "requires that the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Dole Food Co.*, 303 F.3d at 1111. "Failing to sufficiently plead any one of these three elements is fatal to Plaintiff's attempt to show personal jurisdiction." *Rupert v. Bond*, 68 F.Supp.3d 1142, 1163 (N.D. Cal. 2014).

### 1.  *Intentional Act*

To satisfy the intentional act element, a "defendant must act with the 'intent to perform an actual, physical act in the real world.' " *Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015) (quoting *Schwarzenegger*, 374 F.3d at 806). As the Court determined in its prior Order, Plaintiff has established that AutoNation committed intentional acts by "contracting for, paying, and causing Invoca's call-recording technology to be installed on the customer phone lines of its various dealership locations." Order at 7 (internal quotations omitted). Accordingly, the Court need not reevaluate this element.

### 2.  *Expressly Aimed*

To satisfy the express aiming element, courts look to a defendant's connection to the forum state. *See Picot*, 780 F.3d at 1214. The analysis centers on whether the defendant specifically targeted the forum state. *See Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1143 (9th Cir. 2017) (citing *Walden v. Fiore,* 571 U.S.

277, 284, (2014)). A defendant does not expressly aim its activities toward the forum state when a defendant's only connection to the forum arises from the unilateral actions of the plaintiff or a third party. *See Walden*, 571 U.S. at 284–85, (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall ("Helicopteros")*, 466 U.S. 408, 417 (1984)). "In analyzing 'express aiming,' courts 'must look to the defendant's own contacts with the forum,' and not [ ] the plaintiff's connections to the forum." *Kellytoy Worldwide, Inc.*, 2019 WL 8064196, at *4 (quoting *Axiom Foods, Inc. v. Acerchem Int'l, Inc*., 874 F.3d 1064, 1070 (9th Cir. 2017)) (internal quotation marks omitted).

This Court previously held that Plaintiff failed to allege sufficient facts to establish that AutoNation expressly aimed its conduct at California under the Calder effects test. *See* Order at 6–9. The Court explained that Plaintiff did not plausibly allege AutoNation's installation or use of call-recording technology was directed at California customers, tailored to the California market, or implemented in a California-specific manner. *Id.* at 7. The Court further noted that Plaintiff also failed to allege facts showing AutoNation directed, controlled, or ratified any subsidiary conduct giving rise to the alleged misconduct, or that AutoNation adopted California-specific policies regarding call recording or otherwise intentionally targeted California consumers. *Id.* at 8.

AutoNation contends that Plaintiff again fails to cure these deficiencies. Mot. at 10. In support, AutoNation submits evidence that Invoca's platform is deployed across AutoNation subsidiaries nationwide, with California dealerships comprising less than 17% of the new vehicle dealerships using the platform. *Id.* at 10; Dkt. No. 45-3, Declaration of Beth Ferguson ("Ferguson Decl.") ¶ 3. AutoNation further avers that it did not direct Invoca to configure or implement its platform differently in California, did not require California-specific deployment or functionality, and did not instruct any subsidiary or affiliate to use the platform in a California-distinct manner. *Id.* ¶4. AutoNation also represents that it maintains no California-specific policies governing use of the Invoca platform. *Id.*

Plaintiff, in opposition, again asserts in conclusory terms that AutoNation "directed, controlled, and ratified" Invoca's alleged call-recording practices involving California dealerships. Opp'n at 4; SAC ¶¶12, 27, 30. Plaintiff relies on allegations that AutoNation contracted with Invoca to provide call-recording services for its California dealership network and that Invoca is headquartered in California. SAC ¶¶12–13, 27. Plaintiff further argues that AutoNation "expressly aimed" its conduct at California by implementing call-recording services on telephone lines used by California dealerships to receive calls from California

residents. Opp'n at 4–5.

The Court is unpersuaded by Plaintiff's position. Although Plaintiff now asserts that AutoNation "directed, controlled, or ratified" Invoca's alleged conduct, these assertions remain conclusory and largely restate the same theory previously rejected by the Court. Plaintiff again relies on allegations that AutoNation contracted with Invoca to provide call-recording services used in connection with California dealerships and that Invoca is headquartered in California. SAC ¶¶12–13, 27. But these allegations do not demonstrate that AutoNation itself engaged in conduct expressly aimed at California. Plaintiff does not allege any California-specific deployment, configuration, or policy decisions attributable to AutoNation, nor does Plaintiff identify any conduct showing that AutoNation targeted California as a forum rather than merely operating a nationwide system that incidentally reached California through its subsidiaries. *See* Order at 7–8; *Walden v. Fiore*, 571 U.S. 277, 289 (2014).

Plaintiff's reliance on *Rodriguez v. Aquatic Sales Solutions LLC*, 735 F. Supp. 3d 1208 (C.D. Cal. 2024), and *Hassid v. Alex & Ani, LLC*, 816 F. Supp. 3d 1196 (C.D. Cal. 2026*)*, is likewise unavailing. As AutoNation correctly contends, both cases involved defendants who directly interacted with California residents through their own conduct, such as operating websites that collected data from California users. *See* Reply at 3–4; *Rodriguez*, 735 F. Supp. 3d at 1224; *Hassid*, 816 F. Supp. 3d at 1204. By contrast, Plaintiff's theory here depends on a chain of connections—AutoNation contracting with a third-party vendor, which then provides services used by subsidiaries that interact with California consumers. Nothing in the cases Plaintiff cites supports the proposition that contracting with a California-based service provider, without more, constitutes express aiming at California. *See Walden*, 571 U.S. at 284–85; *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1070 (9th Cir. 2017).

Because Plaintiff again fails to allege facts establishing that AutoNation expressly aimed its conduct at California, Plaintiff cannot satisfy the purposeful direction requirement. *See Schwarzenegger*, 374 F.3d at 803. Accordingly, Plaintiff fails to establish specific personal jurisdiction, and the Court need not address the remaining prongs of the jurisdictional analysis. AutoNation's Motion to Dismiss pursuant to Rule 12(b)(2) is therefore **GRANTED**. Moreover, because the Court does not reach the issues raised therein, Defendant's Request for Judicial Notice is **DENIED** as moot.

## III.   LEAVE TO AMEND

Having granted AutoNation's Motion for lack of personal jurisdiction, the Court turns to the question of whether Plaintiff should be granted leave to amend. For the reasons indicated below, leave to amend is **DENIED**.

### A. Legal Standard

If a motion to dismiss is granted, the court should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). A "district court must give plaintiffs at least one chance to amend a deficient complaint, absent a clear showing that amendment would be futile." *Natl. Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015). The purpose of granting leave to amend is to allow "plaintiff[s] with a meritorious claim to cure any technical defects." *Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000). But leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). And "the district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *In re Read–Rite Corp.*, 335 F.3d 843, 845 (9th Cir. 2003) (internal quotations and citation omitted).

### B. Discussion

Plaintiff has amended the complaint twice, including once after the Court identified deficiencies in Plaintiff's jurisdictional allegations. Despite this opportunity, the SAC still fails to allege facts sufficient to establish personal jurisdiction over AutoNation. In light of Plaintiff's repeated inability to cure these deficiencies, the Court concludes that further amendment would be futile. Accordingly, the Court **DENIES** Plaintiff leave to amend.

## IV.   CONCLUSION

For the foregoing reasons, AutoNation's Motion to Dismiss Plaintiff's SAC is **GRANTED** on the ground that the Court lacks personal jurisdiction over AutoNation. This case is therefore **DISMISSED *with* prejudice and *without* leave to amend**. AutoNation must file a proposed Judgment within 5 days of the issuance of this Order. Plaintiff will have 3 days thereafter to file any objections.

**IT IS SO ORDERED**.